## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Alto Maipo Delaware LLC, *et al.*,[1] | Case No. 21-11507 (KBO) |
| Reorganized Debtors. | (Jointly Administered) |
| Comunidad de Aguas Canal El Manzano on behalf of itself and its members and constitutents, Gemma Contreras Bustamante, Christian Becker Matkovic, Maite Birke Abaroa, Bruno Bercic, | |
| Plaintiffs, | |
| -against- | Adv. Pro. No.: **REFER TO SUMMONS** |
| Alto Maipo SpA, | |
| Defendant. | |

## **COMPLAINT**

---

[1]      The Reorganized Debtors in these Chapter 11 Cases, along with the last four digits of each Reorganized Debtor's tax identification number in the jurisdiction in which it operates, are: Alto Maipo SpA (761-2) (Chile) and Alto Maipo Delaware LLC (1916) (Delaware). The location of the corporate headquarters and the service address for Alto Maipo SpA is Los Conquistadores 1730, Piso 10, Santiago, Chile.

Comunidad de Aguas Canal El Manzano ("Manzano" or "Comunidad"), Gemma Contreras Bustamante ("Contreras"), Christian Becker Matkovic ("Becker"), Maite Birke Abaroa ("Birke"), and Bruno Bercic ("Bercic," and together with Comunidad, Contreras, Becker, and Birke, "Plaintiffs"), via the undersigned counsel, hereby file their complaint for allowance of administrative claims including cure claims against Alto Maipo SpA ("Alto Maipo," or "Defendant") and allege as follows:

## NATURE OF THE ACTION

1.     Each Plaintiff asserts herein a request for payment of (a) its administrative expense claim under the Amended Plan of Reorganization (defined below) and section 503(b)(1)(A) of title 11 of the United States Code (the "Bankruptcy Code") in the form of a post-petition tort or constitutional tort claim and (b) cure claims arising from the assumption of the Manzano Contract (defined below) under the Amended Plan of Reorganization and section 365(b) of the Bankruptcy Code.

2.     Plaintiffs are Chilean citizens and residents of San José de Maipo who own, or who represent others who own, water rights.  Plaintiffs' water rights are protected by the Chilean Constitution and statutes, including the Chilean Water Code and Environment Law.

3.     Alto Maipo is an entity formed in connection with the construction of two hydroelectric plants that are extracting and will continue to extract water to operate, including from the Colorado River upstream of the intake from which Plaintiffs extract their water.

4.     In 2008 and 2021, Plaintiff Manzano entered into contracts with Alto Maipo (and its parent corporation and predecessor) that required Alto Maipo to construct water intakes, prior to beginning any operations, so that Plaintiffs would not be deprived of their water rights.

5.     In January 2022, while Alto Maipo was a debtor in possession, it ran turbine tests and conducted other operations that caused Plaintiffs to lose access to water for several weeks.

6. Alto Maipo's actions breached its contract with Manzano, and were violations of the Chilean Constitution and statutes because they deprived Plaintiffs of their access to water. Alto Maipo also failed to cure its ongoing breach and, in fact, disavows having breached its agreements or applicable law. Plaintiffs have suffered damages of over $68 million as a result of Alto Maipo's conduct—including specifically during its operations prior to and during these chapter 11 cases.

## JURISDICTION AND VENUE

7. The United States Bankruptcy Court for the District of Delaware (this "Court") has jurisdiction over this adversary proceeding under 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference of the United States District Court for the District of Delaware ("District of Delaware") referring to the Bankruptcy Judges of the District of Delaware all cases and proceedings arising under the Bankruptcy Code.

8. This adversary proceeding constitutes a "core" proceeding as defined in 28 U.S.C. § 157(b)(2)(A) and (B).

9. Venue in the District of Delaware is and was proper under 28 U.S.C. §§ 1408 and 1409 because this adversary proceeding arises under and in connection with cases commenced under the Bankruptcy Code.

10. Pursuant to Federal Rule of Bankruptcy Procedure 7008 and Local Bankruptcy Rule 7008-1, Plaintiffs consent to the entry of final orders or judgments by this Court if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

## THE PARTIES

### Plaintiffs

11. Comunidad is a non-profit community organization in San José de Maipo in Chile, representing approximately 3,000 individuals (the "Comunidad Members"). The Comunidad

Members own individual legal surface water rights in approximately 300 hectares of land in San José de Maipo area.  Comunidad then captures, organizes, and distributes water from the Colorado River in accordance with applicable statutes.  Comunidad operates as a cooperative association with power to contract and sue on behalf of the Comunidad Members.  Comunidad thus acts herein on behalf of itself and all of its Comunidad Members.

12.     Contreras is a citizen and resident of San José de Maipo, Chile.  She is a Comunidad Member.

13.     Becker is a citizen and resident of San José de Maipo, Chile.  He is a Comunidad Member.

14.     Birke is a citizen and resident of San José de Maipo, Chile.  She is an elected representative of her approximately 18,000 constituents, and has filed over 100 lawsuits on behalf of her constituents with Chilean courts and agencies over disputes relating to the Project (defined below).

15.     Barcic is a citizen and resident of San José de Maipo, Chile.  He is a Comunidad Member.

**Defendant**

16.     Alto Maipo is a special purpose company incorporated under Chilean law to develop, construct, and operate a hydroelectric energy project approximately 30 miles southeast of Santiago.

## BACKGROUND

### A.     Chile Grants Private Rights to Water

17.     In Chile, water is considered the property of the Chilean government, which then grants water rights to individuals and corporate entities.  The water rights become the grantee's private property protected by Chile's Constitution.

4

18.     The *Dirección General de Agua* (General Directorate of Water, or "DGA"), a Chilean government agency, manages, calculates, verifies, and disseminates Chile's water information, including its quantity and quality, and keeps records about who owns and is authorized to use the water in order to safeguard water for the country's sustainable development.

19.     Some communities in rural geographic areas organize themselves through non-profit organizations that represent and promote the rights and interests of the community, including by protecting community members' water rights.  Due to the lack of sanitary and supply service for water, and due to the mountainous terrain in Chile, the non-profit organizations such as Comunidad act on behalf of their communities to capture, organize, and distribute water to their members and protect their water rights.

**B.**      **Chile's Statutory Scheme**

20.     Chapter III, article 19, section 24 of Chile's Constitution guarantees property rights, stating that that no one can be deprived of his property, except for expropriation authorized by law for a legitimate public purpose and on payment of adequate compensation, and specifically recognizes the rights of individuals over the waters as property rights.

21.     In addition, Chile's Water Code and Environmental Law protect its citizens' rights to water.  Chile's Water Code, DFL 1122 Articles 14 and 15, state that the extraction or restitution of waters will always be done in a way that does not harm the rights of third parties constituted over the same waters and shall not impair or restrict the exercise of consumptive rights over those waters.  Environmental Law no. 19.300 guarantees the right to live in an environment free of pollution, requires compliance with environmental permits, and permits compensation to those who suffered environmental harm.

C.    **History of Comunidad**

22.    In 1986, the Comunidad Members obtained consumptive water rights from the Colorado River in approximately 300 hectares of land in the San José de Maipo area, and have exercised their water rights and extracted and used water from the Colorado River for over 34 years.

23.    The Comunidad Members' property rights over the surface water at the Manzano Intake are guaranteed and protected by the Chile Constitution, Chilean Environmental Law, and the Chilean Water Code.

24.    The Comunidad Members created the Comunidad in 1997.  Comunidad is an *Organización funcional comunitaria* (Functional Community Organization), a non-profit organization created under applicable law to serve the local Chilean community of San José de Maipo, as recognized under the Chilean Water Code and by the competent government authorities. Comunidad captures the water from the Colorado River at the intake of the Canal El Manzano (the "Manzano Intake") and distributes it through a network of channels to each Comunidad Member and their homes and to the areas where the Comunidad Members conduct educational, recreational, economic, agricultural, and industrial activities.

25.    Comunidad must conduct all activities needed to fulfill this purpose, from physical maintenance of the network to legal and administrative issues.

26.    Comunidad, according to its bylaws, operates through a board that is elected through an assembly or meeting of Comunidad's members and that is composed of Comunidad Members, who volunteer to serve the community.  The board has all powers normally needed to represent any corporation, including hiring staff and consultants, carrying out physical

maintenance and repairs needed by the water supply system, and managing legal and administrative affairs.

27.     Comunidad has been capturing water at the Manzano Intake for the benefit of the Comunidad Members for more than 20 years since its creation in 1997.

### D.     Alto Maipo Project Is Formed to Construct Hydroelectric Plants

28.     In 2008, AES Andes S.A., f/k/a AES Gener S.A. ("AES Andes") commenced a hydroelectric project titled Alto Maipo Hydroelectric Project that contemplated the construction of two hydroelectric power plants, called Alfalfal II and Las Lajas, in the southeast of the city of Santiago (the "Project" or "PHAM").

29.     The hydroelectric plants will capture water flow from four tributaries of the Maipo River: the Colorado River, Volcán River, Yeso River, and Aucayes Stream.  The Project entails the construction of approximately 42 miles of underground tunnels.

30.     The Project's intake of the water from the Colorado River occurs upstream of the Manzano Intake.  As such, after the point at which water would be captured for the Project, the water surface levels could drop, bringing down the water levels at the Manzano Intake, and leaving the Comunidad Members without water.

31.     Numerous organizations, including Comunidad, opposed the Project, due to concern that it will reduce the main source of drinking water for Santiago and worsen its air pollution.  The "No Alto Maipo" campaign has become Chile's second largest environmental cause.

32.     One such group was the United Nations, which requested that the Chilean government explain what measures it is taking to ensure that Alto Maipo does not impair the Chileans' citizens' fundamental rights to water, food, housing, health, and culture.  It noted that

the Chilean government had not undertaken any effective measures to guarantee the right to water

to those affected by the Project.

> E. **The Chilean Government Required the Manzano Contract and Its Performance as a Condition Precedent for Alto Maipo to Enter Into Operation**

33.    On December 9, 2008, AES Andes and Comunidad entered into a *Declaración y Compromiso* (the Declaration and Commitment, or "2008 Agreement").

34.    In 2021, AES Andes transferred title to the Project to Alto Maipo, a subsidiary of AES.

35.    On June 10, 2021, Comunidad, on behalf of the Comunidad Members, and Alto Maipo entered into a *Convenio Complementario* contract (the Supplementary Agreement, or "2021 Agreement," and together with the 2008 Agreement, the "Manzano Contract").  Pursuant to the 2021 Agreement, the parties acknowledged the inter-company transfer of title and Alto Maipo's assumption of AES Andes' obligations under the 2008 Agreement.  The 2021 Agreement also establishes in detail the specific rights and obligations of Alto Maipo and Comunidad with respect to the commitments and declarations made in the 2008 Agreement, as well as sanctions and fines that Alto Maipo must pay for breaching the terms of the Manzano Contract.

36.    The Manzano Contract requires that Alto Maipo build complementary water intakes (the "Water Intakes") to allow the Comunidad Members to continue to have access to their water.  It also commits Alto Maipo to maintaining the Water Intakes and guaranteeing the availability of water to the Comunidad Members, in accordance with their legal water rights, during the useful life of the Project.

37.    Water intake structures are used for collecting water from surface sources such as rivers, and conveying that water to a plant, such as a hydroelectrical one, as in the case of Alto Maipo.  Water intakes can be designed so as not to interfere and/or preserve river traffic or the

flow of water. A properly functioning water intake controls the amount of water captured and returned to the main source, and can prevent water levels from dropping, ensuring the supply of water downstream.

38.     Specifically, the 2021 Agreement states that Alto Maipo conducted studies regarding seasonal flow variations in the Colorado River, and concluded that the location of the intake and conditions of the behavior of the river necessitate the building of the Water Intakes, because otherwise it will not always be possible for Alto Maipo to capture the water in a way that corresponds to legally protected water rights.

39.     The Water Intakes should move the water through an adduction channel that leads to the Manzano Intake at all times.

40.     Under the Manzano Contract, Alto Maipo must pay all costs required to construct the Water Intakes, as well as take all steps necessary to obtain proper permits and authorizations.

41.     The parties to the Manzano Contract agreed to apply daily payments to Alto Maipo for (i) delay in the delivery of the Water Intakes; (ii) delay in the maintenance of the Water Intakes infrastructure; and (iii) water not going into the Manzano Intake in its totality.  Specifically, they agreed that Alto Maipo would pay approximately $7,800 for each day of late delivery of operating intake works, approximately $7,800 for each day of late delivery of activities considered in the maintenance plan of the intake system, and approximately $9,800 for each day of water not going into the Water Intakes.

42.     The requirement of the Water Intakes was incorporated into the permits and authorizations as a condition precedent for the Project to enter into operation.  Specifically, the requirement to construct the Water Intakes was included in the environmental qualification permit

issued in connection with the Project in 2009, under file RCA 256/09 (item no. 7.3.1) (the "Permit"), as a condition precedent to starting operations.

43.     The Manzano Contract required that the Water Intakes be constructed within six months starting the day after the execution of the 2021 Agreement, or December 11, 2021, and before the Project entered into operation.

44.     As such, pursuant to the Manzano Contract, Alto Maipo promised Comunidad to preserve Comunidad's down-stream access to water from all sources and for all purposes.

45.     The construction of the Water Intakes is also a requirement of Environmental Law no. 19.300, which requires compliance with environmental permits.[2]

**F.     Alto Maipo Files for Bankruptcy**

46.     On November 16, 2021, Alto Maipo formed Alto Maipo Delaware.

47.     The next day—November 17, 2021 (the "Petition Date")—Alto Maipo, together with Alto Maipo Delaware (as previously defined, "Debtors," and after Effective Date (defined below), "Reorganized Debtors"), filed for relief (the "Petition") under chapter 11 of title 11 of the Bankruptcy Code in this Court (the "Chapter 11 Proceedings").

48.     This Court originally set the deadline to file general proofs of claim in the Bankruptcy Proceedings for February 16, 2022.  ECF No. 200.

---

[2]   The construction timeline for the Project was estimated to take five years, but it was repeatedly extended.  Over the last decade, the Chilean government moved to penalize the owners of the Project for numerous violations of environmental obligations.  The *Superintendencia del Medio Ambiente de la República de Chile* (Chilean Superintendency of Environment, or "SMA"), a Chilean governmental organization under the supervision of the Ministry of Environment that oversees, sanctions, informs, and promotes compliance with laws and regulations that protect the environment, found evidence of unauthorized activity, problems with waste management, and lack of reporting on environmental impacts.  For example, in 2017, the SMA considered sanctioning Alto Maipo for a violation of the commitments acquired by Alto Maipo to not affect glaciers outside and inside of the El Morado Monument as a result of the construction of the tunnel.

49.     On February 18, 2022, after considering a motion by the Official Committee of Unsecured Creditors in the Chapter 11 Proceedings ("UCC"), which includes Manzano, requesting an extension of the deadline to file general proofs of claim, ECF No. 249 (the "Motion to Extend Bar Date"), the Court extended the deadline to March 4, 2022.  ECF No. 292.

50.     In the Motion to Extend Bar Date, the UCC had alleged, with support from affidavits by Comunidad and Birke, that the Debtors' notice to potential creditors of the proofs of claim deadline was insufficient.  Neither Comunidad nor Birke had received such notice.

51.     On February 15, 2022, and as amended on March 4, 2022, Manzano filed a proof of claim in respect of the Project and the Manzano Contract in the amount of $1 billion (the "Manzano Claim") for: (i) breach of the Manzano Contract; (ii) infringement of the Chilean Constitution and the Chilean Water Code (DFL 1122, Arts. 6, 13-15); and (iii) infringement of Chile Environmental Law no. 19.300.

52.     On February 16, 2022, Contreras filed a proof of claim in the amount of $25 million for ongoing tort damages based on water rights violations.  Contreras alleged that Alto Maipo's construction of tunnels resulted in the illegal extraction of groundwater that has deprived her of her Constitutional property rights to water, and will likely force her to have to abandon her house and life project and real estate investment.

53.     On March 3, 2022, Becker filed a proof of claim in the amount of $80 million for ongoing tort damages based on water rights violations and third-party damages for breach of the Manzano Contract.  Becker alleged that Alto Maipo's construction of tunnels resulted in the illegal extraction of groundwater that has deprived him of his Constitutional property rights to water, and will likely force him to emigrate, and lose his residence and gastronomic company that is his family's source of income.

54.     On the same day, Birke, as elected representative of the community of San José de Maipo, timely filed a proof of claim in the amount of $2 billion for damages related to the Project. In her proof of claim, Birke asserted that she filed over 100 complaints and claims against Alto Maipo in Chile, including with the DGA, the SMA, and the Chilean courts, for repeated infractions affecting the community's water resources, including violations of regulations relating to the Project that caused damage to water resources. Birke also asserted that Alto Maipo's violation of Chilean legislation will cause irreparable damage to the area in terms of water resources, leading to destruction that will cause the closure of 170 companies and lead to unemployment and relocation of residents of the community.

55.     On the same day, Bercic filed a proof of claim in the amount of $80 million for ongoing tort damages based on water rights violations and third-party damages for breach of the Manzano Contract. Bercic alleged that Alto Maipo's construction of tunnels resulted in the illegal extraction of groundwater that has deprived Bercic of his Constitutional property rights to water, and will likely force him to emigrate, and lose his residence and gastronomic company that is his family's source of income. He also asserted that Alto Maipo's actions are in breach of the Manzano Contract.

56.     As discussed in further detail below, the Debtors objected to each of these proofs of claim, denying their validity in their entirety.

57.     On April 6, 2022, Plaintiffs formed the Ad Hoc Committee of Tort Claimants (the "Tort Committee"), and filed a statement pursuant to Bankruptcy Rule 2019 in the Chapter 11 Proceedings. ECF No. 456. The Tort Committee is composed of the Plaintiffs.

**G.     Alto Maipo Conducts Turbine Testing in Violation of the Manzano Contract, the Permit, and the Chilean Constitution and Applicable Statutes**

58.     In January 2022, Alto Maipo began conducting testing of its hydropower turbines, as well as conducting other tests.

59.     Hydropower turbines are devices used in hydroelectric plants that transfer energy from moving water to a rotating shaft to generate electricity.  To work, water is needed to  spin the blades of the turbines, which generates the electricity.

60.     The turbine tests were precipitated by milestones (the "Milestones") on which the Debtors' secured creditors (the "DIP Lenders") insisted in agreements with the Debtors entered into on the eve of the Debtors' initiating the Chapter 11 Proceedings, which ignored the Manzano Contract and did not take into consideration Alto Maipo's need to build the Water Intakes prior to conducting any operations or testing.[3]

61.     At the time of the turbine testing, Alto Maipo had not yet obtained the Permit.

62.     The turbine tests impeded the water flow in the Colorado River at the Manzano Intake and made it impossible for Comunidad to capture water, depriving the Comunidad Members of their individual water rights.

---

[3]     The Final Order Granting Debtors' Motion to (I) Authorize Debtors In Possession to Obtain Post-Petition Financing Pursuant to 11 U.S.C. §§ 105, 362, 363 and 364; (II) Grant Superpriority Administrative Expense Claims To DIP Lender(s) Pursuant to 11 U.S.C. §§ 364 and 507; (III) Modify Automatic Stay Pursuant to 11 U.S.C. §§ 361, 362, 363, 364 and 507; and (IV) Grant Related Relief incorporating the DIP Credit Agreement (the "DIP Order"), dated December 17, 2021, reflects these agreements, specifying that, in addition to the traditional lender protections, the DIP Lenders imposed the Milestones, including the acceleration of the Debtors' operations start date.  Specifically, the post-petition credit agreement between the Debtors and the DIP Lenders (the "DIP Credit Agreement") requires that the Debtors abide by the following Milestones:  "Synchronization of Las Lajas Units 1 and 2 and Alfalfal 2 shall have occurred by January 30, 2022[,] Substantial Completion of Critical Milestones D, E and F has been reached by March 31, 2022, [and] Commercial Operation Date (as defined in the Strabag Tunneling Contract) of Las Lajas and Alfalfal 2 shall have occurred by April 30, 2022."  ECF No. 166-1 at 64.

63.     As a result of the tests, Plaintiffs were completely deprived of water on at least the following days: January 9, 11, 12, 17, 21, and 27, and on February 24 and 25.  The deprivation of water resulted in damages to, among other things, Comunidad Members' health, and to their farming and industrial activities that depend on the use of water.

64.     Alto Maipo constructed a provisional detouring structure that temporarily restored water flow to the Comunidad Members.  However, the measure was temporary, and contributed to a turbidity and debris problem, impairing water quality and resulting in other damages, including to the Manzano Intake.  Plaintiffs thus continued to be deprived of clean and potable water and suffered damages resulting therefrom.

65.     On April 12, 2022, Alto Maipo obtained the Permit to begin operations, falsely representing to the Chilean government authority granting the permit that it had complied with all the conditions precedent to enter into operation.

H.     **Comunidad Seeks Injunctive Relief in Chile But Is Unable to Recover Damages**

1.     Comunidad filed the Recurso petition with the Chilean Appellate Court seeking an injunction against Alto Maipo

66.     As a result of the impact that the tests had on the Comunidad Members, on March 27, 2022, Comunidad filed a petition (the "Recurso") with the *Primera Sala de la Corte de Apelaciones de San Miguel* (the First Chamber of the Court of Appeals of San Miguel, or the "Chilean Appellate Court"), as well as injunctive relief via an *Orden de No Innovar* (Order Not to Innovate), to enjoin Alto Maipo from taking any further actions that would again deprive members of Comunidad of their critical access to water.

67.     A Recurso is an emergency, exceptional legal action that is meant to determine whether any rights protected by the Chilean Constitution have been illegally deprived, and if so, to instruct the restoration of these rights.

68.     On March 29, 2022, the Chilean Appellate Court denied the injunction request on the basis that Alto Maipo had taken measures and constructed the temporary detouring structure. The Recurso did not award any damages to the Comunidad Members that they suffered as a result of Alto Maipo's turbine tests.

69.     The Chilean Appellate Court also found that Comunidad sufficiently stated a claim against Alto Maipo for possible violations of constitutional rights, and admitted the Recurso for further fact development.

70.     On April 19, 2022, the Chilean Appellate Court determined that the Recurso passed all admission revision and substantial analysis by the Chilean Appellate Court, and an oral hearing was held.

71.     On June 10, 2022, the Chilean Appellate Court concluded that (a) its jurisdiction is limited to providing an urgent remedy to protect fundamental rights and not issuing declaratory judgments relating to those rights in dispute; and (b) the dispute involves technical issues, including breach of contract and breach of environmental regulations, that is subject to resolution by other competent authorities.

      2.    <u>Comunidad filed petitions before the SMA and Chilean National Electrical Coordinator</u>

72.     Comunidad also filed petitions before the SMA and the Chilean National Electrical Coordinator ("Coordinator") complaining that Alto Maipo conducted turbine testing prior to constructing the Water Intakes.

73.     On March 25, 2022, Alto Maipo responded to Comunidad's complaint to the Coordinator (the "Coordinator Petition"). In the response, Alto Maipo claimed—under oath—that it complied with all applicable regulations relating to the required conditions precedent to entering into operations.

74.    Alto Maipo's sworn declaration in the Coordinator Petition was false because Alto Maipo's turbine testing and other actions were not in compliance with the Manzano Contract, the Permit, or the Chilean Constitution or statutes, because Alto Maipo had not obtained the Permit or built the Water Intakes prior to conducting the turbine tests, and in the process of the turbine testing, shut off water to the Comunidad Members.

75.    Indeed, on April 8, 2022, the SMA informed the Executive Director of the Coordinator that Alto Maipo's March 25, 2022 sworn declaration to the Coordinator was not truthful.  The SMA determined that Alto Maipo failed to build the Water Intakes infrastructure and infringed environmental law and measures and conditions provided for in the Permit, causing serious and imminent damage to the environment and health of the Comunidad Members.

## I.    Defendants Force Plaintiffs into Litigation in This Court

76.    On April 12, 2022, in response to Comunidad's request for injunctive relief in Chile to stop Alto Maipo's premature turbine testing, the Debtors filed a motion to enforce the automatic stay against Comunidad (the "Stay Enforcement Motion").  ECF No. 485.

77.    Manzano, together with the Tort Committee, as well as, separately, the UCC, all filed objections to the Stay Enforcement Motion.  ECF Nos. 509, 512.

78.    In the Stay Enforcement Motion, the Debtors attempted to bar Comunidad's access to the Chilean regulatory process and the Recurso process to halt the Debtors' illegal conduct. Indeed, the Stay Enforcement Motion alleges that the Recurso "call[s] for a wholesale halt on the operation of, construction on, and any further development of the Project," and that the Coordinator Petition represents "harassment of the Debtors and their estates, and forces them to contend with the possibility of administrative action that seeks to revoke a key regulatory permit while the Debtors are appropriately focused on completing the reorganization of their business." ECF No. 485, at 10-11.

79.     But, the Recurso and Coordinator Petition merely requested the appropriate authorities to stop the Debtors from engaging in illegal conduct, to which even Alto Maipo conceded as it built the temporary detouring structure.  Importantly, at the time that Comunidad filed the Recurso and Coordinator Petition, the Debtors had not yet been granted a Permit, and were conducting testing illegally.

80.     Moreover, the Debtors' relief in the Stay Enforcement Motion sought punishment for Comunidad's alleged violation of the automatic stay: that this Court disallow Comunidad's claim of $1 billion in its entirety.  A request to this Court to expunge a $1 billion claim on behalf of numerous contract and tort victims in Chile for the purpose of "send[ing] a strong message to Manzano" (ECF No. 485 at 11) is drastic and disproportionate, which even the Debtors conceded in removing the request in their Reply (ECF No. 521 at 3)—of course, after Manzano already had to incur fees and expenses in responding to the Stay Enforcement Motion.

81.     In filing the Stay Enforcement Motion, and requesting in its relief that the Court expunge Manzano's $1 billion claim, the Debtors forced Manzano to hire counsel to defend against the Stay Enforcement Motion in these Chapter 11 Proceedings.

82.     After this contest was joined, the Reorganized Debtors withdrew the Stay Enforcement Motion, *see* ECF No. 660, because the Manzano Contract "was assumed on the Effective Date."  ECF No. 660 at 1.  The Reorganized Debtors "fully reserve[d] all relevant rights and defenses with respect to any dispute in connection with the Manzano Contract."  *Id.* at 1-2. The time period from the Petition Date to the Effective Date is the "Administrative Period."

**J.**      **Alto Maipo Initiated Further Disputes in the Chapter 11 Proceedings**

1.      Alto Maipo filed a motion to assume the Manzano Contract despite having breached it and not offered to cure the breach or adequate protection.

83.      On the same day as the Stay Enforcement Motion, the Debtors filed a motion to assume the Manzano Contract (the "Motion to Assume"). ECF No. 487. In the Motion to Assume, the Debtors summarily alleged that they "do not believe Manzano holds a valid claim, or that any default currently exists under the Agreement." *Id.* at 5, 7. While the Debtors stated that there was no breach because they were not required to construct the Water Intakes until after they obtained a Permit, they omitted mentioning the turbine testing that they conducted prior to having obtained the Permit and constructed the Water Intakes, in breach of the Manzano Contract and applicable law. Indeed, Debtors admitted as such when they constructed temporary detouring structures to restore water flow to the Comunidad Members following their turbine tests.

84.      On April 19, 2022, Comunidad moved to adjourn the hearing on the Motion to Assume (the "Motion to Adjourn"). ECF No. 511. In the Motion to Adjourn, Comunidad asserted that Alto Maipo cannot assume the Manzano Contract without curing all breaches and compensating for actual pecuniary losses that resulted from the pre- and post-petition breaches or providing adequate assurance of the cure of these breaches.

85.      Although the Debtors refused to agree to the Tort Committee's request to adjourn the hearing on the Motion to Assume, forcing the Plaintiffs to expend attorneys' fees filing the request to adjourn, the Debtors subsequently agreed to the adjournment. *See* ECF No. 529 at 7.

2.     Alto Maipo filed omnibus claims objections attempting to summarily
disallow Plaintiffs' claims

86.     On April 13, 2022, just one day after the Debtors filed the Stay Enforcement Motion

and Motion to Assume, they also filed an omnibus objection to claims (the "First Omnibus Claims

Objection"), which objected to each of the Plaintiffs' claims in their entirety.  ECF No. 490.

87.     With respect to the claims of Birke and Contreras, the Debtors alleged that the

claims should be disallowed because (a) these Plaintiffs do not have standing to assert private

actions for violations of the Chile Water Code or Environmental Law; and (b) the Debtors have no

liability for the alleged environmental damages because the Environmental Court held that the

tunnel construction did not affect the water rights of third parties.  ECF No. 490-7 at 6.

88.     The Debtors alleged that Matkovic and Bercic, in addition to the above, are not

parties to the Manzano Contract, so they are owed no obligations under it, and that even if an

obligation were owed, the Manzano Contract was not breached.  *Id.*

89.     In contrast, the Debtors objected to the Comunidad claim and alleged that (a)

Comunidad does not have standing to assert private actions for violations of the Chile Water Code

or Environmental Law; (b) the Debtors have no liability for the alleged environmental damages

because the Environmental Court held that the tunnel construction did not affect the water rights

of third parties and the Chile Appellate Court rejected Comunidad's request for injunctive relief

to stop the Project; and (c) the Manzano Contract was not breached and will be assumed pursuant

to the Debtors' plan of reorganization.  *Id.*

90.     Plaintiffs' claims concern complex factual and legal issues that relate to breaches

of the Manzano Contract, the Permit, and the Chilean Constitution and statutes, over a multi-year

timeframe.  Nonetheless, the Debtors attempted to extinguish these claims in their entirety in a

consolidated and expedited manner and proceeding.

91.     On April 27, 2022, the Tort Committee and Comunidad filed an emergency motion to extend the deadline to respond to the First Omnibus Claims Objection after the Debtors refused to grant any deadline extensions or hearing adjournments.  ECF No. 549.  Among other things, the Tort Committee and Comunidad argued that the claims objections should be decided through an adversary proceeding because the claims raise complex legal and factual issues that require extensive discovery and development of the record.  *Id.* at 6-9.

92.     Just prior to the hearing on the First Omnibus Claims Objection, the Debtors agreed to adjourn the hearing "to a date and time to be determined."  ECF No. 599 at 5.

3.    <u>Alto Maipo attempted to extinguish Plaintiffs' claims through Debtors'
       plan of reorganization</u>

93.     On February 28, 2022, the Debtors filed their proposed joint plan of reorganization (the "Plan of Reorganization") and, on March 1, 2022, the related disclosure statement (the "Disclosure Statement").  ECF Nos. 313, 314.  The Plan of Reorganization and Disclosure Statement were further revised on March 22, 2022 (ECF Nos. 401, 402) and April 6, 2022.  ECF Nos. 464, 465.

94.     In the Disclosure Statement, the Debtors stated that they do not believe that Plaintiffs Contreras, Becker, Birke, or Bercic hold valid claims on the basis that they have no contractual relationship with the Debtors, ECF No. 465 at 24, despite, among other things, Contreras and Birke not asserting claims based in contract.  For Plaintiff Comunidad, the Debtors stated with no explanation that they do not believe it holds a valid claim.  *Id.*  The Debtors further stated with respect to all Plaintiffs' claims that they will object to them and estimate them at zero for distribution purposes.  *Id.*

95.     On April 21, 2022, the Debtors filed the plan supplement to their Plan of Reorganization (the "Plan Supplement").  ECF No. 523.

96.     The Plan Supplement included a list of proposed assumed agreements, in which the Debtors identified the Manzano Contract as an agreement to be assumed under the Plan.  The Debtors asserted the proposed cure amount of $0.00 with respect to the Manzano Contract (the " Cure Amount").  *Id.* at 30.

4.     <u>The Tort Committee and Debtors Reached a Compromise Permitting<br>Plaintiffs' Tort and Contract Claims to Pass Through</u>

97.     In late April 2022, the Debtors and Plaintiffs negotiated and reached a partial compromise.  Pursuant to the parties' agreement, the Plaintiffs and the Comunidad Members would not intervene with the Debtors' efforts to obtain confirmation of their Plan of Reorganization.  In exchange, the Debtors agreed to allow the claims of Plaintiffs to "pass through" the Plan of Reorganization, meaning that Plaintiffs would be able to assert their claims following the Debtors' reorganization.

98.     As such, on May 10, 2022, the Debtors filed an amended Plan of Reorganization (the "Amended Plan of Reorganization").  ECF No. 574.  In the Amended Plan of Reorganization, the Debtors stated that the Manzano Contract would be assumed on the effective date (the "Effective Date") of the Amended Plan of Reorganization.  *Id.* at 42.

99.     In accordance with the Debtors and Tort Committee's agreement, the Plan further stated that "Manzano asserts current defaults under the Manzano Contract, and the existence of any such defaults and the required cure shall be resolved by a court, arbitral panel, or any other judicial or administrative body of competent jurisdiction, as to which all parties fully reserve all relevant rights and defenses."  *Id.*

100.    In addition, on May 4, 2022 and May 10, 2022, the Debtors filed a revised plan supplement (the "Revised Plan Supplement") and a further revised supplement to the Plan of Reorganization (the "Further Revised Plan Supplement"), respectively.  ECF Nos. 576, 597.

101.    Both the Revised Plan Supplement and Further Revised Plan Supplement amended the Cure Amount of the Manzano Contract to "N/A," and included a further note, stating that "[b]y agreement of the parties, the cure amount, if any, owed pursuant to the Debtors' contracts with… Comunidad de Aguas El Manzano will be determined at a later date, by a court of competent jurisdiction, as provided in Article V of the Plan."  ECF No. 576 at 7; ECF No. 597 at 7.

102.    On May 13, 2022, the Court confirmed the Amended Plan of Reorganization (the "Confirmation Order").  ECF No. 614.

103.    As part of the partial compromise between Plaintiffs and the Debtors, the Confirmation Order lists the claims of Plaintiffs as Claims to Pass Through Unimpaired.  ECF No. 614-1 at 75-76.

104.    The exhibit to the Confirmation Order—the Amended Plan of Reorganization— specifically addresses the Manzano Claim allowing it to "pass through, with the rights and defenses of all parties fully reserved.  *Id.* at 76.

105.    The confirmed Amended Plan of Reorganization further provides for the Manzano Contract to be assumed, stating that "[t]o the extent [the Manzano Claim] asserts current defaults under the relevant contract, the existence of any such defaults and the required cure shall be resolved by a court, arbitral panel, or any other judicial or  administrative body of competent jurisdiction, as to which all parties fully reserve all relevant rights and defenses."  *Id.* at 37.

106.    On June 9, 2022, the Debtors withdrew both the Motion to Assume and Stay Enforcement Motion.  ECF Nos. 659, 660.

107.    On June 16, 2022, Manzano and the Tort Committee filed an objection and reservation of rights with respect to the Debtors' assumption of the Manzano Contract and the Cure Amount associated therewith (the "Cure Objection").  ECF No. 669.

108.    In the Cure Objection, Manzano asserted a cure claim in at least the amount of $62,881,607 related to the pre-petition and post-petition delayed delivery of intake infrastructure, the post-petition water access interruption, and the costs of enforcing the Manzano Contract, including attorneys' fees. *Id.* at 7-8.

## CAUSES OF ACTION

### COUNT I

### BREACH OF CONTRACT
### (by All Plaintiffs)

109.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs.

110.    Pursuant to the Comunidad Members' individual water rights to the Colorado River in approximately 300 hectares of land that would be affected by the Project, Alto Maipo and Comunidad entered into the Manzano Contract.

111.    Comunidad, on behalf of the Comunidad Members, including Plaintiffs, entered into a valid and enforceable agreement with Alto Maipo, the Manzano Contract.

112.    Pursuant to the Manzano Contract, Alto Maipo promised Manzano to preserve the Manzano's community's down-stream access to water from all sources and for all purposes.  In order to accomplish this, Alto Maipo (and its predecessor, AES Andes) agreed to construct, fit for all purposes, the Water Intakes, prior to commencing operations.  This term was incorporated into relevant permitting from government units as a condition precedent to Alto Maipo's starting operations—which it did during the Administrative Period.

113.    Moreover, pursuant to the Manzano Contract, Alto Maipo promised to construct the Water Intakes within six months beginning the day after the execution of the 2021 Agreement, which is part of the Manzano Contract.  The 2021 Agreement was executed on June 10, 2021;

therefore, Alto Maipo was required to build the intake infrastructure by December 11, 2021.  In this regard, the parties agreed in the Manzano Contract to apply daily penalties for (i) delay in the delivery of the Water Intakes; (ii) delay in the maintenance of the intake infrastructure; and (iii) water not going into the Manzano Intake in its totality.

114.    Manzano complied with all of its obligations under the Manzano Contract.

115.    In January 2022, as part of the premature commissioning process of the Project, Alto Maipo conducted turbine and other tests that impeded the water flow in the Colorado River at the Manzano Intake and made it impossible for Comunidad to capture the water, depriving the Comunidad Members of their individual water rights.

116.    As a result of the tests, the Comunidad Members were completely deprived of water on at least the following days: January 9, 11, 12, 17, 21, and 27, and on February 24 and 25, because Alto Maipo had not performed the intake works it had promised under the Manzano Contract and as a condition to its Permit.

117.    Alto Maipo constructed a provisional detouring structure that temporarily restored water flow to the Comunidad Members.  However, the measure was temporary and deficient, and contributed to a turbidity and debris problem, impairing water quality and causing other actionable occurrences and effects, including damaging the Manzano Intake.

118.    To date, Alto Maipo has not completed the Water Intakes it has agreed to under the Manzano Contract to preserve the Manzano community's down-stream access to water, and has operated the Project without building the intake infrastructure, all in breach of its obligations under the Manzano Contract and applicable law.

119.    As a result of Alto Maipo's breach of the Manzano Contract, Comunidad and the Comunidad Members have suffered and continue to suffer damages in relation to the water access

interruption in an amount to be proven at trial.  This claim includes damages both before the Petition Date and during the Administrative Period.

## COUNT II

### CURE CLAIM PURSUANT TO 11 U.S.C. §503(b)
### (by All Plaintiffs)

120.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs.

121.    Both the Revised Plan Supplement and Further Revised Plan Supplement filed in this proceeding included the Manzano Contract as an agreement to be assumed under the Plan of Reorganization and the Confirmation Order, stating that "[t]o the extent [the Manzano Claim] asserts current defaults under the relevant contract, the existence of any such defaults and the required cure shall be resolved by a court, arbitral panel, or any other judicial or  administrative body of competent jurisdiction, as to which all parties fully reserve all relevant rights and defenses."

122.    As explained in the preceding paragraphs, to date, Alto Maipo is in default of the Manzano Contract and has not cured or compromised Manzano's contract claim.

123.    As a result of Alto Maipo's failure to cure the contract claim, Plaintiffs have suffered damages in at least the amount of $62,881,607, including in relation to both pre-Petition Date and Administrative Period breaches of the Manzano Contract, including attorneys' fees.

## COUNT III

### INFRINGEMENT OF CHILE CONSTITUTION AND WATER CODE
### (by All Plaintiffs)

124.    Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs.

125.    Plaintiffs own individual legal surface water rights in approximately 300 hectares of land in San José de Maipo, Chile.

126.     The ownership of Plaintiffs' water rights is recognized and guaranteed as a property right by the Chile Constitution and Chilean statutes, including Article 19, paragraph 24 of the Chile Constitution and Articles 6 and 13 of the Chile Water Code.

127.     Alto Maipo failed to comply with its obligation under the Manzano Contract and under the Permit issued by the Chilean authorities to build and maintain the Water Intakes to preserve Plaintiffs' water rights.  Alto Maipo, as required by the DIP Credit Agreement, began operations of the Project during the Administrative Period by rushing the testing and operations startup resulting in the impediment of the water flow at the Manzano Intake and making it impossible for Comunidad to capture water.  Through its actions occurring as a result of operations during the Administrative Period of these chapter 11 cases, Alto Maipo has violated the Chilean Water Code, including Articles 13, 14 and 15 under which Alto Maipo is prohibited, when using water from the river, to impair or restrict third-party consumptive water rights, like those of Plaintiffs, and has violated Plaintiffs' property rights to that water guaranteed under Article 19, paragraph 24 of the Chile Constitution.

128.     Alto Maipo has, during the Administrative Period, therefore deprived Plaintiffs of their legitimate water and property rights causing damages to them, including, and not limited to, economic and moral damages, for which it has to compensate the Comunidad Members under applicable law.

## COUNT IV

## INFRINGEMENT OF CHILE ENVIRONMENTAL LAW
### (by All Plaintiffs)

129.     Plaintiffs repeat and re-allege each and every allegation contained in the preceding paragraphs.

130.    As explained in the preceding paragraphs, pursuant to the Manzano Contract, Alto Maipo promised Manzano to preserve the Comunidad Members' (including Plaintiffs') water rights, and to accomplish this, Alto Maipo agreed to construct, fit for all purposes, the Water Intakes, prior to commencing operations.  Importantly, this term was incorporated into the Permit as a condition precedent to Alto Maipo's entering into operation.

131.    More specifically, the Water Intakes that Alto Maipo had to build to avoid interrupting Plaintiffs' access to water with the Project's operations is an obligation that was included in the Permit as a condition precedent to starting operations, and is thus an obligation that Alto Maipo had to fulfill completely to be compliant with Environmental Law No. 19.300.

132.    Alto Maipo did not comply with the condition precedent and therefore violated Environmental Law No. 19.300.

133.    Moreover, the deficient provisional detouring structure that Alto Maipo built to try to temporarily restore water flow to the members of Comunidad contributed to a turbidity and debris problem, impairing water quality and causing other actionable environmental effects, including the lack of access by the Comunidad Members, including Plaintiffs, to drinkable water, and water necessary for their farming activity and other economic activities.

134.    On April 8, 2022, the SMA informed the Executive Director of the Coordinator that Alto Maipo's March 25, 2022 sworn declaration to the Coordinator—which attested to Alto Maipo's compliance with the conditions precedent to entering into operation and upon which the Coordinator relied to authorize Alto Maipo to start operations on March 28, 2022—was in fact not truthful because Alto Maipo had breached its obligations to build the Water Intakes to ensure Comunidad's access to water and had therefore failed to comply with the environmental requirements to enter into operation.

135.     Comunidad filed several complaints before the SMA, which, after conducting an inspection, determined that Alto Maipo failed to build the intake infrastructure and infringed applicable environmental law, and measures and conditions provided for in the Permit causing a serious and imminent damage to the environment and health of the members of Comunidad.   The SMA thus intervened in the Debtors' attempt to commence operations and ordered measures to prevent further harm to the environment and Plaintiffs' rights.

136.     The construction and operation of the Project impaired Plaintiffs' access to other water sources, including (a) partially treated water that they obtain from a treatment plant in the area, which, in turn, obtains the water from the Manzano Creek, which is being drained as a result of Alto Maipo's construction of a channel crossing below the creek; and (b) water wells to which Plaintiffs have water rights, which have suffered a substantial decrease in water availability due to Alto Maipo's construction of tunnels in the area.

137.     Alto Maipo's actions described above have also affected the flora and wildlife that depend on water access to survive.

138.     Alto Maipo damaged the environment and the Comunidad Members, for which it is liable under Chile Environmental Law, including Articles 2, 3, 51 and 63 of Law No. 19.300 under which the Comunidad Members may assert individual tort actions and full reparation for the damages they have suffered and continue to suffer as a result of Alto Maipo's infringement of Chile Environmental Law, including and not limited to damages to their environment, health, property, and economic activities.   The amount claimed for this count is to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for relief and judgment, as follows:

1.     awarding Plaintiffs damages for Alto Maipo's breach of the Manzano Contract in an amount to be determined at trial;

2.      awarding Plaintiffs their claims for cure of the breaches of the Manzano Contract
        pursuant to 11 U.S.C. § 365 as well as declaring conditions for prompt cure and future
        performance of the Manzano Contract;

3.      awarding Plaintiffs damages for Alto Maipo's violations of the Chilean Constitution and
        Water Code that occurred during the Administrative Period in an amount to be
        determined at trial;

4.      awarding Plaintiffs damages for Alto Maipo's violations of the Environmental Law that
        occurred during the Administrative Period in an amount to be determined at trial;

5.      awarding Plaintiffs pre- and post-judgment interest at the maximum rate permitted by
        law;

7.      awarding the Plaintiffs their attorneys' fees, costs, and other expenses incurred in this
        action and the Chapter 11 Proceedings;

8.      awarding Plaintiffs the above-enumerated administrative priority claims pursuant to 11
        U.S.C. § 503(b); and

9.      awarding Plaintiffs such other and further relief as the Court deems just and proper.

## RESERVATION OF RIGHTS

139.    In addition to the foregoing, Plaintiffs have suffered additional injury and maintain claims against Defendant and others including affiliates of Defendant for those harms under a variety of other statutory, contractual, and constitutional law bases under Chilean or otherwise applicable law.  These include (but are not limited to) claims for breach of contract, constitutional law, and other statutory bases.  Although these claims are no less meritorious than the claims brought herein, they are not the subject of this Complaint (which is limited to claims over which this Court has core jurisdiction, which arise under terms of the Plan of Reorganization and which are entitled to administrative claim priority) and so not detailed herein.  In addition, this Complaint states claims in addition to the claims asserted in Plaintiffs' proofs of claim detailed above, and is filed to comply with the deadlines set forth in the Amended Plan of Reorganization.  Plaintiffs reserve all rights, including to detail the additional facts and harms, and bring those resulting claims (together or apart from the claims brought herein) in any forum at any time.

Respectfully submitted this 27th day of June, 2022.

**BLANK ROME LLP**

*/s/ Stanley B. Tarr*
Stanley B. Tarr (DE No. 5535)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: (302) 425-6400
Facsimile: (302) 425-6464
E-mail: Stanley.Tarr@BlankRome.com

-and-

**BLANK ROME LLP**
Michael B. Schaedle (*pro hac vice*)
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone: (215) 569-5762

Facsimile: (215) 569-5000
E-mail: Mike.Schaedle@BlankRome.com

-and-

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Patricia B. Tomasco (*pro hac vice*)
Joanna D. Caytas (*pro hac vice)*
711 Louisiana Street, Suite 500
Houston, TX 77002
Telephone: (713) 221-7000
Facsimile: (713) 221-7100
Email: pattytomasco@quinnemanuel.com
        joannacaytas@quinnemanuel.com

-and-

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Lucas Loviscek (*pro hac vice forthcoming*)
Serafina Concannon (*pro hac vice forthcoming*)
1300 I Street, NW, Suite 900
Washington, D.C. 20005
Telephone: (202) 538-8000
Facsimile: (202) 538-8100
Email: lucasloviscek@quinnemanuel.com
        serafinaconcannon@quinnemanuel.com

*Counsel to Comunidad de Aguas Canal El Manzano* and *the Ad Hoc Committee of Tort Claimants*