## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: | Chapter 11 |
| Alto Maipo Delaware LLC, *et al.*,[1] | Case No.:  21-11507 (KBO) |
| Reorganized Debtors. | (Jointly Administered) |
| Comunidad de Aguas Canal El Manzano on behalf of itself and its members and constituents, Gemma Contreras Bustamante, Christian Becker Matkovic, Maite Birke Abaroa, Bruno Bercic, | Adv. Pro. No.: 22-50381 |
| Plaintiffs, | |
| -against- | |
| Alto Maipo SpA, | |
| Defendant. | |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**

Pauline K. Morgan (No. 3650)
Sean T. Greecher (No. 4484)
S. Alexander Faris (No. 6278)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571–6600
Facsimile: (302) 571–1253
Email:  pmorgan@ycst.com
          sgreecher@ycst.com
          afaris@ycst.com

**CLEARY GOTTLIEB STEEN & HAMILTON LLP**

Richard J. Cooper (admitted *pro hac vice*)
Luke A. Barefoot (admitted *pro hac vice*)
Jack Massey (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone: (212) 225-2000
Facsimile: (212) 225-3999
Email: rcooper@cgsh.com
          lbarefoot@cgsh.com
          jamassey@cgsh.com

---

[1]      The Reorganized Debtors in the above-captioned cases, along with the last four digits of each Reorganized Debtor's tax identification number in the jurisdiction in which it operates, are:  Alto Maipo SpA (761-2) (Chile) and Alto Maipo Delaware LLC (1916) (Delaware).  The location of the corporate headquarters and the service address for Alto Maipo SpA is Los Conquistadores 1730, Piso 10, Santiago, Chile.

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... 4

PRELIMINARY STATEMENT ............................................................................. 7

PROCEDURAL HISTORY...................................................................................... 8

    I.    General Background Regarding the Reorganized Debtors and the Chapter 11 Cases ......................................................................................................... 8

    II.    The Reorganized Debtors' Plan .......................................................... 10

    III.    Background to the Complaint and Administrative Expense Claims ................... 12

ARGUMENT ......................................................................................................... 14

    I.    The Complaint and Administrative Expense Claims Must Be Tested Under Federal Pleading Requirements ............................................................. 14

    II.    Plaintiffs Do Not Have Standing to Bring Private Actions Under Chilean Environmental and Constitutional Law. .................................................. 16

    III.    The Administrative Expense Claims and the Complaint Should be Dismissed Pursuant to the Doctrine of *Forum Non Conveniens* and the Valid Arbitration Clause Under the Manzano Contract. ................................................... 19

        A.    Chilean courts of competent jurisdiction provide an adequate alternative forum. ....................................................................... 20

        B.    The Plaintiffs' choice of forum should not be given deference in this case. ................................................................................... 20

        C.    The balance of public and private interest factors supports application of *forum non conveniens* . ......................................................... 21

        D.    The Court should enforce the Manzano Contract's valid arbitration clause, which designates an agreed forum in Chile to adjudicate the types of issues raised in the Complaint. .................................... 23

    IV.    In the Alternative, the Court Should Exercise Its Discretion to Abstain From Exercising Jurisdiction Pursuant to 28 U.S.C. § 1334(c)(1). .............................. 24

        A.    The claims raised in the Complaint are not closely related to the Chapter 11 Cases and their resolution will not impact the efficient administration of the estates. ...................................................... 26

B.     Foreign law issues predominate over bankruptcy issues in the Complaint, and the applicable foreign laws are complex. ........................ 27

C.     The Plaintiffs have already initiated several actions in Chile for similar claims and on the basis of the same alleged culpable conduct. .... 28

D.     The issues raised in the Complaint are primarily non-core issues and can be effectively separated from the Chapter 11 Cases. ......................... 31

E.     The Complaint is an unnecessary burden on the judicial resources of the Court .................................................................................................... 33

F.     Commencement of the Complaint in this Court is an attempt by the Plaintiffs to re-litigate the same claims in a new forum. ......................... 34

CONCLUSION ................................................................................................................... 34

## <u>TABLE OF AUTHORITIES</u>

**<u>Page(s)</u>**

**<u>Rules and Statutes</u>**

9 U.S.C. §2 ..................................................................................................... 24

11 U.S.C. § 365(b) ............................................................................ 29, 30, 33

28 U.S.C. § 157(b) .......................................................................................... 33

28 U.S.C. § 1334(c) ................................................................................... 9, 26

Chilean Water Code and Environmental Law ............................... 17, 19, 22

Fed. R. Bankr. P. 9014(c) .............................................................................. 16

Organic Law of the Superintendency ...................................................... 19, 20

**<u>Cases</u>**

Acierno v. Haggerty,
No. Civ. A. 04-1376-KAJ, 2005 WL 3134060 (D. Del. Nov. 23, 2005) ........................... 31

Align Technology, Inc. v. 3Shape A/S,
No. 17-1648 and 18-1949, 2021 WL 1535530 (D. Del. 2021) ........................................ 25

Amatex Corp. v. Aetna Cas. & Sur. Co. (In re Amatex Corp.),
107 B.R. 856 (E.D. Pa. 1989), *aff'd*, 908 F.2d 961 (3d Cir. 1990) ................................... 17

Arnold Print Works Inc. v. Apkin (In re Arnold Print Works, Inc.),
815 F.2d 165 (1st Cir. 1987) ........................................................................................... 33

Beard v. Braunstein,
914 F.2d 434 (3d Cir. 1990) ............................................................................................ 33

Davis v. Wells Fargo,
824 F.3d 333 (3d. Cir. 2016) ........................................................................................... 18

Direct Energy Business, LLC v. Acorn MHL Technology, LLC,
No. 11-1232, 2012 WL 393328 (W.D. Pa. Feb. 6, 2012), *aff'd*, No. 12-1493, 2013 WL
1136835 (3d Cir. Mar. 20, 2013) ..................................................................................... 25

Flake v. Alper Holdings USA, Inc. (In re Alper Holdings),
398 B.R. 736 (S.D.N.Y. 2008) ............................................................................. 16

Gulf Oil Corp. v. Gilbert,
330 U.S. 501 (1947) ............................................................................................. 23

Halper v. Halper,
164 F.3d 830 (3d Cir. 1999) ............................................................................ 32-33

Hill v. Day (In re Today's Destiny, Inc.),
388 B.R. 737 (Bankr. S.D. Tex. 2008) ................................................................ 16

In re Adelphia Commc'ns Corp.,
359 B.R. 54 (Bankr. S.D.N.Y. 2006) ................................................................... 16

In re Alto Maipo Delaware LLC, et al.,
No. 21-11507 (KBO) (Bankr. D. Del.) ................................................................ 10

In re Best Prods. Co., Inc.,
210 B.R. 714 (Bankr. E.D. Va. 1997) .................................................................. 16

In re Bozel S.A.,
434 B.R. 86 (S.D.N.Y 2010) ............................................................................... 26

In re Continental Airlines, Inc.,
156 B.R. 441 (Bankr. D. Del. 1993) .................................................................... 27

In re CPW Acquisition Corp.,
No. 08-14623 (AJG), 2011 WL 830556 (Bankr. S.D.N.Y. March 3, 2011) ...... 26, 30

In re DHP Holdings II Corp.,
435 B.R. 220 (Bankr. D. Del. 2010) ............................................................... passim

In re Ditech Holding Corp.,
Case No. 19-10412 (JLG), 2021 WL 4928724 (Bankr. S.D.N.Y. Oct. 21, 2021) ............. 16

In re Enron Corp.,
298 B.R. 513 (Bankr. S.D.N.Y. 2003), aff'd, 419 F.3d 115 (2d Cir. 2005) ...... 17

In re GCX Ltd.,
634 B.R. 441 (Bankr. D. Del. 2021) ................................................................ 21-23

In re Mintze,
434 F.3d 222 (3d Cir. 2006) ............................................................................ 24-25

In re Regus Business Centre Corp.,
301 B.R. 122 (Bankr. S.D.N.Y. 2003) ................................................................. 26, 29

In re Schering Plough Corp. Intron/Temodar Consumer Class Action,
678 F.3d 235 (3d. Cir. 2012) ............................................................................... 18

In re Sun Healthcare Group, Inc.,
267 B.R. 673 (Bankr. D. Del. 2000) ................................................................. 29-30

In re Tonopah Solar Energy, LLC,
Case No. 20-11844, 2022 WL 958117 (D. Del. March 30, 2022) ...................... 27-29

Piper Aircraft Co. v. Reyno,
454 U.S. 235 (1981) ........................................................................................... 22

Scherk v. Alberto-Culver Co.,
417 U.S. 506 (1974) ........................................................................................... 25

## PRELIMINARY STATEMENT

Through individual administrative expense proofs of claim (each an "Administrative Expense Claim," and together the "Administrative Expense Claims," D.I. 684–688) incorporating assertions set forth in an adversary complaint attached thereto (the "Complaint," D.I. 684–688), Comunidad de Aguas Canal El Manzano ("Manzano"), Gemma Contreras Bustamante ("Contreras"), Christian Becker Matkovic ("Becker"), Maite Birke Abaroa ("Birke"), and Bruno Bercic ("Bercic," and, together with Manzano, Contreras, Becker and Birke, the "Plaintiffs") seek a fifth bite at the apple by coming to the United States Bankruptcy Court for the District of Delaware (this "Court") to pursue claims they have repeatedly brought, unsuccessfully, in their home jurisdiction.  The Complaint and the Administrative Expense Claims should be dismissed on the following grounds: (i) the Administrative Expense Claims rely entirely on the Complaint and assert no independent basis, such that the two are functionally the same and should be scrutinized and dismissed in accordance with the Federal Rules of Civil Procedure (the "Federal Rules"); (ii) Plaintiffs do not have standing under Chilean constitutional and environmental laws, which purportedly serve as the basis for certain of the claims contained in the Complaint (indeed, these laws do not contain private rights of action for any plaintiff); and (iii) the *Convenio Complementario* entered into by and between Alto Maipo and Manzano on June 10, 2021 (the "Manzano Contract") contains a valid and enforceable arbitration clause.  Although the Court would be justified in dismissing the Complaint and Administrative Expense Claims on the merits on the grounds listed above, dismissal of the Complaint and Administrative Expense Claims is also warranted in this case (i) under the doctrine of *forum non conveniens*, which militates squarely in favor of these disputes being adjudicated in Chile where all parties, evidence, and witnesses are located, and (ii) pursuant to the Court's authority to abstain from adjudicating matters, in its discretion, pursuant to 28 U.S.C. § 1334(c)(1), particularly where the Debtors have emerged from

the above-captioned chapter 11 proceedings (the "Chapter 11 Cases"), and the existence of the Administrative Expense Claims will shortly be the only barrier to the Reorganized Debtors' closure of these Chapter 11 Cases.  For the reasons set forth below, this Court should grant Defendant's motion (this "Motion") to dismiss the Complaint and the Administrative Expense Claims.  In support of this Motion, the Reorganized Debtors rely on the *Declaration of Sebastián Avilés Bezanilla Pursuant to Rule 44.1 in Support of Alto Maipo's Motion to Dismiss Plaintiff's Complaint* (the "Avilés Declaration"), attached hereto as **Exhibit A**.  The Defendant intends to submit the Avilés Declaration in connection with this Motion pursuant to Rule 44.1 of the Federal Rules, as made applicable by Rule 9017 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## **PROCEDURAL HISTORY**

I.      **General Background Regarding the Reorganized Debtors and the Chapter 11 Cases**

On November 17, 2021 (the "Petition Date"), Alto Maipo SpA ("Alto Maipo" or "Defendant") and Alto Maipo Delaware LLC (along with Alto Maipo, the "Reorganized Debtors") commenced the Chapter 11 Cases by filing a petition for relief under chapter 11 of the United States Code (the "Bankruptcy Code") before this Court.  The Reorganized Debtors continued to operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  An official committee of unsecured creditors was appointed on January 31, 2022 (D.I. 231).[2]  On April 6, 2022, an ad hoc committee of tort claimants comprised of the Plaintiffs in this action requested the United States Trustee's appointment of an official committee of tort claimants, which the United States Trustee declined to do.

---

[2]      Unless otherwise specified, citations to (D.I. ___) refer to docket entries from *In re Alto Maipo Delaware LLC, et al.*, No. 21-11507 (KBO) (Bankr. D. Del.).

As set forth more fully in the *Declaration of Javier Dib in Support of Chapter 11 Petitions and First Day Motions* (D.I. 13, the "Dib Declaration"), which is incorporated herein by reference, Alto Maipo is a special purpose company, incorporated under Chilean law for the purpose of developing, constructing, and operating a run-of-river hydroelectric energy project in the Santiago Metropolitan Region of Chile, approximately 30 miles southeast of the city of Santiago.  The hydroelectric energy project (the "Project") consists of two run-of-river hydroelectric plants (the "Hydroelectric Plants"), which currently provide significant zero-emissions energy to Chile's electric grid.  *See* Dib Declaration, ¶¶ 9-10.

The Project captures water flow from several tributaries of the Maipo River that arise in the Andes Mountains: the Volcán River, the Yeso River, the Aucayes Stream, and the Colorado River (via the Alfalfal I and Maitenes plants).  *See id.*, ¶ 11.  This water flow is used to power the Hydroelectric Plants in series, after which all collected water is discharged directly into the Maipo River.  *See id.*  In order to feed water flow to the Hydroelectric Plants, the Project required the construction of approximately 42 miles of underground tunnels, in addition to two underground caverns that house the Hydroelectric Plants, along with various associated structures and facilities. *See id.*, ¶ 12.  As of the Petition Date, approximately 99% of the Project's required construction was complete and shortly before the Reorganized Debtors' emergence from the Chapter 11 Cases, all four units reached commercial operation.

Unfortunately, as of the filing of the Chapter 11 Cases, the energy market that Alto Maipo projected that it would enter in April 2022 was expected to look very different from the energy market that it projected would exist when construction began on the Project in 2013.  *See id.*, ¶ 29. In the interim, there were significant shifts both on the supply and demand side that rendered Alto Maipo's existing capital structure unsustainable.  *See id.*, ¶ 6.  On the demand side, increased

generation capacity drove down electricity prices in Chile, such that, as of the Petition Date, spot prices at which energy producers could sell power into the grid were less than half of what they were in 2013. *See id*. On the supply side, environmental factors have significantly impacted the hydrology of the Maipo Valley, where the Project is located, and lower precipitation levels reduce in turn the amount of power that the Project can produce. *See id*. As a result, prior to filing its petition for chapter 11 protection, Alto Maipo concluded that it could no longer rely on its prior revenue projections, which assumed economic and environmental factors that are no longer in place. *See id*. In order to right-size their capital structure to meet these market challenges, and in light of a looming liquidity shortfall, the now-newly Reorganized Debtors commenced the Chapter 11 Cases to ensure that they could complete construction of the Project and generate renewable energy for many years to come. *See id.*, ¶ 7.

## II.    The Reorganized Debtors' Plan

On February 28, 2022, the Reorganized Debtors filed the *Joint Chapter 11 Plan of Reorganization of Alto Maipo SpA and Alto Maipo Delaware LLC Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 313, as amended, the "Plan") and shortly thereafter filed the *Disclosure Statement for the Joint Chapter 11 Plan of Reorganization of Alto Maipo SpA and Alto Maipo Delaware LLC Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 314, as amended, the "Disclosure Statement"). On April 6, 2022, the Court entered the *Order (I) Approving the Disclosure Statement; (II) Approving Solicitation and Voting Procedures, Including (A) Fixing the Record Date, (B) Approving the Solicitation Packages and Procedures for Distribution, (C) Approving the Form of the Ballot and Establishing Procedures for Voting, and (D) Approving Procedures for Vote Tabulation; (III) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures; and (IV) Granting Related Relief* (D.I. 463) approving the Disclosure Statement and solicitation and voting procedures for the Plan, among other things. On the same

date, the Reorganized Debtors filed revised solicitation versions of the Plan (D.I. 464) and the Disclosure Statement (D.I. 465).

On May 13, 2022, the Court held a confirmation hearing and approved the Reorganized Debtors' Plan, which, among other things, provides for the unimpaired treatment of holders of general unsecured claims. The same day, the Court entered its *Findings of Fact, Conclusions of Law, and Order Confirming the Joint Chapter 11 Plan of Reorganization of Alto Maipo SpA and Alto Maipo Delaware LLC Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 614). On May 17, 2022, the Court entered an *Order (I) Amending Confirmation Order and (II) Approving Amendment No. 7 to RSA and Conforming Changes to Plan* (D.I. 632). On May 26, 2022, the effective date of the Plan occurred (D.I. 645).

Pursuant to Section 5.1(b) of the Plan, the Reorganized Debtors assumed the executory contacts and unexpired leases identified on their list of proposed assumed agreements (the "Assumed Executory Contracts and Unexpired Leases Schedule"), among others. *See Notice of Filing of Further Revised Plan Supplement for the Joint Chapter 11 Plan of Reorganization of Alto Maipo SpA and Alto Maipo Delaware LLC Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 597). Included on the list of agreements to be assumed was the Manzano Contract pertaining to the construction of certain complementary water intake works (the "Manzano Intake"). Further, under the Plan, the Reorganized Debtors established that Manzano's assertions as to defaults under the Manzano Contract would be decided in a court, arbitral body, or administrative agency of competent jurisdiction. *See Amended Joint Chapter 11 Plan of Reorganization of Alto Maipo SpA and Alto Maipo Delaware LLC Pursuant to Chapter 11 of the Bankruptcy Code* (D.I. 574) at Section 5.1(c) ("[The Manzano Contract] shall be assumed on the Effective Date. Manzano asserts current defaults under the Manzano Contract, and the existence of any such defaults and the

11

required cure shall be resolved by a court, arbitral panel, or any other judicial or administrative body of competent jurisdiction, as to which all parties fully reserve all relevant rights and defenses.").

## III.    Background to the Complaint and Administrative Expense Claims

On June 27, 2022, the Plaintiffs each filed an Administrative Expense Claim for no less than $62,881,607.00, incorporating the assertions set forth in the Complaint attached thereto, which was filed jointly on behalf the Plaintiffs.   As of the date of this Motion, while the Administrative Expense Claims were served pursuant to the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules") 9013-1(g), the Complaint has not been served on the Defendant in accordance with Rule 7004 of the Bankruptcy Rules and Rule 5 of the Federal Rules, nor has the Defendant agreed to waive service of process.

The Complaint asserts liability against Alto Maipo based on the construction of the tunnels in connection with the Project and various other alleged violations of the Chilean Water Code[3] and Environmental Law.   In addition, the Complaint asserts damages for breach of the Manzano Contract on the basis that Alto Maipo has not yet built the Manzano Intake.

Prior to and during the Chapter 11 Cases, Plaintiffs, individually and collectively, initiated several actions in Chile premised on many of the same allegations in the Complaint.   *See* Avilés Declaration, ¶¶ 11, 19, 25.   As highlighted in Parts II and IV *infra*, each of those actions have proven unsuccessful in halting the operation of the Project and there have been no findings as to violations of the Chilean Water Code or Environmental Law.   *See* Avilés Declaration, ¶¶ 18, 21-23, 27-28.   The first of these actions predates the Petition Date and involved several of the

---

[3]       Capitalized terms herein shall have the meanings ascribed to them below herein or in the Complaint.

Plaintiffs, including Contreras and Birke.  *See* Avilés Declaration, ¶ 11.  The action was brought before the Second Environmental Court of Santiago (the "<u>Environmental Court</u>") and addressed claims by the plaintiffs in that action that Alto Maipo's construction of tunnels in connection with the Project affected their water rights.  *See* Avilés Declaration, ¶ 11.  In a 340-page ruling following an extensive review of the evidence[4] and a hearing, the three-member tribunal rejected the claims, including those by Contreras and Birke.  *See* Avilés Declaration, ¶ 11-18.

Subsequently, and in violation of the automatic stay in the Chapter 11 Cases, in March 2022, Manzano sought injunctive relief before the Chilean Court of Appeal of San Miguel (the "<u>Chilean Court of Appeals</u>") in order to halt any testing or operation of the Project (the "<u>Postpetition Manzano Action</u>").  *See* Avilés Declaration, ¶ 19.  Manzano's injunctive relief was premised on an allegation that Alto Maipo's testing of the Project on or around February 25, 2022, violated the water rights of Manzano's individual members under Chilean Constitutional law.  *See* Avilés Declaration, ¶ 19.  On March 29, 2022, the Chilean Court of Appeals denied the emergency relief sought, and following a hearing on the matter, denied Manzano's request.  *See* Avilés Declaration, ¶ 21-23.

Twice more, also in violation of the automatic stay, Manzano filed separate claims with the Chilean Superintendency of Environment (the "<u>Superintendency</u>") and the Chilean National Electrical Coordinator (the "<u>Electronic Coordinator</u>") seeking to halt the Project.  *See* Avilés Declaration, ¶ 25.  Following Alto Maipo's response to the allegations and without taking any remedial action, the Electric Coordinator granted Alto Maipo commercial operating certificates to allow the Reorganized Debtors to begin full commercial operation of the Project.  *See* Avilés Declaration, ¶ 27.  In late April 2022, the Superintendency issued a temporary 30-day decree to

---

[4]      Notably, Birke submitted an expert report to support the claims before the Environmental Court.

address Manzano's petition requesting monitoring of the Colorado River.  *See* Avilés Declaration,

¶ 28.  All results demonstrated that Manzano had enough water to satisfy their water rights.  *Id.*

Following the lapse of the 30-day period, the Superintendency took no further action.  *Id.*

As discussed more fully below, (i) Plaintiffs' assertions regarding the effects of the Project

on their water rights have been thoroughly evaluated and dismissed by Chilean tribunals; (ii)

Plaintiffs do not have standing to assert private actions for violations of the Chilean Water Code

or Environmental Law because such claims may only be investigated and sanctioned by the

applicable governmental authorities; (iii) the Manzano Contract has not been breached; and (iv)

even if a breach occurred, which Alto Maipo strongly disputes, Plaintiffs should bring their claims

in accordance with the arbitration clause under the agreement or before a court or administrative

agency of competent jurisdiction in Chile, where they have previously brought several similar

actions.

## **ARGUMENT**

### I.     The Complaint and Administrative Expense Claims Must Be Tested Under Federal Pleading Requirements

Bankruptcy Rule 9014(c) permits a bankruptcy court to exercise its discretion "at any stage

in a particular matter to direct that one or more of the other rules in Part VII shall apply."  Fed. R.

Bankr. P. 9014(c).  This includes Bankruptcy Rule 7012(b), which makes Federal Rules 12(b)

through 12(i) applicable in bankruptcy proceedings.  Fed. R. Bankr. P. 7012(b).  Where, as here, a

determination under Bankruptcy Rule 7012(b) permits dismissal on the pleadings, without a waste

of judicial and estate resources through discovery and trial, bankruptcy courts routinely apply Rule

12(b)(6).    *See In re Adelphia Commc'ns Corp.*, 359 B.R. 54, 56 n.5 (Bankr. S.D.N.Y. 2006)

(finding Rule 12(b)(6) motions "to be a useful procedural mechanism to decide some kinds of

contested matter disputes economically, saving litigation costs for the benefit of creditors and other

stakeholders."); *see also In re Ditech Holding Corp.*, Case No. 19-10412 (JLG), 2021 WL 4928724, at *5-6 (Bankr. S.D.N.Y. Oct. 21, 2021) (applying Rule 12(b)(6) to an administrative expense claim); *In re Best Prods. Co.*, *Inc.,* 210 B.R. 714, 716 (Bankr. E.D. Va. 1997) (dismissing claim for administrative expenses under Rule 12(b)(6), as it "offer[ed] an opportunity to resolve the parties' dispute expeditiously"); *Flake v. Alper Holdings USA, Inc. (In re Alper Holdings)*, 398 B.R. 736, 748 (S.D.N.Y. 2008) (affirming bankruptcy court's dismissal of claims under Rule 12(b)).

Moreover, courts recognize that a proof of claim is generally the functional equivalent of a complaint in an adversary proceeding or other civil action. See, e.g., *Hill v. Day (In re Today's Destiny, Inc.)*, 388 B.R. 737, 757 (Bankr. S.D. Tex. 2008) (noting that the "procedural consequences for filing a proof of claim or civil action are materially similar."); *Amatex Corp. v. Aetna Cas. & Sur. Co. (In re Amatex Corp.)*, 107 B.R. 856, 859 (E.D. Pa. 1989) ("[T]he filings of proofs of claims by claimants are the equivalent of their filing suits against the Debtor."), *aff'd*, 908 F.2d 961 (3d Cir. 1990).

This rationale applies with particular force to the Administrative Expense Claims, which wholly rely on the Complaint as the "basis" and "supporting documentation" for the relief sought thereunder. *See* Administrative Expense Claims (d)–(e). Judicial efficiency dictates that Rule 12(b) be applied to the Administrative Expense Claims and the Complaint, as they rely on the same facts, assert the same legal causes of action, and involve the same parties. Defendant should not be required to expend resources to defend against the Administrative Expense Claims and Complaint separately, particularly where the two are inextricably linked (indeed, they are functionally the same relief sought through different procedural avenues). The relief sought by Alto Maipo in seeking to have the Rule 12(b) standard applied to both proceedings furthers the

goal of bringing bankruptcy court procedure into line with district procedure.  *See In re Enron Corp.*, 298 B.R. 513, 521-22 (Bankr. S.D.N.Y. 2003) (noting that "Part VII of the [B]ankruptcy [R]ules is based on the premise that to the extent possible practice before the bankruptcy courts and the district court[s] should be the same"), *aff'd*, 419 F.3d 115 (2d Cir. 2005) (internal quotation marks and citations omitted) (alterations in original).  The Administrative Expense Claims incorporate the Complaint in its entirety and set forth no other basis for the relief sought; therefore, the Administrative Expense Claims and the Complaint function as a single complaint. Alto Maipo should not be required to expend resources at significant cost to defend against each action separately.  Moreover, applying Rule 12(b) to the Administrative Expense Claims permits the Court to address the threshold legal questions raised in this Motion without addressing factual disputes that are relevant to the merits, and without the parties incurring the burden and expense of discovery.  The Court should, in its discretion, apply Rule 12(b) to the Administrative Expense Claims, which self-evidently already applies to the Complaint, as the actions are one and the same.

II.     **Plaintiffs Do Not Have Standing to Bring Private Actions Under Chilean Environmental and Constitutional Law.**

"A motion to dismiss for want of standing is properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter."  *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d. Cir. 2012) (citing *Ballentine v. United States*, 486 F.3d 806, 810 (3d. Cir. 2007).  "In evaluating a Rule 12(b)(1) motion, a court must first determine whether the movant presents a facial or factual attack . . . . In reviewing a facial challenge, which contests the sufficiency of the pleadings, 'the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *Id.*  "In evaluating whether a complaint adequately pleads the elements of standing, courts apply the standard or reviewing a complaint pursuant to a Rule 12(b)(6) motion to dismiss

for failure to state a claim." *Id.* "The standing requirement is analytically distinct from the merits the underlying dispute . . . . Although standing and merits questions may involve overlapping facts, standing is generally an inquiry about the plaintiff: is this the right person to bring this claim." *Davis v. Wells Fargo*, 824 F.3d 333, 348 (3d. Cir. 2016).

Here, Plaintiffs manifestly are not the right people to bring these claims, as they seek to bring claims under the Chilean Water Code and Environmental Law—neither of which provide private rights of action to the Plaintiffs in their home jurisdiction. Defendant's facial challenge to the Complaint clearly establishes dismissal is appropriate at this stage, where Plaintiffs seek to invent causes of action not afforded to individuals plaintiffs in Chile.

The Complaint and Administrative Expense Claims should be dismissed to the extent they assert damages and causes of action based on violations of the Chilean Water Code or Environmental Law, as such actions may only be brought by the Dirección General de Aguas ("DGA") and the Environmental Superintendency ("Superintendency"). Avilés Declaration at ¶ 29. In Chile, the DGA has all supervisory and sanctioning powers with respect to violations of the Chilean Water Code. Avilés Declaration at ¶ 30. The sanctioning procedure for Chilean Water Code violations is regulated in Articles 172 bis and the DGA is the competent entity in charge of these procedures. *Id.* A sanctioning procedure can be initiated in four different ways: (i) by the DGA itself; (ii) by a complaint to the DGA from an individual; (iii) by admission of violation by a wrongdoer; or (iv) at the request of another State Department. *Id.* Regardless of how the sanctioning procedure is initiated, the DGA is the sole entity authorized to prosecute such claims.

In the event that the DGA finds that a violation of the Chilean Water Code has occurred, in accordance with article 173 of the Chilean Water Code, the DGA may assess certain fines depending on the severity of the violation. Avilés Declaration at ¶ 31. These fines are then

remitted to the General Treasury of the Republic for the benefit of the Chilean Republic.  *Id*. Nowhere in the Chilean Water Code does there exist the private right of action Plaintiffs seem to rely upon, or a direct right of payment to the Plaintiffs rather than payment of damages, if any, to the national treasury.  *Id*.

Similarly, the Superintendency is responsible for ensuring compliance with environmental laws in Chile.  Avilés Declaration at ¶ 32.   Under the Organic Law of the Superintendency, established in Article 2 of Law No. 20.417, Article 35, the Superintendency is empowered and obligated to investigate and sanction violations of environmental law, including, among other things, potential non-compliance with Resolutions of Environmental Qualification (*Resoluciones de Calificación Ambiental*, or "RCAs"), emission and quality provisions, prevention and decontamination plans, and all environmental instruments.  *Id*.

According to the Organic Law of the Superintendency, a sanctioning procedure for violation of Environmental Law may be initiated: (i) *ex officio*, when the Superintendency becomes aware of facts that could constitute an infraction; (ii) at the request of any sectoral body, when it becomes aware from the reports issued by the agencies and services with competence in matters of environmental audits; or (iii) following the filing of a complaint that meets the requirements of seriousness and merit established by law.[5]  Avilés Declaration at ¶ 33.  Further, if the Superintendency determines that a violation of environmental law has occurred, it may issue the following types of sanctions depending on the severity of the violation: (i) written reprimand (only for minor infractions); (ii) a monetary fine that will increase depending on severity of the infraction; (iii) closing the relevant project (only for serious and very serious infractions); and (iv)

---

[5]     Organic Law of the Superintendency, Art. 47.

revocation of an RCA (only for serious and very serious infractions).[6]  Avilés Declaration at ¶ 34. Similar to the DGA in the context of the Chilean Water Code, if a monetary fine is assessed, it is paid to the General Treasury of the Republic—not to any individual affected party. Individuals do not have standing to recover damages for violations of environmental law in Chile.  *Id.*

Plaintiffs appear to be well aware of the proper protocol for asserting these claims because, as further detailed in Part IV, Plaintiffs filed petitions with the DGA and the Superintendency.  It is those agencies that have the power to investigate and sanction under the Chilean Water Code and Environmental Law as it relates to individual water rights, as well as for the benefit of the general public.  Accordingly, Plaintiffs' claims should be dismissed, as they do not have standing to assert or recover damages under the Chilean Water Code or Environmental Law.  Plaintiffs should not be allowed to invent causes of action in the United States that they would not otherwise have in Chile.

### III.    The Administrative Expense Claims and the Complaint Should be Dismissed Pursuant to the Doctrine of *Forum Non Conveniens* and the Valid Arbitration Clause Under the Manzano Contract.

The doctrine of *forum non conveniens* permits a court, at its discretion, "to dismiss a [case] even if the court is a permissible venue with proper jurisdiction over the [case]."  *In re GCX Ltd.*, 634 B.R. 441, 448 (Bankr. D. Del. 2021) (internal quotations omitted).  Courts in this circuit apply a three-part test when deciding whether to dismiss a case on the basis of *forum non conveniens*:

> First, the court must determine whether an adequate alternative forum can entertain the case.  Second, if such a forum exists, the . . . court must . . . determine the appropriate amount of deference to be given to the plaintiff's choice of forum.  Third, the . . . court must balance the relevant public and private interest factors.

*Id.*  Here, all three considerations militate in favor of dismissal.

---

[6]     Organic Law of the Superintendency, Art. 38.

A.      *Chilean courts of competent jurisdiction provide an adequate alternative forum.*

An available alternative forum is generally considered adequate where "the defendant[] [is] amenable to service of process there and the forum permits litigation of the subject matter of the dispute." *GCX*, 634 B.R. at 449.  In this case, Chilean courts of competent jurisdiction clearly provide an adequate alternative forum.  Alto Maipo has evinced that it is amenable to judicial processes in Chile through its continued engagement in the Postpetition Manzano Action and several other proceedings initiated by the Plaintiffs in Chile.  Further, as discussed in greater detail below, the Manzano Contract itself designates in an arbitration clause the Chamber of Commerce of Santiago as the forum in which disputes arising under its terms should be adjudicated.  *See* Avilés Declaration at ¶ 9.  Manzano has not suggested that the forum designated under the Manzano Contract is inadequate, nor could it credibly do so, as Manzano agreed to the adequacy of the designated forum when it executed the Manzano Contract.  As such, this factor supports application of *forum non conveniens*.

B.      *The Plaintiffs' choice of forum should not be given deference in this case.*

The focus of a *forum non conveniens* inquiry is the convenience of a plaintiff's chosen forum to the plaintiff itself, ensuring that, to the extent possible, a litigant who has sought to litigate a claim close to home is permitted to do so.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981).  When a plaintiff's choice of forum is its home forum, it is entitled to deference on the assumption that the choice is convenient.  *Id.* at 255-256.  "A foreign plaintiff's choice [of forum] deserves less deference," however, because in such a case, "this assumption [is] much less reasonable."  *Id.; see also GCX*, 634 B.R. at 449-450.  Because the Plaintiffs in this case are all foreign parties residing in Chile, the default presumption of convenience where a plaintiff brings a claim in its home jurisdiction does not apply.

Further, the allegations in the Complaint fail to make the kind of "strong showing of convenience" that would be necessary to overcome the default assumption that a plaintiff's choice of a foreign forum is not necessarily a reasonable one. *GCX*, 364 B.R. at 450 (noting that the reluctance of courts to assume the convenience of a foreign plaintiff's chosen forum "can . . . be overcome by a strong showing of convenience"). All of the alleged conduct by Alto Maipo that underlies the Plaintiffs' claims occurred in Chile, the relationship between the Plaintiffs and the Reorganized Debtors is governed by a Chilean contract or Chilean law; the Plaintiffs' claims are based almost entirely in Chilean law; and most, if not all, relevant evidence and witnesses needed to resolve these claims are located in Chile. There is nothing about the allegations in the Complaint, the entirely foreign parties, or the applicable law that warrants deference to the Plaintiffs' choice to pursue their claims in this Court, or supports a presumption that this Court is the most convenient forum for any of the parties.

C.      *The balance of public and private interest factors supports application of* forum
        non conveniens.

Courts have identified a number of public and private interest factors that should be considered when determining whether it is appropriate to dismiss a case under the doctrine of *forum non conveniens*. *See, e.g., Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947). Relevant private interest factors "include the ease of access to sources of proof; ability to compel witness attendance if necessary; means to view relevant premises and objects; and any other potential obstacle impeding an otherwise easy, cost-effective, and expeditious trial." *GCX*, 634 B.R. at 449 (internal quotations omitted).

In this case, the relevant private interest factors govern in favor of dismissal. As previously discussed, all parties to the Complaint are located in Chile, all relevant evidence and witnesses are located in Chile, and the relationship between the Plaintiffs and the Defendant is either governed

by a Chilean contract or Chilean law.  It is impossible to fathom why Chilean courts would *not* be more efficient, accessible, and convenient fora for adjudication of the claims raised in the Complaint with respect to these private interest factors.

Relevant public interest factors, on the other hand, include whether the case "touch[es] the affairs of many persons" in another forum and the "local interest in having localized controversies decided at home."  *See Gulf Oil Corp.*, 330 U.S. at 508-509.  Courts also consider whether the plaintiffs' chosen forum is likely to create unnecessary conflict-of-law issues or require the unnecessary application of foreign law, and the connection between a defendant's alleged culpable conduct and the forum.  *See GCX*, 634 B.R. at 452.

Assessment of the relevant public interest factors counsels strongly in favor of dismissal in this case.  First, Manzano alleges that it represents approximately 3,000 individual community members.  Complaint at ¶ 11.  As such, accepting the allegations in the Complaint as true, the claims at issue in the Complaint implicate the rights of thousands of non-party individuals as well, all of whom are located in Chile.  Second, given the Chilean Water Code and Environmental Law issues raised by the Complaint, it seems likely that there would be a strong local interest in having such issues decided by a Chilean court or other tribunal, where these community members may more actively participate and where similar issues of law are more likely to recur in other disputes. Third, since the Complaint raises claims almost entirely based in Chilean law, litigating such claims in this forum will likely require this Court to decide complex conflict of law and foreign law issues.  Finally, Alto Maipo's alleged culpable conduct that underlies the claims raised in the Complaint entirely took place in Chile, such that the sole connection between the alleged culpable conduct and the Plaintiffs' chosen forum is that Defendant has completed a chapter 11 restructuring before this Court, pursuant to which the rights of the Plaintiffs, if any, were explicitly

left unimpaired.  As such, the balance of public and private interest factors in this case favors dismissal of the Complaint pursuant to the doctrine of *forum non conveniens*.

> D.    *The Court should enforce the Manzano Contract's valid arbitration clause, which designates an agreed forum in Chile to adjudicate the types of issues raised in the Complaint.*

The Manzano Contract, which is the basis for the breach of contract claims raised in the Complaint, provides that all disputes between the parties arising under the Manzano Contract be resolved through arbitration before the Santiago Chamber of Commerce.  See Avilés Declaration at ¶ 9.  The Federal Arbitration Act (the "<u>FAA</u>") "has established a strong policy in favor of arbitration" and it "requires rigorous enforcement of arbitration agreements."  *In re Mintze*, 434 F.3d 222, 229, 233 (3d Cir. 2006); see also 9 U.S.C. §2 ("A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable").  Under applicable law regarding application of the FAA to bankruptcy proceedings, the FAA "mandates enforcement of arbitration when applicable unless Congressional intent to the contrary is established."  *In re Mintze*, 434 F.3d 222, 233 (3d Cir. 2006); *see also Direct Energy Business, LLC v. Acorn MHL Technology, LLC*, No. 11-1232, 2012 WL 393328, at *3 (W.D. Pa. Feb. 6, 2012) (granting defendants' motion to dismiss where the parties were subject to an arbitration agreement), *aff'd*, No. 12-1493, 2013 WL 1136835 (3d Cir. Mar. 20, 2013).

Further, the arbitration clause in the Manzano Contract stands as evidence not only that an adequate alternative forum for the resolution of the present disputes exist, but indeed that such forum is one to which the parties to the Manzano Contract have already agreed.  "An agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute."  *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).  A forum selection clause can likewise

provide grounds for dismissal under *forum non conveniens*.  *See Align Technology, Inc. v. 3Shape A/S*, No. 17-1648 and 18-1949, 2021 WL 1535530, at *3 (D. Del. 2021).  "When a court receives a request to dismiss for *forum non conveniens* on the basis of a forum selection clause, it must confront two threshold questions: (1) does the forum selection clause apply to the claims at issue; and (2) is the forum selection clause enforceable."  See *id.*

As to the latter inquiry, the enforceability of the Manzano Contract and its provisions do not seem to be in dispute here.  Indeed, the Plaintiffs seek to enforce the contract.  Presumably, then, the Plaintiffs consider its provisions to be valid and binding.  As to the former question, there is no doubt that breach of contract and related claims fall squarely within the plain language and purpose of the arbitration clause.  *See* Avilés Declaration at ¶ 9.  The arbitration clause is intended to cover all disputes arising under the Manzano Contract.  Because the Plaintiffs' breach of contract and related claims are governed by an arbitration clause and, in effect, a forum selection clause, the Court should dismiss the Complaint so that it can be heard in the forum and resolved in the manner to which the parties agreed.

## IV.    In the Alternative, the Court Should Exercise Its Discretion to Abstain From Exercising Jurisdiction Pursuant to 28 U.S.C. § 1334(c)(1).

In the alternative, the Court should use its discretion to abstain from hearing the matter under 28 U.S.C. § 1334(c)(1).  Section 1334(c)(1) allows a court to "abstain[] from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11" when doing so is "in the interest of justice, or in the interest of comity with State Courts or respect for State law." 28 U.S.C. § 1334(c)(1).  Although the statute refers to state courts and state law, courts have interpreted § 1334(c)(1) to apply "to foreign proceedings under the doctrine of international comity."  *In re CPW Acquisition Corp.*, No. 08-14623 (AJG), 2011 WL 830556, at *6 (Bankr. S.D.N.Y. March 3, 2011); *see also In re Bozel S.A.*, 434 B.R. 86, 102, 106 (S.D.N.Y 2010)

(affirming application of section 1334(c)(1) to foreign context and declining to abstain where resolution of the foreign law dispute was "quintessential to the administration of the Debtors' Chapter 11 case"); *In re Regus Business Centre Corp.*, 301 B.R. 122, 129 (Bankr. S.D.N.Y. 2003) (abstaining from adjudicating a dispute "between English parties with respect to property situated in England which must be resolved under English law and can be resolved promptly and fully by an English court").

In determining whether to exercise its discretion to abstain from adjudicating an issue, courts in this district consider a number of factors:

> (1) the effect or lack thereof on the efficient administration of the estate; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than the form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of non-debtor parties.

*In re Tonopah Solar Energy, LLC*, Case No. 20-11844 and No. 21-219 (MN), 2022 WL 958117, at *9 (D. Del. March 30, 2022), *aff'g In re Tonopah Solar Energy, LLC*, No. 20-11884 (KBO) (D.I. 337) (Bankr. D. Del. Feb. 1, 2021; *see also, e.g., In re Continental Airlines, Inc.*, 156 B.R. 441, 443 (Bankr. D. Del. 1993). Courts consider and apply these factors flexibly, but the effect on the efficient administration of the estate, the extent to which the claim involves state law issues, and whether the proceeding is core or non-core are of particular importance and carry more weight than the others. *Id.* As applied to the Complaint and Administrative Expense Claims, the majority of these factors support abstention.

A.    *The claims raised in the Complaint are not closely related to the Chapter 11 Cases and their resolution will not impact the efficient administration of the estates.*

Where the claims at issue are not closely related to the main bankruptcy proceedings and their adjudication will not impact the efficient administration of a debtor's estate, this factor favors abstention.  *See, e.g., In re DHP Holdings II Corp.*, 435 B.R. 220, 225 (Bankr. D. Del. 2010) (reaching this conclusion where the amount at issue was neither significant nor "the linchpin for determining how the . . . bankruptcy cases will proceed").

The Complaint brings claims for: (i) postpetition breach of the Manzano Contract; (ii) payment to cure the Reorganized Debtors' alleged breach of the Manzano Contract; (iii) infringement of water rights under the Chilean Water Code; and (iv) violation of Chilean environmental laws.  *See* Complaint at ¶¶ 109–139.  These claims are neither closely related to past issues decided by this Court during the pendency of these Chapter 11 Cases nor to any issues currently pending before the Court.  In connection with the Plan confirmation process, the Reorganized Debtors sought to resolve certain disputes in relation to the Manzano Contract before this Court.  However, recognizing the complexity and uniquely Chilean aspects of the disputes, the Reorganized Debtors and Manzano engaged in meaningful negotiations resulting in an agreement that these claims be litigated in a forum of competent jurisdiction.  As such, Plaintiffs supported approval of the Plan.  At no point did the Reorganized Debtors expect the Plaintiffs to file a Complaint and the Administrative Expense Claims before this Court, when the issues involved implicate a Chilean contract, Chilean law, Chilean parties and Chilean evidence at every turn.  The Manzano Contract no longer bears any relevance to the core issues of the Chapter 11 Cases and should be adjudicated in accordance with the arbitration clause, or to extent Manzano continues to disregard the arbitration provision, a competent forum in Chile.

Further, given that the Plan has become effective and the Reorganized Debtors have emerged, there are no significant proceedings forthcoming in these Chapter 11 Cases to which these claims are likely to relate.  Indeed, if this Motion is granted, the Reorganized Debtors expect to promptly close the remaining chapter 11 proceedings for the reorganized Defendant.  As such, resolution of the Complaint "will have no great effect on administration of the estate and would not constitute an efficient use of time." *Tonopah*, 2022 WL 958117 at *10.  There is, in short, "no bankruptcy reason necessitat[ing] adjudication" of the Complaint in this Court.  *Id.*

       B.     *Foreign law issues predominate over bankruptcy issues in the Complaint, and the applicable foreign laws are complex.*

Where an adversary proceeding predominantly raises issues of state or foreign law and "bankruptcy law has almost no substantive effect on the outcome," courts have concluded that this factor favors abstention.  *Tonopah*, 2022 WL 958117 at *11; *see also, e.g., In re DHP Holdings II Corp.*, 435 B.R. 220, 225-26 (Bankr. D. Del. 2010) (holding that this factor favored abstention from resolving a state law contract dispute); *In re Sun Healthcare Group, Inc.*, 267 B.R. 673, 679 (Bankr. D. Del. 2000) (same); *In re Regus*, 301 B.R. at 128 ("In certain international disputes the prudent and just action for a federal court is to abstain from the exercise of jurisdiction").  The predominant state laws need not necessarily be complex to support abstention.  *See DHP Holdings*, 435 B.R. at 227 ("[a]lthough the parties have not identified any unsettled state law issues, a state court would be better positioned to identify and resolve any such issues, should they arise").  Where the state law issues do involve complex or unsettled state law, however, this factor furthers weighs in favor of abstention.  *See id.*  Not only does the Complaint in this case raise issues that are almost exclusively based in, or governed by, foreign law, some of the issues raised involve complex questions and interpretation of Chilean constitutional, environmental, and regulatory law.

The claims for breach of contract and violation of the Chilean Constitution, Chilean Water Code, and environmental laws are, manifestly, exclusively based in Chilean law.  The Manzano Contract is an agreement between Chilean parties, written in Spanish, and expressly governed by Chilean law.  As such, whether there has been a breach of contract is entirely a question of foreign law.  The Chilean Constitutional and environmental claims—which appear to raise complex issues regarding Chilean constitutional law, water property rights, and environmental regulation— likewise arise entirely out of Chilean law.

The cure claim is the sole issue raised by the Complaint that nominally implicates bankruptcy law.  *See* Complaint at ¶¶ 120-123.  Even with respect to this claim, however, foreign law issues predominate over bankruptcy law issues.  Section 365(b)(1)(A) of the Bankruptcy Code provides that *if there has been a default*, a debtor seeking to assume an executory contract must cure the default, compensate the non-breaching party for actual damages, and provide assurance of future performance.   11 U.S.C. § 365(b)(1)(A)-(C).   Whether the Plaintiffs are entitled to damages related to the Reorganized Debtors' assumption of the Manzano Contract therefore depends entirely on the disposition of the breach of contract claim, which is governed by Chilean law.  As such, even as to the cure claim, when the underlying nature of that claim is examined beyond the nominal gloss of Section 365, the Complaint predominantly raises issues of foreign law.

> C.   *The Plaintiffs have already initiated several actions in Chile for similar claims and on the basis of the same alleged culpable conduct.*

This factor militates in favor of abstention where parallel state court proceedings have already been commenced.  *See, e.g., Sun Healthcare Group*, 267 B.R. at 679; *see also CPW*, 2011 WL 830556 at *8 (concluding that this factor favored abstention in the international context where, "[a]lthough there is no proceeding underway in the U.K., [plaintiff] has an adequate remedy under

English law and in an English forum").  As the Complaint itself acknowledges, Plaintiffs have initiated multiple proceedings in Chile on the basis of the same alleged culpable conduct by Alto Maipo.  *See* Complaint ¶¶ 66–75.  In March 2022, Manzano initiated the Postpetition Manzano Action seeking an emergency injunction for alleged violations of Manzano community members' water rights under Chilean constitutional law on the basis of the same conduct underlying the Complaint in this action.  *See* Complaint at ¶¶ 66-71; Avilés Declaration at ¶ 19.  Plaintiffs raise substantially the same claim in Count II of the Complaint.  Complaint at ¶¶ 124–128.  After hearing oral arguments on the issues, the Chilean Court of Appeals denied Manzano's requested relief on the grounds that such relief exceeded its jurisdiction and was already the subject of a Chilean governmental agency's investigation.  Avilés Declaration at ¶ 23.

Apparently undeterred, in April 2022, Manzano filed additional claims before the Superintendency and submitted a petition to the Electric Coordinator alleging violations of property rights and seeking injunctive relief, likewise on the basis of the same conduct underlying this action. Avilés Declaration at ¶ 25.  The Superintendency has authority to take action against violators of the Chilean environmental regulations when it believes such action is warranted, but solely adopted a temporary transitory measure for a 30-day period beginning in late April 2022 and has taken no further actions since the lapse of that period.  Avilés Declaration at ¶ 28.  The Electric Coordinator entirely declined to take any remedial action in response to Manzano's petition and subsequently proceeded to grant the Reorganized Debtors commercial operating certificates, indicating that the Electric Coordinator did not find the allegations raised in Manzano's petition to be credible or actionable under governing Chilean law as it related to approving the commercial operation of the Project.  Avilés Declaration at ¶ 27.

Finally, several individuals, including certain of the Plaintiffs, brought a prepetition action against the Reorganized Debtors in the Environmental Court raising similar claims for violation of the Chilean constitutional and environmental laws related to their water rights on the basis of prepetition conduct.  Avilés Declaration at ¶ 11.  After a full, fair, and fact-intensive judicial process, the Environmental Court found that there was no basis for the assertions made by the plaintiffs in that action, which were similar to those in the present Complaint.  Avilés Declaration at ¶¶ 11-18.  Conveniently, Plaintiffs' Complaint makes no mention of the action brought before the Environmental Court.  However, as this district recognized in *Acierno v. Haggerty*, No. Civ. A. 04-1376-KAJ, 2005 WL 3134060, at \*6 (D. Del. Nov. 23, 2005), "[i]n the Third Circuit, 'on a motion[] to dismiss pursuant to Rule 12(b), the Court is not strictly limited to the facts addressed in the pleadings; the Court may take judicial notice of additional facts where appropriate.'"  Thus, the Reorganized Debtors respectfully request that this Court take judicial notice of the Plaintiffs' prior unsuccessful action before the Environmental Court raising several of the same claims before this Court.

Although parallel Chilean proceedings have not been initiated with respect to the Plaintiffs' breach of contract claim, Chile provides an adequate forum in which the Plaintiffs could fully and fairly adjudicate that claim.  Indeed, the Plaintiffs agreed to as much when they entered into the Manzano Contract designating a Chilean forum for arbitration of disputes arising from its terms.  As such, because certain of the claims raised in the Complaint and similar claims have already been considered and decided upon by a Chilean court and Chilean regulatory authorities, and because the remaining claims can adequately be adjudicated in Chile, abstention is appropriate both to avoid unnecessary, duplicative litigation and also in the interest of comity.  Chilean courts

of competent jurisdiction are the most appropriate forum in which the Plaintiffs should continue

to litigate claims of this sort against the Reorganized Debtors.

> **D.**    *The issues raised in the Complaint are primarily non-core issues and can be effectively separated from the Chapter 11 Cases.*

In determining whether abstention is appropriate, courts ask whether the claims are core or

non-core to determine the extent to which they are connected to the main issues of the bankruptcy

proceedings. *See, e.g., DHP Holdings*, 435 B.R. at 228–232. When claims are non-core and may

be severed from core issues in a bankruptcy proceeding such that adjudicating them in a separate

forum is unlikely to impact the administration of the main bankruptcy case, this factor favors

abstention. *See id.* Under the law of this circuit, core proceeding is one that "invokes a substantive

right provided by title 11 or . . . is a proceeding, that by its nature, could arise only in the context

of a bankruptcy case." *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999) (internal quotations

omitted). In contrast, non-core proceedings "include the broader universe of all proceedings that

are not core proceedings but are nevertheless related to a bankruptcy case." *Id.* (internal quotations

omitted). 28 U.S.C. § 157(b) includes a non-exhaustive list of proceedings that are generally

considered core, but in determining whether claims are core or non-core courts focus on substance

over form. *See, e.g., DHP Holdings*, 435 B.R. at 229 (concluding that a turnover action was non-

core "because it [was] nothing more than a state law breach of contract claim disguised in

bankruptcy terms") (internal quotations omitted).

All of the Plaintiffs' claims are most properly classified as non-core. With respect to the

Chilean constitutional and environmental law claims, there is little doubt that these claims are non-

core. These claims neither arise out of the provisions of the Bankruptcy Code nor are they claims

that "could only arise in the context of a bankruptcy case." *Halper*, 164 F.3d at 836. Although

post-petition contract disputes may be considered core under some circumstances, *see, e.g., Arnold*

*Print Works Inc. v. Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d 165, (1st Cir. 1987), the breach of contract dispute in the instant case is likewise best classified as non-core because it arises out of a prepetition contract that is, at best, only peripherally connected to the main bankruptcy proceedings in the Chapter 11 Cases. *See Beard v. Braunstein*, 914 F.2d 434, 445 (3d Cir. 1990) (concluding "this action, involving pre-petition contracts, allegedly breached both before and after the filing of the petition, is entirely a non-core matter" because it was "only tangentially related to the bankruptcy").

The cure claim is the only claim raised by the Plaintiffs that even facially invokes bankruptcy law, but even this claim is best characterized as non-core. Although the cure claim implicates section 365(b)(1)(A) of the Bankruptcy Code, as already discussed in Section IV. B above, the cure claim is entirely dependent on the merits of the breach of contract claim. It is functionally a vehicle through which the Plaintiffs seek to litigate a contract dispute that is not closely related to the main bankruptcy proceedings in the Chapter 11 Cases and based entirely in foreign law. As this Court has acknowledged, "at the heart[,] a motion to assume should be considered a summary proceeding intended to efficiently review the debtors or trustee's decision to adhere to or reject a particular contract in the course of swift administration of the bankruptcy estate. It is not the time or place for prolonged discovery or lengthy trial with disputed issues." April 26, 2022 Hr'g Tr. 61:5-11 (citing *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1098–99 (2d Cir. 1993).

All of these claims can also be cleanly severed from the main proceedings in the Chapter 11 Cases and adjudicated in Chile. Indeed, a number of these claims have already been litigated separately in Chile during the pendency of the Chapter 11 Cases, and the factual records that are the basis for other claims have begun to be developed in Chilean courts. Additionally, because the

Plan has already become effective, and the Reorganized Debtors have emerged from the Chapter 11 Cases, adjudication of these claims in another forum would not have a significant impact on the administration of the Chapter 11 Cases.  Accordingly, this factor supports abstention.

      *E.*     *The Complaint is an unnecessary burden on the judicial resources of the Court.*

In determining whether abstention is appropriate, courts have noted that contract disputes often involve fact-intensive litigation and can be burdensome on the court's docket.  *See, e.g., DHP Holdings*, 435 B.R. at 232-233.  In this case, adjudicating the merits of the contract dispute and related Chilean constitutional and environmental law claims would require fact-intensive litigation, would likely also require the testimony of experts in the relevant Chilean law, and would be duplicative of proceedings that have already occurred in Chile.  Indeed, in the 2021 action before the Environmental Court, the three-member tribunal issued a 340-page ruling informed by a fact-intensive investigation of evidence, including expert reports.  Avilés Declaration at ¶ 11. Because the Complaint raises similar claims, even if the Plaintiffs were to be successful in overcoming the Defendant's challenge to the Plaintiffs' lack of standing to bring private actions under the Chilean environmental and constitutional law, as well as the Defendant's efforts to enforce the contractual obligations to arbitrate disputes of this nature, resolution of the allegations in the Complaint is likely to require a similarly onerous and fact-intensive investigation.  Litigating the dispute before this Court would impose significant costs and burden on the parties and this Court that is neither necessary nor justified in light of the fact that Chilean courts of competent jurisdiction are particularly suited to efficiently and competently resolving these claims and have already adjudicated similar claims involving the same parties.

F.       *Commencement of the Complaint in this Court is an attempt by the Plaintiffs to re-litigate the same claims in a new forum.*

Finally, in determining whether to abstain from adjudicating a claim, courts assess whether the commencement of the proceeding in bankruptcy court involves forum shopping by the Plaintiffs.  *See, e.g. DHP Holdings*, 435 B.R. at 224.  The Plaintiffs in this case have, as discussed above, attempted to adjudicate some version of these claims at least three times before three different Chilean authorities and have thus far been unsuccessful on the merits of their claims. Bringing these claims before this Court is nothing more than an attempt to have one more opportunity to litigate these dubious claims in a new forum.  Such forum shopping likewise counsels in favor of abstention.

## **CONCLUSION**

Plaintiffs bring before this Court a Complaint and Administrative Expense Claims in connection with alleged actions that occurred in Chile, involving Chilean parties and already subject to several proceedings before Chilean courts and administrative agencies.  Despite repeated failed attempts in their home jurisdiction, Plaintiffs now bring these claims to the United States and seek relief not available to them under Chilean law.  Plaintiffs do not have standing to bring private actions under the Chilean Water Code or Environmental Law, yet still they raise these claims in their Complaint and ask this Court to engage in complex interpretation, analysis and application of Chilean laws to an exclusively Chilean dispute and contract.  In doing so, Plaintiffs also seek to disregard the valid and enforceable arbitration clause to which Manzano agreed just last year, stating all disputes arising under the Manzano Contract are properly heard before the Santiago Chamber of Commerce.  In the interest of judicial efficiency, this Court should apply Rule 12(b) to the Complaint and Administrative Expense Claims, as they are interwoven with each other and assert the same Chilean law claims, involve the same Chilean parties, and implicate

evidence and witnesses almost entirely located in Chile.   Further, the doctrines of *forum non conveniens* and abstention militate strongly in favor of these disputes being heard in Chile.   For the foregoing reasons, the Defendant respectfully request that this Court grant its motion to dismiss the Administrative Expense Claims and the Complaint.

Dated:   July 27, 2022
Wilmington, Delaware

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Sean T. Greecher*

Pauline K. Morgan (No. 3650)
Sean T. Greecher (No. 4484)
S. Alexander Faris (No. 6278)
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:     (302) 571-6600
Fax:             (302) 571-1253
Email:          pmorgan@ycst.com
                sgreecher@ycst.com
                afaris@ycst.com

- and –

CLEARY GOTTLIEB STEEN & HAMILTON LLP
Richard J. Cooper (admitted *pro hac vice*)
Luke A. Barefoot (admitted *pro hac vice*)
Jack Massey (admitted *pro hac vice*)
One Liberty Plaza
New York, New York 10006
Telephone:     (212) 225-2000
Fax:             (212) 225-3999
Email:          rcooper@cgsh.com
                lbarefoot@cgsh.com
                jamassey@cgsh.com

*Counsel to the Defendant*