## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Alto Maipo SpA,[1] | Case No. 21-11508 (KBO) |
| Reorganized Debtors. | (Jointly Administered) |
| Comunidad de Aguas Canal El Manzano on behalf of itself and its members and constitutents, Gemma Contreras Bustamante, Christian Becker Matkovic, Maite Birke Abaroa, Bruno Bercic, | |
| Plaintiffs, | Adv. Pro. No.: 22-50381 |
| -against- | |
| Alto Maipo SpA, | |
| Debtor. | |

## OPPOSITION TO DEBTOR'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

---

[1]      The location of the corporate headquarters and the service address for Alto Maipo SpA is Los Conquistadores 1730, Piso 10, Santiago, Chile.

# TABLE OF CONTENTS

**Page**

BACKGROUND .................................................................................................................1

    A.    Chilean Law Grants Plaintiffs Standing to Pursue Their Claims ...........................4

    B.    Alto Maipo's Actions Give Rise to Legal Claims ..................................................5

    C.    Plaintiffs' Claims Have Not Been Addressed by Chilean Authorities ...................6

    D.    Alto Maipo's Efforts to Preclude Plaintiffs' Claims...............................................7

ARGUMENT ....................................................................................................................8

**I.**    **PLAINTIFFS HAVE STANDING UNDER FEDERAL AND BANKRUPTCY LAW**...........................................................................................8

    A.    The Court Should Disregard Debtor's Expert's Factual Allegations and Legal Conclusions......................................................................................................8

    B.    Plaintiffs' Claims Were Never Addressed by Chilean Tribunals ...........................9

    C.    Plaintiffs Have Standing to Assert Claims for Violation of the Water Code .......11

    D.    Plaintiffs Have Standing to Assert Claims for Violation of the Environmental Law.............................................................................................12

**II.**    **JUDICIAL ESTOPPEL AND WAIVER PRECLUDE DEBTOR'S FORUM-BASED ARGUMENTS** ......................................................................13

**III.**    **THE DOCTRINE OF *FORUM NON CONVENIENS* DOES NOT APPLY TO PLAINTIFFS' ADMINISTRATIVE EXPENSE AND CURE CLAIMS** ...........16

    A.    Alto Maipo Forced the Plaintiffs into This Forum ..............................................16

    B.    The Plaintiffs' Choice to Remain Here Should be Entitled to Deference .............17

    C.    The Balance of Public and Private Factors Supports Resolution of This Dispute in This Forum .........................................................................................18

    D.    The Forum Selection Clause and Arbitration Clause in the Manzano Contract Should Not Be Enforced .......................................................................19

**IV.**    **THE COURT SHOULD NOT EXERCISE ITS DISCRETION TO ABSTAIN FROM EXERCISING JURISDICTION PURSUANT TO 28 U.S.C. § 1334(C)(1).** .....................................................................................20

    A.    Plaintiffs' Claims Are Core Claims ......................................................................21

    B.    The Court Should Not Exercise Discretionary Abstention...................................22

            1.    Efficient Administration of The Bankruptcy Estate Predominates Other Abstention Factors .........................................................................23

            2.    State (Foreign) Law Issues Do Not Predominate Over Bankruptcy Issues.................................................................................25

3.      The Difficulty Or Unsettled Nature Of Applicable State Law Does
        Not Weigh Against The Plaintiffs.................................................................25

4.      The Jurisdictional Basis Does Not Rely On Section 1334 ........................25

CONCLUSION.................................................................................................................26

# TABLE OF AUTHORITIES

**Page**

**CASES**

*AHT Corp. v. Bioshield Techs., Inc. (In re AHT Corp.),*
    265 B.R. 379 (Bankr. S.D.N.Y. 2001) ..................................................................... 15

*Bankruptcy Code. Cf. Bricker v. Martin,*
    348 B.R. 28 (W.D. Pa. 2006) ................................................................................... 25

*Barnet v. Drawbridge Special Opportunities Fund LP,*
    No. 14-CV-1376(PKC), 2014 WL 12774690 (S.D.N.Y. Aug. 27, 2014) .............................. 15

*Halper v. Halper,*
    164 F.3d 830 (3d Cir. 1999) ................................................................................... 21

*In re APF Co.,*
    264 B.R. 344 (Bankr. D. Del. 2001) ........................................................................ 20

*In re Continental Airlines, Inc.,*
    156 B.R. 441 (Bankr. D. Del. 1993) ........................................................................ 23

*In re Cych, Inc.,*
    No. 01-622(MFW), 2003 WL 473000 (Bankr. D. Del. Feb. 24, 2003) ................................ 15

*In re Diocese of Buffalo, N.Y.,*
    616 B.R. 10 (Bankr. W.D.N.Y. 2020) ................................................................. 23, 24

*In re Exide Techs.,*
    544 F. 3d 196 (3d Cir. 2008) ........................................................................... 19, 21

*In re Finova Cap. Corp.,*
    358 B.R. 113 (Bankr. D. Del. 2006) ........................................................................ 15

*In re GCX Ltd.,*
    634 B.R. 441 (Bankr. D. Del. 2021) ........................................................................ 16

*In re Integrated Health Servs., Inc.,*
    291 B.R. 615 (Bankr. D. Del. 2003) ................................................................. 23, 26

*In re L & S Indus., Inc.,*
    989 F.2d 929 (7th Cir. 1993) ................................................................................ 25

*In re LaRoche Indus., Inc.,*
    312 B.R. 249 (Bankr. D. Del. 2004) ........................................................................ 23

*In re Magna Ent. Corp.,*
    No. 09-10720 MFW, 2012 WL 272847 (Bankr. D. Del. Jan. 30, 2012) .............................. 16

*In re Maxwell Commc'n Corp. plc by Homan,*
    93 F.3d 1036 (2d Cir. 1996) ................................................................................. 19

*In re New York City Off-Track Betting Corp.,*
    434 B.R. 131 (Bankr. S.D.N.Y. 2010) ............................................................... 22, 26

*In re Penson Worldwide,*
   587 B.R. 6 (Bankr. D. Del. 2018) ................................................................ 19, 24

*In re Pharmacy Ben. Managers Antitrust Litig.,*
   700 F.3d 109 (3d Cir. 2012) ............................................................................... 15

*In re Republic Reader's Service, Inc.,*
   81 B.R. 422 (Bankr. S.D. Tex. 1987) ................................................................. 23

*In re SK Foods, L.P.,*
   2013 WL 6488275 (B.A.P. 9th Cir. 2013) ......................................................... 18

*J.D. Marshall Int'l, Inc. v. Redstart, Inc.,*
   74 B.R. 651 (N.D. Ill. 1987) ............................................................................... 25

*Lony v. E.I. Du Pont de Nemours & Co.,*
   935 F.2d 604 (3d Cir. 1991) ............................................................................... 18

*Mintze v. Am. Fin. Servs., Inc. (In re Mintze),*
   434 F.3d 222 (3d Cir. 2006) ............................................................................... 19

*Morgan v. Sundance, Inc.,*
   142 S. Ct. 1708 (2022) ....................................................................................... 19

*Oneida Motor Freight, Inc. v. United Jersey Bank,*
   848 F.2d 414 (3d Cir. 1988) ......................................................................... 14, 15

*Shearson/Am. Exp., Inc. v. McMahon,*
   482 U.S. 220 (1987) ........................................................................................... 20

*TTS, Inc. v. Stackfleth (In re Total Technical Services, Inc.),*
   142 B.R. 96 (Bankr. D. Del. 1992) .................................................................... 23

*Valley Media, Inc. v. Toys R Us, Inc. (In re Valley Media, Inc.),*
   289 B.R. 27 (Bankr. D. Del. 2003) .................................................................... 23

*Wachovia Bank Nat'l Ass'n v. EnCap Golf Holdings, LLC,*
   690 F. Supp. 2d 311, 328 (S.D.N.Y.2010) ........................................................ 15

## STATUTORY AUTHORITIES

28 U.S.C. § 157 ............................................................................................... 3, 21-24

28 U.S.C. § 1334(C)(1) ......................................................................................... 21

## RULES AND REGULATIONS

Local Rule 3007-1 .................................................................................................. 14

## OTHER AUTHORITIES

1 *Collier on Bankruptcy*, ¶ 3.05 (2022) ................................................................. 24

15 C. Wright, *A. Miller & E. Cooper, Federal Practice and Procedure*, § 3828 (1986) ............. 17

Comunidad de Aguas Canal El Manzano ("Manzano" or "Comunidad"), Gemma Contreras

Bustamante ("Contreras"), Christian Becker Matkovic ("Becker"), Maite Birke Abaroa ("Birke"),

and Bruno Bercic ("Bercic," and together with Comunidad, Contreras, Becker, and Birke,

"Plaintiffs"), via the undersigned counsel, hereby oppose *Debtor's Motion To Dismiss Plaintiffs'*

*Complaint* (ECF No. 12) ("Motion" or "Mot.") filed by Alto Maipo SpA ("Alto Maipo," or

"Debtor") (the "Complaint")[2] and allege as follows:

## BACKGROUND

This Adversary Proceeding concerns only administrative priority claims—claims for torts

committed during the administrative period and claims for cure of an assumed contract.  Although

Plaintiffs have other claims that they could assert against the Debtor, the Complaint limits relief

sought only to those claims over which the Court exercises core jurisdiction.  Plaintiffs are

residents of Manzano—a mountainside town 70 minutes southeast of Santiago popular with

tourists that boasts restaurants and lodging alongside agricultural enterprises including farms and

livestock.  The community gets water from canals that originate from a single intake canal along

the Colorado river tributary that feeds into the turbines used by Alto Maipo to generate electricity.

As a condition to construction of the run-of-the-river hydroelectric project, regulators required that

Alto Maipo build structures to divert sufficient water to the Manzano Community by entering into

a contract with Manzano to accomplish this.

Debtor, Alto Maipo, filed its chapter 11 petition on November 17, 2021.  ECF No. 1.  It

filed a list of creditors that includes Manzano—a governmentally mandated cooperative

association of its member citizens to enforce collective water rights.  ECF No. 18 at 5.  Alto Maipo

---

[2]  Capitalized terms not otherwise defined have the meanings ascribed to them in the Complaint
(Adv. ECF No. 1) and Motion to Dismiss (Adv. ECF No. 12).

filed a motion to establish a bar date (ECF No. 180), granted by this Court at ECF No. 200 establishing a bar date of February 16, 2022, and served on Manzano via mail on or about January 12, 2022 (the "Bar Date Notice").   The Bar Date Notice served on Manzano included in all caps the warning that "ANY … ENTITY THAT IS REQUIRED TO FILE A PROOF OF CLAIM BUT THAT FAILS TO DO SO BY THE APPLICABLE BAR DATE … SHALL NOT, WITH RESPECT TO SUCH CLAIM, BE TREATED AS A CREDITOR OF THE DEBTORS …."  ECF No. 212 at 7.

Each of the Plaintiffs filed proofs of claim in response to the Bar Date Notice, including Manzano.  Around the same time, rushing to comply with the April 30, 2022, deadline to start operations under the milestones established under the DIP Credit Agreement 6.08(i) (ECF No. 166-1 at 64), Alto Maipo started operating and testing the turbines along the Colorado River.  But, Alto Maipo had not constructed the "complementary intake works" designed to insure that the Manzano community would not be deprived of the water it needs for daily life—agriculture, livestock, sanitation—before diverting water to Alto Maipo's turbines.

As a result of the Debtor's post-petition operations, as a result of the Debtor's conformity with the DIP Credit Agreement milestones, as a result of the Debtor's post-petition violation of the terms and conditions of its contract with Manzano, and as a result of the Debtor's post-petition decision to divert the Colorado river to its own use, thousands of residents in Manzano went without water over the course of January and February 2022—the summer months in Chile when water is most scarce.  Shocked and in desperate need for action, after attempting to contact the Debtor's personnel, Manzano petitioned a Chilean equity court to enjoin the Debtor's post-petition operations that caused serious, ongoing and deleterious harm to its residents by depriving them of water.

The Debtor's response was to file a motion seeking to punish Manzano for complaining to a Chilean equity court by arguing that the request for injunctive relief violated the stay.  In ECF No. 485 (the "Stay Motion"), the Debtors represented to this Court that "[t]he Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334," that "bankruptcy courts have exclusive jurisdiction over a debtor's property, wherever located, and over the estate" and that "[t]his matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)."  Debtors, invoking this Court's jurisdiction and ignoring the inapplicability of the stay, asked this Court to *expunge the community's claims* based on the *same contract* at the heart of this Complaint:  "Given Manzano's unwillingness to heed orders of this Court . . . Debtors submit that expungement of the Manzano Claim, with the prejudicial effect that expungement carries, is an appropriate remedy under these circumstances."  ECF 485 at 12.

That same day, the Debtor moved to assume the Manzano Contract at ECF No. 487 (the "Assumption Motion").    The Debtor made the exact same jurisdictional arguments as the Stay Motion, alleging that only this Court had jurisdiction to determine that "[t]here are no outstanding defaults under the Agreement." ECF 487 at 11.[3]  The "Agreement" is the Manzano Contract that forms a basis of this Complaint.

The next day, the Debtor filed objections to each of the Plaintiffs' Proof of Claims (asserting pre-petition claims not the subject of this Complaint).  At ECF No. 490 (the "Claim Objection"), the Debtor proclaimed that "[t]he Court … has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334."  Plaintiffs answered the Stay Motion and the Assumption Motion. Debtors withdrew both Motions.  The Debtors never withdrew the Claim Objection.  Debtors instead continued the hearing on the Claim objection without date.

---

[3]  As shown below, the Debtor's statement is false.

Despite this history, Debtor asks this court to dismiss the Plaintiffs' claims because, after being (1) required to file claims based on the Bar Date Notice, (2) required to answer the Debtor's Stay Motion (now withdrawn), (3) required to answer the Debtor's Assumption Motion (now withdrawn pursuant the Plan), and (4) still subject to a pending Claim Objection, the Debtor wants the Plaintiffs to litigate these claims elsewhere.  The Debtors chose to seek the protection of this Court and forced the Plaintiffs to defend their valuable rights in this forum.

In addressing each argument in turn, what becomes abundantly clear is that the Debtor's strategy is to avoid litigating these claims *in any forum*, seeking instead to preclude the claims each and every time the Plaintiffs raise them.  The Court should decline the Debtor's invitation to use the bankruptcy courts as a shield only to cynically avoid the same Court to ultimately deny Plaintiffs their Bankruptcy Code remedy for post-petition, operational torts and breaches of assumed contracts.

### A.       Chilean Law Grants Plaintiffs Standing to Pursue Their Claims

As discussed at length in the Complaint, under Chilean law and its Constitution, the state grants water rights to individuals and entities for their use and exploitation, and an individual interest in water is considered a form of property right.  Water rights can be either consumptive (i.e., the right to remove water and use it), or non-consumptive (i.e., water must be returned to its source after use).  In this case, Alto Maipo holds non-consumptive rights, while the Plaintiffs' rights are consumptive.  *See* Carrasco Dec., ¶ 6.

Entities like the Comunidad exist to represent the interests and water rights held by rural community members.  The agency that oversees and manages Chilean water rights, the Dirección General de Agua (General Directorate of Water, or "DGA"), recognizes the Comunidad as a duly registered organization for this purpose. *See* Carrasco Dec., ¶ 7.

Contrary to the Debtor's characterization, individuals and entities that own water rights hold a corresponding right to take legal action to protect those rights, and can seek compensation where those rights are violated.  *See* Carrasco Dec., ¶ 28; Chapter III, article 19, section 24 of Chile's Constitution.  In addition to Constitutional protections, water rights holders are protected by Chile's Water Code, which protects individuals from harm to their water rights by third parties, including impairments of consumptive rights.  Chile's Water Code, DFL 1122 Articles 14 and 15. *See* Carrasco Dec., ¶ 29-31.  Finally, Chilean Environment Law no. 19.300 guarantees the right to live in an environment free of pollution, requires compliance with environmental permits, and permits compensation to those who suffered environmental harm. *See* Carrasco Dec., ¶¶ 22-27.

As set forth above, under the Constitution, Water Code, and the Environmental Law, property rights holders, like the Comunidad and its members, have a right of action to seek compensation for damages incurred in violation of their rights and Chilean law.  *See* Carrasco Decl. ¶¶ 22-31.  Further, the Plaintiffs hold valid contractual claims based on Alto Maipo's breaches of the Manzano Contract.  *See* Carrasco Dec., ¶¶ 32-34.

### B.    Alto Maipo's Actions Give Rise to Legal Claims

As discussed at length in the Complaint, the Manzano Contract required, *inter alia*, the construction of water intake structures that would guarantee the Comunidad continued access to water and maintenance of its members' water rights (the "Water Intakes"), and provided presumptive damages in the event of a breach that prevented adequate water flow to the Comunidad.  Compl. ¶ 36, 41, 44.  Alto Maipo's environmental qualification permit under file RCA 256/09 (item no. 7.3.1) (the "Permit") incorporates the requirement to construct the intakes, as a condition precedent to starting operations. Carrasco Dec. ¶ 11.

In January of 2022, while these chapter 11 cases were pending, Alto Maipo conducted turbine testing without having complied with the terms of the Permit—specifically the requirement

of the prior construction of the Water Intakes.  Compl. ¶ 58-61.  The testing resulted in cessation and diminution of water flow to the Comunidad, making it impossible for members collect water from the river and the canals that flow from the river. Compl. ¶ 62.   Alto Maipo's actions completely deprived residents of water on at least eight days, with resulting damage to, among other things, Comunidad Members' health, and to their farming and industrial activities that depend on the use of water.  Compl. ¶ 63.

In April of 2022, Debtor obtained permission to begin operations, in part by falsely representing that they had complied with the terms of the Permit despite having failed to construct permanent Water Intakes.  Compl. ¶ 65.

### C.    Plaintiffs' Claims Have Not Been Addressed by Chilean Authorities

As detailed in the Complaint, the Plaintiffs sought to enjoin Alto Maipo's illegal actions in Chile and protect their water rights and livelihoods from further harm by Alto Maipo.  The Plaintiffs filed a form of request for emergency relief before the Chilean Appellate Court, seeking to protect their constitutional rights to water and seeking to enjoin Alto Maipo from further operations pending its compliance with the terms of the Manzano Contract, including the critical construction of permanent Water Intakes.  Compl. ¶ 66.

Contrary to the Debtor's representations, the Appellate Court did not reach the merits of the Plaintiffs' claims in its June 2022 dismissal—rather, it concluded that the technical complexity of the matter, including its contractual and environmental law implications, required resolution through a different type of proceeding.  *See* Carrasco Dec., ¶ 15-16.

The Plaintiffs also presented complaints before the Environmental Superintendency, which undertook an investigation, concluding that there had been a substantial deprivation of access to water as a result of the turbine testing being undertaken without construction of the intakes, and

thus that there were environmental infractions as well as serious and imminent harm to the members of the Comunidad. Compl. ¶ 72-75. This resulted in the opening of a formal investigation into the project. *See* Carrasco Dec., ¶ 20. In parallel, the Comunidad sent a letter to the National Electric Coordinator, seeking to have it reverse its authorization for Alto Maipo to begin operations. Again, without reaching the merits of the claim, the Coordinator responded that it was not the competent authority to consider the Comunidad's contract law claims, but rather could consider only the technical electrical requirements within its mandate. But in doing so, the Coordinator noted the Superintendency's complaint that Alto Maipo had indeed violated the term of its Permit by beginning operations without complying with the terms of the Manzano Contract, including the obligation to build Water Intakes. Carrasco Dec., ¶ 21.

### D.    Alto Maipo's Efforts to Preclude Plaintiffs' Claims

In November 2021, Alto Maipo formed Alto Maipo Delaware. Compl. ¶ 46. The very next day, the two entities filed a Chapter 11 case before this Court. *Id.* ¶ 47. During the pendency of its Chapter 11 proceeding in the U.S., Alto Maipo continued to take illegal and damaging actions in Chile, including conducting turbine testing without complying with its permits, and failing to construct required structures that would have provided the Plaintiffs with access to water, creating instead temporary detour structures that delivered only turbid water, causing further damage to the Plaintiffs. Compl. ¶¶ 62-64. When the Plaintiffs attempted to seek relief from the Chilean courts and regulatory authorities for these violations of their rights (Compl. ¶¶ 66-75), Alto Maipo filed the Stay Motion, seeking to expunge their claims entirely to "send a strong message to Manzano." Compl. ¶¶ 76-81. The same day, Alto Maipo sought to assume the Manzano Contract without curing its myriad breaches and without resolving any of the Plaintiffs' claims, Compl. ¶¶ 83-85,

and later again sought to summarily dispose of the claim in a consolidated objection. Compl. ¶¶86-89.

Ultimately, and as detailed more fully in the Complaint, Alto Maipo's Chapter 11 proceeding resulted in the confirmation of its Plan. Critically, though, the Plan provides for the Plaintiff's claims to pass through, to be later "resolved by a court, arbitral panel, or any other judicial or administrative body of competent jurisdiction." Compl. ¶ 99.

## ARGUMENT

### I.    PLAINTIFFS HAVE STANDING UNDER FEDERAL AND BANKRUPTCY LAW

#### A.    The Court Should Disregard Debtor's Expert's Factual Allegations and Legal Conclusions

At the outset, the Declaration of Sebastián Avilés Pursuant to Rule 44.1 in Support of the Motion (the "Avilés Declaration") contains factual assertions and legal conclusions that are inappropriate at the motion to dismiss stage. Plaintiffs, contemporaneously with this Opposition, filed a Motion to Strike Portions of the Avilés Declaration, and ask that the Court grant the motion and strike those portions of the Avilés Declaration that go beyond providing a legal opinion regarding Chilean law. Specifically, Plaintiffs ask that the Court strike those portions of the Avilés Declaration that interpose factual assertions and inapposite legal conclusions that go beyond the facts stated in the Complaint.

To the extent that the Court considers the Avilés Declaration in its entirety, the Court should discount it as unreliable and inaccurate. Avilés, AES Andes's and Alto Maipo's long-term lawyer, distorts both the facts and Chilean law in an effort to make it seem as if (i) Plaintiffs' claims have already been submitted before and dismissed by Chilean tribunals; and (ii) Plaintiffs do not have standing to bring their claims. As discussed more fully below, these assertions are categorically false. Plaintiffs submit the *Declaration of Edesio Carrasco in Support of Plaintiff's*

*Opposition to Debtor's Motion to Dismiss Plaintiffs Complaint* ("Carrasco Dec."), attached hereto as Exhibit A.[4]

### B.       Plaintiffs' Claims Were Never Addressed by Chilean Tribunals

Alto Maipo attempts to mislead this Court by arguing that "[t]he Complaint asserts liability against Alto Maipo based on the construction of tunnels in connection with the Project" and that the Second Environmental Court of Santiago (the "Environmental Court") already addressed and dismissed these claims.  But the Complaint before the Court assiduously limits its scope to the post-petition and pre-effective date time period and avoids asserting claims in connection with the construction of tunnels.

The pre-petition proceedings before the Chilean Environmental Court involved certain members of the Comunidad's (and not the Comunidad itself) rights to ***underground*** water (aquifers) that were affected by Alto Maipo's construction of ***underground*** tunnels for the Project ***before*** it filed for bankruptcy; in contrast, the Complaint involves claims for damages for breach of the Manzano contract and tort claims committed by Alto Maipo when it started operating the Project during the pendency of its chapter 11 proceeding.  Importantly, the Complaint concerns only the Comunidad's and its members' rights to ***surface*** water from the Colorado river affected by Alto Maipo's failure to comply with its contractual obligation to build the Water Intakes to facilitate continued access to that water source. *See* Carrasco Dec., ¶ 21.

Debtor further alleges the Chilean Court of Appeals denied the Comunidad's injunctive relief seeking to halt the operation of the Project for violations of its members' water rights (the

---

[4]   The Carrasco Dec. is submitted in Spanish, together with a certified translation in English. Due to the volume of certain of the Exhibits, Plaintiffs have filed excerpts of some exhibits and provide an unofficial translation to the portions of those Exhibits cited in the Declaration.  Complete version of the Exhibits and complete translations can be provided on request by the Court or another Party.

"Recurso").  But, as explained in the Complaint, the Recurso merely requested the court to stop Alto Maipo from depriving members of Comunidad of their critical access to water until the permit-mandated Water Intakes were completed.[5]  Contrary to Debtor's assertions, the Chilean Appellate Court did not rule on Alto Maipo's liability or damages caused to the Comunidad, but concluded merely that (a) its jurisdiction is limited to providing an urgent remedy to protect fundamental rights; and (b) the dispute involved technical issues, including breach of contract and breach of environmental regulations, that are more properly resolved by other authorities. *See* Carrasco Dec., ¶ 15.

Alto Maipo also distorts the facts related to declarations by the Electrical Coordinator and the Environmental Superintendent ("SMA").  As explained in the Complaint, Comunidad filed petitions before the SMA and the Chilean National Electrical Coordinator ("Coordinator") complaining that Alto Maipo conducted turbine testing prior to constructing the Water Intakes.  Notably, the Comunidad filed a letter with the Superintendent and the Coordinator after the Coordinator had already authorized Alto Maipo to begin operation, complaining that (i) Alto Maipo's sworn declaration in its request for operational approval was false because Alto Maipo's turbine testing and other actions were not in compliance with the Manzano Contract, the Permit, or the Chilean Constitution or statutes and (ii) that Alto Maipo shut off water to the Comunidad Members when conducting turbine testing.

The Coordinator's response said that it simply verified the technical electric requirements and that the environmental and other issues raised in the letter are outside of the scope its competence.  The Coordinator's response thus does not indicate that Alto Maipo has complied

---

[5]    Alto Maipo, in response to the Recurso, constructed a temporary structure to function as the contractually-mandated permanent Water Intakes.

with the Manzano Contract and the Permit.  *See* Carrasco Dec. ¶ 21.  Moreover, the conclusions

from the SMA's investigations (*fiscalización*) are the opposite of those described by Debtor.  The

SMA determined that Alto Maipo failed to build the intakes, infringing both on environmental law

and measures and violating the terms of the permit, including by depriving the community of

water, and causing serious and imminent harm to the environment and health of the Comunidad

Members. See Carrasco Dec. ¶ 21.

In short, the Chilean tribunals never dismissed the claims at bar; what they did do was

confirm that Alto Maipo failed to build the Water Intakes in breach of the Contract, the Permit,

and environmental law.

### C.    Plaintiffs Have Standing to Assert Claims for Violation of the Water Code

Debtor's argument that only the Dirección General de Aguas ("DGA") may bring actions

for violations of the Chilean Water Code (the "Water Code") (Mot. 10) flatly contradicts the plain

language of the Water Code.  While Article 172 of the Water Code provides the DGA with

authority to bring actions for violations of the Water Code,  Article 177, which Avilés fails to

mention, then explicitly states that "***lawsuits on the constitution, loss and exercise of water usage***

***rights and all other matters related thereto shall be processed through summary trial.***"  Carrasco

Dec. ¶ 29.  Additionally, Article 123, which Avilés ***also*** fails to mention, confirms that "*if stakes,*

*walls or other **works are made that distort the direction of the water… or deprive the properties***

***that have the right to [use] it, the judge [not the DGA] at the request of the interested parties,***

***will order that such works be undone or modified and that the damages be compensated*.*"*

Carrasco Dec. ¶ 31.

Not only does the Water Code *not* limit the authority to bring claims under it to the DGA,

but also it expressly recognizes the rights of individual water rights holders to bring court actions

seeking compensation for damages, without any precedent formalities (such as bringing a complaint first before the DGA).  *See* Carrasco Dec. ¶ 29-31; Compl. ¶ 17.

Because the right to water is an individual property right protected by the Constitution, the individual harmed—not the General Treasury of the Republic of Chile (the "General Treasury") (Mot. 17-18; Avilés Declaration at ¶ 31)—recovers damages for deprivation of that right.  Contrary to what Avilés suggests, ***nowhere*** does the Water Code require that any and all damages claimed by owners of water rights for violations of the Water Code inure to the General Treasury.  *See* Avilés Declaration, ¶¶ 29-31.  Nor does Article 173 state that damages in connection with such violations are *exclusively* collected by the General Treasury.  Indeed, such a provision would be contrary to the Chilean Constitution, as it would deprive rights holders of their property without just compensation.  *See* Carrasco Dec., ¶ 28.

Contrary to Debtor's assertion, nowhere does Article 172 state that the DGA has *exclusive* authority to bring actions for violations of the Water Code.  This makes sense—administrative proceedings by a regulator are different in kind from individual claims for harm based on violations of individual property rights.

### D.    Plaintiffs Have Standing to Assert Claims for Violation of the Environmental Law

Similarly, the Superintendency lacks the exclusive power to bring actions for violation of the Environmental Law, as Debtor asserts.  Debtor relies on the Organic Law of the Superintendency (Mot. 18; Avilés Dec. ¶¶ 32-35), but nowhere does that law state that it is the only authority that can prosecute violations of the Environmental Law.

Avilés ignores the text of the Environmental Law, which grants rights to those directly affected by environmental damage to bring actions for violation of the Environmental Law.  Article 53 of the Environmental Law states that "[u]pon the environmental damage, there is the possibility

of *an action to repair the harm caused to the environment*, **which is no constraint to execute the ordinary compensatory action by whom is directly affected**." *See* Carrasco Dec., ¶ 23. (emphasis added). Thus, the Environmental Law specifically provides that private persons who suffered damage as a result of a violation of the Environmental Law may bring an action seeking to repair that damage. *See* Carrasco Dec. ¶¶ 22-25.

Finally, while the Organic Law of the Superintendency may require that monetary fines for violations of the Environmental Law be paid to the General Treasury (Mot. 19), the Environmental Law itself, which provides the individual right to bring an action by those harmed as a result of violations of the Environmental Law, contains no such limitation. Carrasco Dec. ¶¶ 22-25, 27. Accordingly, just like the Water Code, the Environmental Law provides Plaintiffs standing to bring an action against Debtor, and to recover damages. Debtor's arguments invite clear error.

## II.    JUDICIAL ESTOPPEL AND WAIVER PRECLUDE DEBTOR'S FORUM-BASED ARGUMENTS

The Debtor really seeks to avoid litigating this matter to its conclusion anywhere—first it did not want to address these claims in Chile, and now it wants to avoid them here. The parties have already expended significant resources litigating key aspects of this dispute here—resources expended as a result of Debtor's efforts to summarily dispense with the Plaintiffs' claims.

The Debtor's conduct in this case cannot square with the arguments in its Motion to Dismiss. First, as this Court noted, this could have been a balance-sheet restructuring from the beginning. Confirmation Hr'g Tr. 25:21026:1. Instead, the Debtor decided to detour into zeroing out all unsecured claims, disallowance of the Plaintiffs' claims, and expansive invocation of this Court's jurisdiction. It forced Plaintiffs to retain counsel, defend a comprehensive onslaught of pleadings designed to expunge Plaintiff's pre-petition and post-petition claims, and used this Court as a battering ram to avoid its contractual and permit obligations in Chile. Having confirmed its

13

Plan, assumed the Manzano Contract (subject to adjudication of the cure amount), moving to enforce the stay against Manzano by asserting this Court's jurisdiction, the Debtor now claims that this Court should not exercise jurisdiction over the same disputes.  Moreover, the Plan [ECF 610] and the Confirmation Order [ECF No. 614] contain multiple provisions that *require* that Plaintiffs bring cure claims and administrative priority claims *only* in this Court.[6]  The Stay Motion and the Claim Objection both represent express waivers of any forum-related argument because the Debtors sought the expedited disallowance of all of the claims filed by Plaintiffs.  See ECF No. 490 at 10 ("Debtors seek entry of the Proposed Order, pursuant to section 502 of the Bankruptcy Code, Bankruptcy Rules 3007 and 9014, and Local Rule 3007-1, disallowing and expunging the Disputed Claims").

### A.      Judicial Estoppel Bars *Forum Non Conveniens* and Abstention Arguments

As detailed above, Debtors repeatedly asserted this Court's exclusive jurisdiction over parties' disputes.  The Stay Motion, the Claim Objections, and the Assumption Motion all rely on this Court's core jurisdiction to advance the Debtor's reorganization.  In addition, the Debtor's confirmed Plan requires that Plaintiffs assert their claims (Administrative Claims and Cure Claims) in this Court only.  Plan [ECF No. 610] § 5.2(b).  Each of Debtor's forum-based arguments can be and have been waived or are subject to judicial estoppel.  *E.g., Oneida Motor Freight, Inc. v.*

---

[6]  *E.g.*, Confirmation Order, ECF No. 614 at 22 (requiring administrative claims to be filed within 30 days of the Effective Date); Plan ECF No. 614-1 at 26 ("the Bankruptcy Court shall determine whether such Administrative Claim should be allowed and, if so, in what amount"); Plan, ECF No. 614-1 at 45-6 ("In the event of a dispute regarding (i) the amount of any Cure Cost, (ii) the ability of the Reorganized Debtors or any assignee to provide "adequate assurance of future performance" within the meaning of section 365(b) of the Bankruptcy Code, if applicable, under the Executory Contract or the Unexpired Lease to be assumed or assumed and assigned, and/or (iii) any other matter pertaining to assumption and/or assignment, then the Bankruptcy Court shall hear such dispute prior to the assumption and/or assignment becoming effective."); Notice of Effective Date, ECF No. 645 (requiring filing of Administrative Claims to avoid risk of claims being barred).

*United Jersey Bank,* 848 F.2d 414, 419 (3d Cir. 1988) (Judicial estoppel "applies to preclude a party from assuming a position in a legal proceeding inconsistent with one previously asserted."); *In re Finova Cap. Corp.*, 358 B.R. 113, 118 (Bankr. D. Del. 2006) (applying judicial estoppel to permissive abstention); *Barnet v. Drawbridge Special Opportunities Fund LP*, No. 14-CV-1376 (PKC), 2014 WL 12774690, at *5 (S.D.N.Y. Aug. 27, 2014) (applying judicial estoppel to forum non conveniens claim).

### B.    Waiver Bars  Abstention and Arbitration Arguments

By invoking this Court's jurisdiction and requiring that the Plaintiffs assert their cure and administrative claims in this court, the Debtor waived any argument that the Court should abstain from hearing the Complaint. *E.g. AHT Corp. v. Bioshield Techs., Inc. (In re AHT Corp.)*, 265 B.R. 379, 387 (Bankr. S.D.N.Y. 2001) (party waived abstention by agreeing to litigate claims in bankruptcy court).  Likewise, a party waives a forum selection clause when it "disregards a forum selection clause and sues on a contract in an unauthorized forum" *Wachovia Bank Nat'l Ass'n v. EnCap Golf Holdings, LLC*, 690 F.Supp.2d 311, 328 (S.D.N.Y.2010).

Finally, where a party acts inconsistently with the right to arbitrate, as the Debtor undoubtedly did here, "the right to arbitrate has been waived." *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d 109, 117–18 (3d Cir. 2012).  "Prejudice is the touchstone for determining whether the right to arbitrate has been waived." *In re Cych, Inc.*, No. 01-622 (MFW), 2003 WL 473000, at *1 (Bankr. D. Del. Feb. 24, 2003)(citations omitted). "In order to determine whether prejudice exists for a finding of waiver a court should consider the following factors: the timeliness of the motion to arbitrate; the degree to which the moving party has contested the merits of the opponent's claim; whether the moving party has informed its adversary of the intention to seek arbitration; the extent of the moving party's prior non-merits motion practice; the moving party's

assent to pretrial orders; and the extent to which both parties have engaged in pre-trial discovery." *Id*. at *1.

This test must be measured against the lengthy catalog of affirmative, adverse actions that the Debtor filed against the Plaintiffs here.   Having "substantially invoke[d] the litigation machinery before asserting its arbitration right," and never mentioning its intention to invoke arbitration in a different country, the Debtor waived its right to arbitrate these disputes.  *In re Magna Ent. Corp.*, No. 09-10720 MFW, 2012 WL 272847, at *5 (Bankr. D. Del. Jan. 30, 2012).

## III.    THE DOCTRINE OF *FORUM NON CONVENIENS* DOES NOT APPLY TO PLAINTIFFS' ADMINISTRATIVE EXPENSE AND CURE CLAIMS

The Debtor's efforts to paint this case as a run-of-the-mill action by foreign plaintiffs seeking access to the U.S. Courts to resolve otherwise unrelated claims flies in the face of its own actions—it is the Debtor, not the Plaintiffs, who chose to seek the assistance of this Court, first in reorganizing, and then in attempting to bar the Plaintiffs' claims in their entirety.  The Debtor brought the Plaintiffs here, and should be held to that election.

The doctrine of *forum non conveniens* allows the court to dismiss a case properly before it where the Debtor has met its burden to show not merely that an alternative forum exists, but that the "pertinent factors tilt strongly in favor of trial in the foreign forum."  In *re GCX Ltd.*, 634 B.R. 441, 449 (Bankr. D. Del. 2021) (emphasis added).  The burden on the Debtor moving to dismiss in favor of a foreign court "is a strong one."  15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3828, at 291-92 (1986).  Here, the factors pertinent to this dispute weigh in favor of keeping it here.

### A.    Alto Maipo Forced the Plaintiffs into This Forum

The Debtor forced the Plaintiffs to defend their claims before this Court, and this Court should decline to now bounce the Plaintiffs back to Chile.  As set forth in the Complaint, the

Plaintiffs sought injunctive relief in Chile to halt Alto Maipo's illegal turbine testing that it conducted as of January and February of 2022. Compl. ¶ 66. Within weeks, Alto Maipo filed a motion in this Court to enforce the automatic stay, and to prevent the Plaintiffs from seeking relief in Chile. Compl. ¶¶ 76-82. Debtor sought not only to prevent the Plaintiffs from seeking relief— it sought to disallow their claims of $1 billion in the Debtors' bankruptcy case in their entirety, to punish them for attempting to protect themselves and their property rights. Compl. ¶ 80. At the same time, the Debtors did not shy away from resolving their objections to Plaintiffs' claims through the U.S. court system when trying to summarily extinguish them. Compl. ¶¶ 89-91; 94-96.

Despite the Debtor's efforts to extinguish them, Plaintiffs reached an agreement with the Debtors that their claims would "pass through" the reorganization, Compl. ¶ 97, on the understanding that "the existence of any [] defaults under the Manzano Contract… and the required cure shall be resolved by a court, arbitral panel, or any other judicial or administrative body of competent jurisdiction," Compl. ¶¶ 99, 105, thus expressly reserving their rights to litigate the claims in this Court.

### B.    The Plaintiffs' Choice to Remain Here Should be Entitled to Deference

This is not the typical case where a plaintiff sues in the United States without any factual predicate. It was Alto Maipo who created a Delaware entity on the eve of its bankruptcy filing and forced Plaintiffs into this Court. Compl. ¶¶ 46-47 and then, as described at length *supra*, § III.D., the Plaintiffs were forced to defend their claims before this Court because of the Debtor's own actions in seeking to enforce the automatic stay, first, and then seeking to disallow the claims entirely. Moreover, the Plaintiffs did not choose this forum out of thin air—rather, this dispute has been before this Court already, and the Plaintiffs' decision to keep it here should be entitled to

deference—even more so than that usually afforded a foreign plaintiff.  *See Lony v. E.I. Du Pont de Nemours & Co.*, 935 F.2d 604, 609 (3d Cir. 1991) ("A plaintiff's choice of forum is normally due considerable deference, although a foreign plaintiff's choice may deserve less deference because it may be less reasonable to assume that a venue which is not the plaintiff's home forum is convenient.  Still, that reduced dismissal is not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference since dismissal for forum non conveniens is the exception rather than the rule.") (internal citation and quotation marks omitted).

> **C.    The Balance of Public and Private Factors Supports Resolution of This Dispute in This Forum**

While the Debtor's illegal conduct took place in Chile, the fact remains that the Debtor chose to invoke this Court's assistance in reorganizing its debt and oversee its operations as debtor-in-possession, when it engaged in tortious, operational conduct.  No action in Chilean courts currently exists between these litigants.

Further, despite the Debtor raising the specter of conflict of law (Mot. at 22), the parties do not dispute which law will apply to the claims, nor is there concern about potentially inconsistent rulings between the two fora.  *C.f., In re SK Foods, L.P.*, 2013 WL 6488275, at \*12-13 (B.A.P. 9th Cir. 2013).  The Debtor fails to articulate any reason that it will be unable to litigate this case before this Court or comply with this Court's resolution of the claims against it, and thus fails to make a threshold showing that there is any risk of inconsistency or any true conflict of law at issue.  *See In re Maxwell Commc'n Corp. plc by Homan*, 93 F.3d 1036, 1049 (2d Cir. 1996) ("International comity comes into play only when there is a true conflict between American law and that of a foreign jurisdiction.").  Indeed, all parties appear to agree that Chilean law with Bankruptcy Code overlay governs this dispute.  No other court with jurisdiction can apply both.

Nor should the Debtor's complaints about convenience be given credence here—Alto Maipo has shown itself more than capable of presenting evidence regarding its activities in Chile to this Court,—including specifically the merits of the Plaintiffs' claims, when it has found it convenient to do so. *See, e.g.*, ECF Nos. 485, 487. Thus, neither the location of the Plaintiffs nor the location of the Alto Maipo Project is any impediment to the Debtor, but is merely raised for convenience to prevent the Plaintiffs from airing their claims *anywhere*.

Finally, the resolution of these claims bears directly on the administration of the Debtors' estate. To the extent that estate was once located solely in Chile, the Debtor's own action has recentered that matter—and controversies arising out of it—here in Delaware. Whatever its prior status, Alto Maipo has made this matter local to this district. Having chosen to reorganize here, it cannot now assert this matter should be transferred to Chile.

**D.    The Forum Selection Clause and Arbitration Clause in the Manzano Contract Should Not Be Enforced**

This proceeding is a core proceeding, making forum selection and arbitration clauses inapplicable. *See In re Exide Techs.*, 544 F. 3d 196, 206-07 (3d Cir. 2008); *In re Penson Worldwide*, 587 B.R. 6, 14 (D. De. 2018). This is particularly true where the claims at issue are Bankruptcy-Code-governed claims. *Mintze v. Am. Fin. Servs., Inc. (In re Mintze)*, 434 F.3d 222 (3d Cir. 2006). Because both the Cure Claim and Administrative Claims arise under the Bankruptcy Code and the Debtor's Plan, the Court can, and should, decline to enforce the forum selection and arbitration provision.

The Debtor cannot plausibly assert it did not expect suit here (*See* Mot. at 16)—Alto Maipo explicitly waived its rights under the arbitration clause of the Contract when it agreed that the claims might be heard by "a court, arbitral panel, or any other judicial or administrative body of competent jurisdiction." Compl. ¶¶ 99, 105; *See Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713

(2022) (holding that waiver requires only the "intentional relinquishment or abandonment of a known right."). Certainly Alto Maipo knew of the arbitration clause, but the heavily negotiated agreement of the parties before this Court contemplated the raising of these claims in various fora—including this one. Had the Debtor intended to be amenable to suit in only one, it should have negotiated such a limitation at the time.

Moreover, in core proceedings, bankruptcy courts have broad discretion not to enforce arbitration clauses. *In re APF Co.*, 264 B.R. 344, 362 (Bankr. D. Del. 2001) ("the majority view in this Circuit and others is that bankruptcy courts continue to enjoy discretion to refuse enforcement of an otherwise applicable arbitration provision provided the standard in McMahon has been met") (citing *Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 227 (1987)). In this case not all of the causes of action derive from the Manzano Contract—and the Debtor offers no reason to impose arbitration to non-contract claims. *See id.* at 363 (noting that not all contracts underlying certain claims contained an arbitration clause as one of several factors favoring non-enforcement of arbitration provisions). As in *APF*, fragmentation of this litigation does not serve the interests of any party. *Id.* at 364 (noting that "[a]rbitrarily staying the adversary proceeding to resolve only those claims which are based on contracts that happen to contain arbitration clauses will result in piecemeal litigation and unnecessary expense for both parties").

## IV.    THE COURT SHOULD NOT EXERCISE ITS DISCRETION TO ABSTAIN FROM EXERCISING JURISDICTION PURSUANT TO 28 U.S.C. § 1334(C)(1).

In the alternative, the Debtor requested the Court to exercise its discretion to abstain from exercising jurisdiction pursuant to section 1334(c)(1) of the Bankruptcy Code. Section 1334(c)(1) provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11."

20

## A.      Plaintiffs' Claims Are Core Claims

By invoking only section 1334(c)(1), Debtor concedes that mandatory abstention of section 1334(c)(2) does not apply, *i.e.*, that the case is not merely "related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section." Debtor concedes that the action brought by Plaintiffs is a core proceeding as involving "matters concerning the administration of the estate," 28 U.S.C. § 157(b)(2)(A), and "allowance or disallowance of claims against the estate," 28 U.S.C. § 157(b)(2)(B).

In evaluating whether a claim is "core," after looking to the illustrative list of "core" proceedings found in § 157(b)(2), the court "must then conduct this Court's two-step test, according to which a claim will be deemed core 'if (1) it invokes a substantive right provided by title 11 or (2) if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case.'" *In re Exide Techs.*, 544 F.3d 196, 206 (3d Cir. 2008) (quoting *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999)).

Here, each Plaintiff brough an action for payment of "(a) its administrative expense claim under the Amended Plan of Reorganization . . . and section 503(b)(1)(A) . . . in the form of a post-petition tort or constitutional tort claim and (b) cure claims arising from the assumption of the Manzano Contract . . . under the Amended Plan of Reorganization and section 365(b) of the Bankruptcy Code." Compl. ¶ 1. The claims therefore both invoke substantive right provided by title 11 (administrative expense claim and cure claim) and "by [their] nature, could arise only in the context of a bankruptcy case." The concepts of administrative expense claim and cure claim for assumed contracts do not exist outside of bankruptcy. Necessarily, such claims are based on an underlying contract – but to strip administrative and cure claims of their bankruptcy law meaning to equate them to mere actions for

breach of contract would be like equating fraudulent transfer claims with unjust enrichment to deprive bankruptcy court of its jurisdiction over such claims using the doctrine of abstention.

### B.    The Court Should Not Exercise Discretionary Abstention

Plaintiffs reiterate their argument above that Debtor has waived and is estopped from invoking discretionary abstention here.  Abstention pursuant to section 1334(c)(1) "merely gives the district court the discretion to abstain if abstention is in the interest of justice, or in the interest of comity with State courts or respect for State law." *In re New York City Off-Track Betting Corp*., 434 B.R. 131, 146–47 (Bankr. S.D.N.Y. 2010) (citing 1 COLLIER ON BANKRUPTCY ¶ 3.05[1]). Courts have identified twelve factors relevant to the determination of whether to exercise discretionary abstention:

> 1. the effect or lack thereof on the efficient administration of the estate;
>
> 2. the extent to which state law issues predominate over bankruptcy issues;
>
> 3. the difficulty or unsettled nature of applicable state law;
>
> 4. the presence of a related proceeding commenced in state court or other non-bankruptcy court;
>
> 5. the jurisdictional basis, if any, other than section 1334;
>
> 6. the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;
>
> 7. the substance rather than the form of an asserted "core" proceeding;
>
> 8. the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;
>
> 9. the burden of the court's docket;
>
> 10. the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;
>
> 11. the existence of a right to a jury trial; and
>
> 12. the presence of non-debtor parties.

*In re LaRoche Indus., Inc.*, 312 B.R. 249, 253–54 (Bankr. D. Del. 2004) (citing *In re Republic Reader's Service, Inc.*, 81 B.R. 422, 429 (Bankr. S.D. Tex. 1987).[7]

However, "[a]fter giving due consideration to all of these [permissive abstention] factors, . . . one question must predominate.  How will abstention affect the efficient administration of the bankruptcy estate?" *In re Diocese of Buffalo, N.Y.*, 616 B.R. 10, 12 (Bankr. W.D.N.Y. 2020).

    1.    <u>Efficient Administration of The Bankruptcy Estate Predominates Other Abstention Factors</u>

The Debtor's treatment of Plaintiffs throughout its Chapter 11 proceeding belies its argument: After attempting to disprove the validity of the Plaintiffs' claims in the Disclosure Statement, ECF No. 465 at 24; proposing to assume the Manzano contract with cure amount of $0.00 in the Plan Supplement, ECF No. 523 at 30; filing motion to assume the Manzano Contract with a $0.00 cure while challenging the validity of Manzano's claim, ECF No. 487; objecting to the Plaintiffs' claims in their entirety, ECF No. 490; then including the assumption of the Manzano Contract on the effective date in the Amended Plan of Reorganization,  ECF No. 574 at 42; and stating both in the Revised Plan Supplement and Further Revised Plan Supplement that "[b]y agreement of the parties, the cure amount, if any, . . . will be determined at a later date, by a court of competent jurisdiction . . . ," ECF No. 576 at 7 and ECF No. 597 at 7; the Debtor now claims that efficient administration of the estate requires this Court to force the Plaintiffs claims into an undefined forum in Chile.

As discussed *supra*, § III.A, the Plan stated that "Manzano asserts current defaults under the Manzano Contract, and the existence of any such defaults and the required cure shall be

---

[7]   *See also In re Integrated Health*, 291 B.R. 615, 619 (Bankr. D. Del. 2003); *Valley Media, Inc. v. Toys R Us, Inc.* (*In re Valley Media, Inc.*), 289 B.R. 27, 29 (Bankr. D. Del. 2003); *In re Continental Airlines, Inc.*, 156 B.R. 441, 443 (Bankr. D. Del. 1993); *TTS, Inc. v. Stackfleth* (*In re Total Technical Services, Inc.*), 142 B.R. 96, 100–01 (Bankr. D. Del. 1992)).

resolved by a court, arbitral panel, or any other judicial or administrative body of competent jurisdiction, as to which all parties fully reserve all relevant rights and defenses." ECF No. 574 at 42. The Debtor now feigns surprise, despite the fact that Plaintiffs specifically stated in open court during confirmation hearing that they reserve the right to file their complaint in this Court. ECF No. 569, May 4, 2022 Hr'g Tr. 9:23-10:5.

Moreover, by painting Plaintiffs' claims as ordinary breach of contract claims, Debtor disregards the administrative expense nature of claims in the Complaint. But "discretionary abstention should be denied when abstention would adversely affect the efficient administration of the bankruptcy case," which is supported by a line of cases "holding that permissive abstention should be restricted to a narrow range of cases." 1 COLLIER ON BANKRUPTCY ¶ 3.05 (2022) (citing *In re Diocese of Buffalo*, 616 B.R. at 10). The present action is not one of such rare cases to which permissive abstention would apply.

*In re Penson Worldwide*, the bankruptcy court determined that abstention was not appropriate were the adversary proceeding objecting to a proof of claim asserting damages for breach of contracts was core, and forum selection clause was not enforceable in a core proceeding. *In re Penson Worldwide*, 587 B.R. 6 (Bankr. D. Del. 2018). Because Plaintiffs' claims are administrative and cure claims, they constitute core claims, rendering forum selection clause in the Manzano Contract unenforceable; abstention is thus not appropriate.

As the Debtor admitted in its motion to dismiss, "the existence of the Administrative Expense Claims will shortly be the only barrier to the Reorganized Debtors' closure of these Chapter 11 Cases." Mot. at 8. This factor additionally weighs towards this Court not abstaining from promptly and efficiently resolving the Plaintiffs' administrative claims. *See, e.g.*, *J.D.*

*Marshall Int'l, Inc. v. Redstart, Inc*., 74 B.R. 651, 656 (N.D. Ill. 1987) (abstention not appropriate where administration and liquidation of estate can occur only after adversary is concluded).

Nevertheless, Plaintiffs briefly address the remaining abstention factors.

### 2.   State (Foreign) Law Issues Do Not Predominate Over Bankruptcy Issues

Debtor concedes that "parallel Chilean proceedings have not been initiated with respect to the Plaintiffs' breach of contract claim." Mot. at 30. Plaintiffs brought claims under the Bankruptcy Code for administrative expense and cure claims. Although there are underlying Chilean law issues, allowability of administrative and cure claims is a question of bankruptcy law. Further, no proceeding between the parties relating to administrative and cure claims is pending in Chilean courts. This factor negates abstention.

### 3.   The Difficulty Or Unsettled Nature Of Applicable State Law Does Not Weigh Against The Plaintiffs

"Under bankruptcy law the presence of a state law issue is not enough to warrant permissive abstention, but it nevertheless is a significant consideration" *In re L & S Indus., Inc*., 989 F.2d 929, 935 (7th Cir. 1993). Plaintiffs' claims concern administrative expense and cure claims. The contractual issues are not particularly novel or unsettled, but when viewed through the prism of bankruptcy law, these are claims that only this Court can resolve. This factor therefore requires denying abstention.

### 4.   The Jurisdictional Basis Does Not Rely On Section 1334

This action could not be brought in state court (or a district court), because the claims are based on section 157(b)(2) of the Bankruptcy Code. *Cf. Bricker v. Martin*, 348 B.R. 28, 35–36 (W.D. Pa. 2006) (concluding that this factor weighs in favor of abstention where there is no federal question or diversity jurisdiction for a dispute). This case, based on the Bankruptcy Code, constitutes a paradigmatically core proceeding closely tied to the main case, and does not rely on

form rather than substance to obtain core status. These factors therefore require denial of the Debtor's newfound abstention mantra.

Regarding the factor of the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, as Debtor already underscored, the resolution of the administrative claims is the only factor keeping the Plan of Reorganization from becoming effective.  Mot. at 27.  It is therefore against the interest of the Debtor to sever the proceedings to resolve issues of Chilean law separately, since this would delay the proceedings in this Court.  The Court docket is not likely to be overwhelmed by another administrative and cure claims action. These factors therefore weigh against abstention. *See In re New York City Off-Track Betting Corp*., 434 B.R. 131, 153 (Bankr. S.D.N.Y. 2010).

As for the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties, it is the Debtor that engaged in forum shopping by filing its chapter 11 case in a jurisdiction where two days earlier it had no connections.  The Debtor should not now obtain the benefits of its own forum shopping by demanding abstention on that basis.  *See In re Integrated Health Servs., Inc*., 291 B.R. 615, 622 (Bankr. D. Del. 2003) ("While normally the plaintiff's choice of a forum will be given some additional weight, in this case the Bankruptcy Court is no longer the plaintiff's choice. Consequently, we conclude that this factor is neutral.").  The Plaintiffs did not demand a trial by jury, and the only defendant is the Debtor. These factors therefore also weigh against abstention.

<u>**CONCLUSION**</u>

For the foregoing reasons, the Plaintiffs respectfully request that this Court deny Debtor's motion to dismiss the Administrative Expense Claims and the Complaint.

Respectfully submitted this 25th day of August, 2022.

**BLANK ROME LLP**

*/s/ Stanley B. Tarr*

Stanley B. Tarr (DE No 5535)
1201 Market Street, Suite 800
Wilmington, Delaware 19801
Telephone: 302-425-6400
Facsimile: 302-425-6464
Email: Stanley.Tarr@BlankRome.com

-and-

**BLANK ROME LLP**

Michael B. Schaedle (*pro hac vice*)
One Logan Square
130 North 18th Street
Philadelphia, PA 19103
Telephone: 215-569-5762
Facsimile: 215-569-5000
Email: Mike.Schaedle@BlankRome.com

-and-

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**
Patricia B. Tomasco (*pro hac vice*)
Joanna D. Caytas (*pro hac vice*)
Sara Clark (*pro hac vice*)
711 Louisiana, Suite 500
Houston, Texas  77002
Telephone: 713-221-7000
Facsimile: 713-221-7100
Email: pattytomasco@quinnemanuel.com
            joannacaytas@quinnemanuel.com
            saraclark@quinnemanuel.com

-and-

**QUINN EMANUEL URQUHART &
SULLIVAN, LLP**

Lucas Loviscek (*pro hac vice*)
Serafina Concannon (*pro hac vice*)
1300 I Street, NW, Suite 900
Washington, DC 20005
Telephone: 202-538-8000
Facsimile: 202-538-8100
Email: lucasloviscek@quinnemanuel.com
            serafinaconcannon@quinnemanuel.com

*Counsel to Comunidad de Aguas Canal El
Manzano and the Ad Hoc Committee of Tort
Claimants*