# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Alto Maipo SpA,[1]<br><br>                 Reorganized Debtors. | Chapter 11<br><br>Case No. 21-11507 (KBO) |
| Comunidad de Aguas Canal El Manzano on behalf of itself and its members and constitutents, GemmaContreras Bustamante, Christian Becker Matkovic, Maite Birke Abaroa, Bruno Bercic,<br><br>                 Plaintiffs,<br><br>-against-<br><br>Alto Maipo SpA,<br><br>                 Defendant. | Adv. Pro. No.: 22-50381 |

**DECLARACIÓN DE EDESIO CARRASCO EN APOYO A LA RESPUESTA DE LOS DEMANDANTES COMUNIDAD DE AGUAS CANAL EL MANZANO Y DE SUS MIEMBROS GEMMA CONTRERAS BUSTAMANTE, CHRISTIAN BECKER MATKOVIC, MAITE BIRKE ABAROA Y BRUNO BERCIC A LA MOCIÓN DE DESESTIMACIÓN DE ALTO MAIPO**

      Yo, Edesio Carrasco Quiroga, por medio de la presente declaro que las siguientes aseveraciones son verdaderas y correctas de acuerdo a mi conocimiento, experiencia e información[2]:

      **1.** Soy abogado, socio fundador de la firma Schultz Carrasco Benítez, con oficinas en Isidora Goyenechea N°3250, Piso 8, Santiago, Chile. Cuento con habilitación y he ejercido la abogacía en Chile desde 2007 y me especializo en el Derecho Ambiental y Recursos Naturales. Entre los años 2012 y 2014 me desempeñé en la función pública como Director Regional del Servicio de Evaluación Ambiental y como Jefe de la Unidad de Litigios

---

[1] The location of the corporate headquarters and the service address for Alto Maipo SpA is Los Conquistadores 1730, Piso 10, Santiago, Chile.

[2] Se deja constancia que se acompañan a esta declaración solo las partes relevantes de ciertos anexos dado su tamaño, ya que son muy pesados para el sistema de ECF. Los documentos completos se pueden proporcionar a petición de la Corte o de parte interesada.

y Fiscal de la misma entidad. Soy profesor de Derecho Ambiental en los programas de postgrado (LL.M) de la Universidad del Desarrollo y de la Pontificia Universidad Católica de Chile, posición que he mantenido desde 2012.

**2.** Presento la siguiente declaración en apoyo a la respuesta de la Comunidad de Aguas Canal El Manzano (la "Comunidad") en su derecho propio y en representación de sus miembros, como así también de Gemma Contreras, Christian Contreras, Christian Becker, Maite Birke y Bruno Bercic (todos, en conjunto, los "Demandantes") a la moción de desestimación presentada por Alto Maipo (la "Respuesta").

**3.** Salvo que se exprese lo contrario, los hechos relatados en la presente declaración están basados en mi conocimiento profesional, en la información proveída por los Demandantes, en la revisión de antecedentes y documentos relevantes del caso y en mi opinión acerca de la legislación y del derecho chileno aplicable. Si fuera llamado a testificar como testigo en esta materia, testificaría respecto de lo aquí indicado en español.

### A. Antecedentes relativos a los derechos de aprovechamiento de aguas de la Comunidad y sus miembros.

**4.** La Comunidad de Aguas Canal el Manzano consiste en una Comunidad de Aguas en los términos de la legislación de aguas chilena, las cuales se forman cuando dos o más personas se sirven de sus derechos de aprovechamiento de aguas desde un mismo canal[3], en este caso, el canal El Manzano, ubicado en el río Colorado. Estas comunidades pueden organizarse con el motivo de tomar las aguas del caudal matriz y repartirla entre sus miembros. La Comunidad El Manzano, administra los derechos de aprovechamiento de aguas superficiales, con el objeto de conducirlas por el cauce del Canal El Manzano, y repartirla entre los titulares de derechos de aprovechamiento, para su uso con diferentes fines como la actividad agrícola, ganadera, comercial, entre otras.

**5.** El proyecto hidroeléctrico Alto Maipo (el "Proyecto") contempla la construcción de dos centrales de pasada en el sector alto del Río Maipo. Se encuentra ubicado al sureste de la ciudad de Santiago, en la comuna de San José de Maipo, donde se encuentra la Comunidad. El Proyecto contempla para su operación la extracción de agua del río Maipo y afluentes, incluyendo el Río Colorado.

---

[3] Artículo 186 del Código de Aguas, *Anexo A-1*.

2

6. El Código de Aguas de Chile clasifica los derechos de aprovechamiento de aguas distinguiendo entre derechos consuntivos (aquellos que permiten el consumo completo del agua, por ejemplo, para riego o consumo humano) y no consuntivos (aquellos que obligan a devolver el agua utilizada al cauce)[4]. Los derechos de aprovechamiento de aguas que posee Alto Maipo son de carácter no consuntivo, mientras que los de la Comunidad y sus miembros son consuntivos[5]. La misma normativa dispone que la extracción o restitución de las aguas que el titular de un derecho no consuntivo (como Alto Maipo) puede efectuar, deben siempre hacerse en forma de no perjudicar los derechos de terceros constituidos sobre las mismas aguas y sin que el uso de las mismas implique una restricción al ejercicio de los derechos consuntivos existentes[6].

7. De esta manera, cuando la Dirección General de Aguas (órgano encargado de otorgar los derechos de aprovechamiento sobre las aguas terrestres nacionales) le concede un derecho de aprovechamiento de aguas no consuntivo a una persona determinada, ésta última en el ejercicio de dicho derecho queda sometida al marco jurídico indicado anteriormente, por lo que su uso no puede implicar una afectación al ejercicio y goce de los derechos de aprovechamiento de aguas consuntivos de terceros. Dicho de otro modo, el titular de un derecho no consuntivo, como Alto Maipo, tiene siempre la obligación de ejercer su derecho sin interferir con los derechos consuntivos aguas abajo, como son los de titularidad de los miembros de la Comunidad. Lo que hizo la DGA al otorgar el derecho no consuntivo a Alto Maipo fue simplemente confirmar esta obligación para la empresa durante el ejercicio de su derecho no consuntivo en el futuro.

8. La DGA, por lo tanto, no hizo, como manifiesta el señor Avilés, una declaración general confirmando que los derechos de agua no consuntivos de Alto Maipo nunca afectarían los derechos de terceros aguas abajo, como los de la Comunidad el Manzano. Al contrario, es justamente en base a la posibilidad de que el ejercicio de los derechos consuntivos de los miembros de la Comunidad se vieran afectados por el ejercicio de los derechos no consuntivos de Alto Maipo en la operación del proyecto, que Alto Maipo y la Comunidad celebraron un convenio en el que Alto Maipo se obligó a respetar los

---

[4] Artículos 12, 13 y 14 inc.1° del Código de Aguas. *Anexo A-1*.
[5] De acuerdo a lo indicado en Convenio Complementario de Ejecución de Obras de Captación Complementarias, p. 2.
[6] Artículos 14 inciso 2do y 15, Código de Aguas, *Anexo A-1*.

3

derechos de aprovechamiento de aguas que le corresponden a los miembros de la Comunidad y a construir obras de captación (bocatoma) para asegurar que los miembros de la Comunidad tuvieran acceso a la cantidad y calidad de agua a la que tenían derecho.

### B. Afectación a los derechos de aprovechamiento de aguas de la Comunidad e incumplimiento de los compromisos y obligaciones asumidas por Alto Maipo con respecto a la Comunidad.

9. De acuerdo con las disposiciones de la Ley N°19.300 de Bases Generales del Medio Ambiente ("Ley N°19.300"), una Resolución de Calificación Ambiental es una autorización que establece las condiciones o exigencias ambientales que deben cumplirse en la ejecución de un proyecto aprobado. La Resolución de Calificación Ambiental se emite una vez que se lleva a cabo un procedimiento de evaluación de impacto ambiental que involucra la identificación de los impactos ambientales y los eventuales efectos adversos significativos sobre el medio ambiente que la construcción, operación y cierre de un determinado proyecto ocasionarán, junto con las medidas de mitigación, reparación y/o compensaciones apropiadas según corresponda. Como parte de este proceso, se desarrolla, además, una etapa de participación ciudadana en que las comunidades pueden presentar observaciones respecto del proyecto, sus impactos y medidas, las cuales deben ser respondidas por el titular, entre otras instancias. En ocasiones, como en el caso en cuestión, el titular del proyecto puede celebrar acuerdos con las comunidades locales que podrían ser afectadas por el desarrollo y operación del proyecto, teniendo las comunidades, en general, un rol activo en estos procesos.

10. Al concluir el proceso administrativo se emite la Resolución de Calificación Ambiental, la que dispone, entre otras cosas, las condiciones y exigencias ambientales que deben cumplirse en la ejecución de un proyecto. Los acuerdos indicados en el párrafo anterior, además de su carácter contractual entre las partes, en el evento de quedar plasmados en la Resolución de Calificación Ambiental son parte integrante de ésta y, por lo tanto, tienen la calidad de condiciones o exigencias ambientales, debiendo ser cumplidas estrictamente por el titular del proyecto,[7] toda vez que de lo contrario quedará sujeto a responsabilidad administrativa, ambiental y civil.

11. En lo que interesa, la RCA de Alto Maipo fija en su Considerando 7.3.1 la obligación para la compañía de "*[c]umplir a cabalidad las estipulaciones del convenio*

---

[7] Artículos 24 inc. 6° y 25 inc.1° de la Ley N°19.300 de Bases Generales del Medio Ambiente. *Anexo A-2.*

4

*firmado con fecha 9 de diciembre del año 2008 entre la Comunidad de Aguas el Manzano y el titular, respecto de la mantención de los canales administrados por la referida organización de usuarios. Dicho convenio se entiende parte integrante de la presente resolución*".[8]

12.     Ahora bien, el referido convenio del 9 de diciembre de 2008, titulado *"Declaración y Compromiso"*, complementado luego por el *"Convenio Complementario de Ejecución de Obras Complementarias entre Alto Maipo SpA y Comunidad de Aguas Canal El Manzano"* firmado el 10 de junio de 2021 (en conjunto con el de 2008, el "Convenio") impone a Alto Maipo las obligaciones de: **(i)** solucionar a su costa los efectos que tuviere la utilización de sus derechos de aprovechamiento de aguas en la capacidad de captación de los derechos de aprovechamiento de aguas de la Comunidad en su bocatoma de captación;[9] **(ii)** tramitar la aprobación y construir, antes del inicio de la operación del Proyecto, una bocatoma complementaria para que durante la operación del mismo el agua ingrese en todo momento al canal El Manzano y la Comunidad capte los 400 litros por segundo a los que tiene derecho,[10] **(iii)** contar con un sistema de medición de caudales en dicha obra. Lo anterior, con el fin de *"asegurar la disponibilidad a la Comunidad en cantidad y calidad del recurso hídrico, de acuerdo con los derechos legalmente constituidos y la legislación vigente, durante toda la vida útil…"* del Proyecto,[11] comprometiéndose Alto Maipo a realizar las acciones necesarias que permitan el ingreso de los caudales que históricamente han ingresado al Canal El Manzano y la captación por parte de la Comunidad de los 400 litros por segundo a que tiene derecho.[12]

13.     Al estar contenido el Convenio dentro de las condiciones y obligaciones ambientales de la RCA del Proyecto, forman parte integrante de ésta y se transforman en exigencias y obligaciones ambientales a las cuales el titular debe ceñirse y cumplir rigurosamente.

---

[8]  Resolución de Calificación Ambiental N°256/2009 de la Comisión Regional del Medio Ambiente de la Región Metropolitana. Considerando 7.3.1, página 39, *Anexo A-3*.
[9]  Convenio, página 1.
[10] *Id.* página 2 y Convenio Complementario, página 3.
[11] Convenio, página 1.
[12] Convenio Complementario, página 3.

**14.** En ese marco, a principios de 2022, Alto Maipo efectuó las pruebas de puesta en marcha del Proyecto, provocando una baja en el nivel de las aguas del Río Colorado, lo que a su vez impidió que ingresaran a la bocatoma correspondiente de la Comunidad los caudales que legalmente corresponden a la Comunidad y sus miembros. Para esta fecha, Alto Maipo no había construido la bocatoma que se había obligado a construir en conformidad al Convenio y la RCA.

**15.** Atendido lo anterior, la Comunidad y sus miembros, presentaron denuncias ante la Superintendencia y, asimismo, el 22 de marzo de 2022, la Comunidad interpuso un recurso de protección ante la Corte de Apelaciones de San Miguel (el "Recurso"), buscando el amparo y resguardo de su derecho constitucional de propiedad sobre el uso de las aguas a las cuales tiene derecho. En forma simultánea y en la misma presentación del Recurso, la Comunidad solicitó a la Corte de Apelaciones de San Miguel una orden de no innovar solicitando la interrupción de las operaciones del Proyecto hasta tanto no se construyera la bocatoma de la Comunidad que Alto Maipo estaba obligado a construir bajo el Convenio y la RCA. La Corte de Apelaciones de San Miguel rechazó primero la solicitud de orden de no innovar y, con fecha 10 de junio de 2022, desestimó el Recurso interpuesto, sin pronunciarse respecto al fondo de la controversia, pues concluyó que se trataba sobre asuntos técnicos que involucraban una discusión sobre el cumplimiento de un convenio y de resoluciones ambientales, sujetas a resolución de otras autoridades competentes, y que una controversia de esa naturaleza debía resolverse en otra sede, no siendo el mecanismo urgente y expedito del Recurso la vía idónea para ello. Así lo expresó en el considerando N°13 de su sentencia.[13]

**16.** De esta manera, la Corte de Apelaciones de San Miguel no hizo declaración respecto a la existencia o inexistencia de infracciones al Convenio y/o a la RCA, daño ambiental o responsabilidad, sino que simplemente señaló que el Recurso no es la vía idónea para resolver la controversia en cuestión. Con lo cual, la Corte de Apelaciones de San Miguel no hizo pronunciamiento alguno sobre el mérito de la disputa.

---

[13] Sentencia de la Corte de Apelaciones de San Miguel dictada el 10 de junio de 2022 en Causa Rol N°652-2022, considerando N°13: *"Que, a mayor abundamiento, del contenido del arbitrio constitucional se advierte que se trata por un lado de temas técnicos que involucran, además, eventualmente el cumplimiento o incumplimiento de un convenio y de resoluciones ambientales que actualmente conoce la autoridad respectiva, por lo que claramente ello debe discutirse y probarse en otra sede, no pudiendo por esta vía de urgencia adoptarse medida cautelar alguna a su respecto y no siendo éste el mecanismo idóneo para establecer los hechos materia del recurso."* Anexo A-4.

6

**17.** Como indiqué anteriormente, la Comunidad y varios de sus integrantes presentaron denuncias ante la Superintendencia, lo cual dio inicio a un procedimiento de investigación. He leído que en la Moción de Desestimación presentada por Alto Maipo y en la declaración del señor Avilés, se dice que los resultados del proceso habrían demostrado que la Comunidad tenía agua suficiente para satisfacer sus derechos de aguas,[14] pero de mi revisión y análisis de las constancias de dicho proceso he podido constatar que la Superintendencia determinó lo contrario. Como explico en mayor detalle a continuación, luego de conducir una investigación y una inspección en el sitio, como es habitual, la Superintendencia constató que, como resultado de las operaciones de Alto Maipo, la Comunidad no estaba captando la cantidad de agua a la que tenía derecho y que había sido privada completamente del agua durante un período considerable de tiempo, y determinó en consecuencia la existencia de infracciones ambientales y daño grave e inminente a la salud de la población, imponiendo medidas urgentes y transitorias ("MUT") al Proyecto.[15]

**18.** En efecto, las denuncias ingresadas se fundaron en que Alto Maipo no había construido las obras complementarias de bocatoma a que le obligan el Convenio y la RCA antes de la puesta en servicio del Proyecto y que además desvió y disminuyó aguas del Río Colorado, imposibilitando la captación de las aguas a que tienen derecho la Comunidad y sus miembros.[16]

**19.** En su Resolución Exenta N°635/2022, que impone la MUT, la Superintendencia:

- Constata que Alto Maipo inició su puesta en servicio sin haber realizado la construcción de las obras complementarias de la bocatoma a la que se encontraba obligada en virtud del Convenio y de la RCA;[17]

- Reconoce que el requisito consistente en la construcción de las referidas obras tiene por objeto asegurar la captación de las aguas que por derecho le corresponden a la Comunidad.[18]

---

[14] Declaración del señor Avilés, ¶ 28.
[15] Resolución Exenta de la Superintendencia de Medio Ambiente N°635/2022, Considerandos 10; 21; 32 y Resuelvo Primero.
[16] Resolución Exenta de la Superintendencia de Medio Ambiente N°635/2022, página 4, Considerando 10.
[17] *Id*., página 5, Considerando 14 y página 8, Considerando 21 a. y b.
[18] *Id*., página 8, Considerando 21 a. y b.

- Da cuenta, en consecuencia, de la existencia de una infracción ambiental por no haberse cumplido con la obligación mandatada a Alto Maipo en la RCA.[19]

- Da cuenta de que, al menos en los días 11, 12, 17, 21 y 27 de enero y 25 de febrero de 2022 (mismos días incluidos en las denuncias), los bajos caudales del río a causa de las acciones de puesta en marcha del Proyecto imposibilitaron captar las aguas de la Comunidad a través de su bocatoma.[20]

- Respecto a los efectos de las infracciones constatadas, la Superintendencia da cuenta de que éstas afectan directamente a la población de la localidad de El Manzano, generando un riesgo sanitario con efectos directos a la salud de dicha población.[21]

**20.** De esta forma, la Superintendencia se abocó a la fiscalización del Proyecto constatando las infracciones cometidas y disponiendo medidas urgentes y transitorias, reconociendo además la existencia de un daño inminente. De lo anterior, queda en evidencia la existencia de responsabilidades administrativas, ambientales y civiles.

**21.** Como punto final del presente capítulo y a propósito de distintas afirmaciones contenidas en la declaración del señor Avilés, es preciso dejar constancia de lo siguiente:

- En marzo de 2022, Alto Maipo solicitó al Coordinador Eléctrico Nacional (el "Coordinador") la aprobación para entrar en operación y presentó una declaración jurada, indicando que habría dado cumplimiento a todas las exigencias establecidas en la normativa vigente y en abril de 2022, en base a dicha declaración jurada el Coordinador otorgó la autorización. Ante esto la Comunidad protestó ante la Superintendencia y ante el Coordinador, indicando que Alto Maipo había hecho representaciones falsas, que no había cumplido con sus obligaciones contractuales y con la RCA con respecto a su obligación de construir las obras complementarias de la Comunidad para poder entrar en operación, solicitando que el Coordinador revirtiera la autorización otorgada. El Superintendente en respuesta a la denuncia de la Comunidad también envió una carta al Coordinador en este sentido.

- El señor Avilés hace referencia a estos intercambios y manifiesta que el Coordinador, sin responder a dichas cartas ni tomar ninguna medida al respecto,

---

[19] *Id.*, páginas 8 y 9, Considerando 21 y página 12, Considerando 32.
[20] *Id.*, página 7, Considerando 16 e.
[21] *Id.*, página 7, Considerando 24 c.

8

otorgó la aprobación para que el Proyecto entrara en operación y que habría determinado que las alegaciones de la Comunidad no tendrían mérito.

- Lo anterior no es correcto, por cuanto:

(i) El Coordinador había otorgado la autorización antes que la Comunidad y la Superintendencia enviaran sus peticiones al Coordinador.

(ii) El Coordinador sí contestó a la carta del Superintendente y nunca indicó que las alegaciones de la Comunidad no tenían mérito. Lo que el Coordinador señaló en respuesta a dichas cartas fue que las cuestiones ambientales y de otra índole no son de su competencia y que él solo constató los requerimientos técnicos en materia eléctrica. El hecho de que Alto Maipo haya contado con una aprobación emanada del Coordinador (un organismo sectorial no ambiental) para iniciar su operación, sólo da cuenta de que el proyecto en cuestión habría dado cumplimiento a la normativa técnica eléctrica que le es aplicable y que le corresponde al Coordinador verificar[22]. Ello en ningún caso da cuenta del cumplimiento de los compromisos contractuales y ambientales del Proyecto, los cuales no son de competencia del Coordinador.[23]

(iii) Lo que sí da cuenta la comunicación del Coordinador es que las centrales de Alto Maipo iniciaron su operación, hecho considerado por la Superintendencia para configurar una infracción a la RCA del proyecto por haber iniciado su operación sin haber construido las obras a que se encontraba obligada en favor de la Comunidad El Manzano.

- El Recurso de Protección es una acción constitucional que tiene por objeto el amparo de ciertas garantías constitucionales que puedan verse amenazadas, perturbadas o infringidas[24]. Ello, a través de un procedimiento breve y sumarísimo, que no contempla un período probatorio y en el que el recurrente solicita a la Corte de Apelaciones respectiva el restablecimiento o defensa de derechos indubitados. No podría, en principio, en el marco de un recurso de protección ventilarse ante la Corte

---

[22] Artículos 27, 28 y 29 del Decreto Supremo N°125/2017 del Ministerio de Energía, Reglamento de la Coordinación y Operación del Sistema Eléctrico Nacional, *Anexo A-5*.
[23] Carta enviada por el Coordinador Eléctrico Nacional al Superintendente del Medio Ambiente, de fecha 22 de abril de 2022, *Anexo A-6*.
[24] Artículo 20 de la Constitución Política de la República de Chile, *Anexo A-7*.

de Apelaciones una disputa de "fondo" sobre cuestiones de lato conocimiento, ni mucho menos reclamar una indemnización de daños y perjuicios por dichas cuestiones. Por lo mismo, no es correcto concluir que a partir del rechazo de un Recurso de Protección debido a que la controversia debía decidirse en otra sede, se indique que no existan responsabilidades civiles o ambientales para Alto Maipo, o que la Comunidad El Manzano no tendría acciones para exigir el cumplimiento de las mismas.

- El señor Avilés en su declaración[25] realiza una exposición acerca de acciones deducidas por miembros de la Comunidad ante el Segundo Tribunal Ambiental las cuales habrían sido rechazadas. Lo anterior, para concluir -incorrectamente- que el Segundo Tribunal Ambiental ya habría rechazado los reclamos que los Demandantes interpusieron en este proceso de Chapter 11 y que, por lo tanto, sobre la base de la decisión del Tribunal Ambiental "*ninguna parte tiene base para aducir ninguna responsabilidad contra Alto Maipo relacionada con la construcción de los túneles*"[26] del Proyecto y que "*los derechos de agua de Manzano no han sido afectados por el Proyecto, como quedó demostrado por la decisión del Tribunal Ambiental*"[27]. De la revisión del procedimiento ante el Segundo Tribunal Ambiental, se puede señalar que las aseveraciones del señor Avilés son incorrectas tanto desde el punto de vista fáctico como jurídico:

(i) La decisión del Tribunal Ambiental a la que se refiere el señor Avilés fue dictada en base a una reclamación fundada en pretensiones y hechos distintos a los invocados en el *Complaint* presentado por los Demandantes en este proceso. Las acciones presentadas ante el Segundo Tribunal Ambiental buscaban que se dejase sin efecto la aprobación del programa de cumplimiento que Alto Maipo presentó en el procedimiento sancionatorio que tiene pendiente ante la Superintendencia del Medio Ambiente y en el cual se le imputan 14 cargos por infracciones a su RCA. Entre otros asuntos, en ese caso los reclamos se basaron en la alegada afectación de los derechos de algunos miembros de la Comunidad en sus aguas subterráneas (acuíferos),

---

[25] Declaración del señor Avilés, ¶ 11 al 18.
[26] Declaración del señor Avilés, ¶ 18; traducción libre.
[27] Declaración del señor Avilés, ¶ 39, traducción libre.

10

<blockquote>debido la a construcción de los túneles del Proyecto. Por su parte, la demanda interpuesta en el presente proceso trata de reclamos por la afectación de los derechos de agua de la Comunidad y sus miembros sobre el agua superficial proveniente del río Colorado. En efecto, en la demanda interpuesta en este proceso se alegan violaciones contractuales y extracontractuales por parte de Alto Maipo a causa de no construir la bocatoma de captación de agua que de acuerdo a lo acordado en el Convenio y exigido en la RCA Alto Maipo debía construir antes de iniciar la operación de las centrales.[28]</blockquote>

(ii) Asimismo, las acciones ante el Segundo Tribunal Ambiental -interpuestas en el año 2017- buscaban que se deje sin efecto el programa de cumplimiento que se había a aprobado a la empresa respecto a infracciones cometidas por ella durante la fase de construcción del Proyecto, mientras que los reclamos presentados en este proceso refieren a daños derivados de las pruebas de puesta en marcha de las centrales y la operación de las mismas a partir de enero de 2022. Según lo señalado, la decisión del Segundo Tribunal Ambiental no se refiere ni se relaciona con los reclamos que se persiguen en el presente proceso.

(iii) Además, el rechazo de las reclamaciones intentadas ante el Segundo Tribunal Ambiental en nada altera la existencia o inexistencia de responsabilidad ambiental o de otra índole para la empresa, ni la existencia de derechos a favor de la Comunidad El Manzano, por cuanto la Corte Suprema ratificó que el asunto discutido en dicho juicio tenía un carácter incidental y que no resolvía el fondo del asunto.[29]

**C. Acciones a que tienen derecho la Comunidad y sus miembros ante los hechos descritos.**

**22.** Los hechos relatados dan cuenta de que Alto Maipo ha incumplido el contrato con la Comunidad y ha cometido, asimismo, infracciones ambientales constatadas por la Superintendencia y que dichas infracciones habrían causado perjuicios a la Comunidad y sus

---

[28] Sentencia del Segundo Tribunal Ambiental, expediente R-183-2018, 3 noviembre 2021 pp.11-13, *Anexo A-8.*
[29] Sentencia Corte Suprema de Chile, Rol N° 24830-2022, Considerando 8, *Anexo A-9.*

miembros, quienes, como se explica a continuación, gozan de titularidad de ciertas acciones en defensa de sus intereses.

### D.1   Acciones por daño ambiental.

**23.** En primer lugar, y frente a la constatación de la existencia de un daño grave e inminente a la salud de la población a causa de las infracciones ambientales, la Comunidad y sus miembros, que son quienes han sufrido dicho daño, serían titulares -en conformidad con las disposiciones de la Ley N°19.300- de la acción para demandar la responsabilidad por daño ambiental de Alto Maipo, ante los tribunales ambientales[30], pidiendo la reparación del medio ambiente dañado. Asimismo, la normativa aplicable permite, expresamente ejercer la acción indemnizatoria ordinaria a quien ha sido directamente afectado por el daño ambiental.[31]

**24.** Para que un sujeto sea responsable por daño ambiental en Chile, se requiere: **(i)** una acción u omisión dolosa o culpable[32]; **(ii)** que cause una pérdida, detrimento o menoscabo significativo al medio ambiente o a uno o más de sus componentes[33]; y **(iii)** que exista una relación de causalidad entre la acción u omisión y el daño ocasionado[34].

**25.** Respecto al primer requisito, la Ley N°19.300 establece una presunción de responsabilidad del autor del daño en los casos en que haya cometido infracciones a normas ambientales[35], como son el incumplimiento de las obligaciones contenidas en una RCA. Como se ha visto más arriba, en el caso de Alto Maipo, infracciones de esta clase por parte de Alto Maipo fueron constatadas por la Superintendencia, cuya resolución no ha sido dejada sin efecto.

**26.** En lo que dice relación con el segundo y tercer requisitos, la Superintendencia dio cuenta en la Resolución Exenta N°635/2022, que impone la MUT, de hechos que son

---

[30] Artículo 53 de la Ley N°19.300: *"[P]roducido daño ambiental, se concede acción para obtener la reparación del medio ambiente dañado, lo que no obsta al ejercicio de la acción indemnizatoria ordinaria por el directamente afectado…"*, Anexo A-2.
[31] *Id.*
[32] Artículo 51 de la Ley N°19.300, *Anexo A-2*.
[33] Artículo 2 e) de la Ley N°19.300, *Anexo A-2*.
[34] Artículo 52, inciso final de la Ley N°19.300, *Anexo A-2*.
[35] Artículo 52 inc. 1° Ley N°19.300: *"Se presume legalmente la responsabilidad del autor del daño ambiental, si existe infracción a las normas de calidad ambiental, a las normas de emisiones, a los planes de prevención o de descontaminación, a las regulaciones especiales para los casos de emergencia ambiental o a las normas sobre protección, preservación o conservación ambientales, establecidas en la presente ley o en otras disposiciones legales o reglamentarias."* Anexo A-2.

consistentes con la existencia de un daño ambiental grave e inminente ocasionado a la salud de la población a causa de las infracciones cometidas por Alto Maipo y que afectaron a la Comunidad y sus miembros, quienes, como lo constató la Superintendencia, se vieron privados en el ejercicio de sus derechos de aguas.

27. Según lo expuesto, es decir, configurada la existencia del daño ambiental, la Comunidad y los miembros pueden demandar civilmente la indemnización de los perjuicios que dicho daño ambiental les hubiere causado en su patrimonio.

### D.2. Acción civil de responsabilidad extracontractual.

28. Sin perjuicio de lo expuesto en el subtítulo precedente con respecto a las acciones por daño ambiental, es preciso tener en cuenta que la Comunidad y sus miembros son dueños de derechos de aprovechamiento de aguas. En conformidad con la Constitución Política de la República de Chile, los derechos de aprovechamiento de aguas son propiedad de sus titulares[36], formando parte del patrimonio de éstos. Por lo mismo, cualquier daño, detrimento o menoscabo ocasionado a los referidos derechos habilita a sus dueños a demandar indemnización de perjuicios por el daño sufrido[37].

29. Según lo anterior, habiendo las acciones de Alto Maipo ocasionado una vulneración a los mencionados derechos de la Comunidad y sus miembros, éstos últimos son también titulares individuales de una acción de responsabilidad extracontractual en conformidad con las disposiciones del Código Civil, para obtener una indemnización de los perjuicios por los daños sufridos a consecuencia de la afectación al ejercicio de sus derechos de aprovechamiento de aguas. En efecto, para demandar los perjuicios ocasionados por la afectación al ejercicio de un derecho de aprovechamiento de aguas, los afectados cuentan con la acción general de indemnización de perjuicios por responsabilidad extracontractual, regulada en el art. 2314 y siguientes del Código Civil chileno, con la particularidad de que -por tratarse de una disputa relacionada con el ejercicio de derechos de aguas- el mismo Código de Aguas dispone que dicha disputa debe tramitarse en un juicio sumario.[38]

### D.3. Acción posesoria para recuperar el uso del agua, con indemnización de perjuicios.

---

[36] Constitución Política de la República de Chile, artículo 19 N°24 inciso final, *Anexo A-7*.
[37] Artículo 2315, Código Civil, *Anexo A-10*.
[38] Artículo 177 del Código de Aguas señala que los juicios sobre constitución, pérdida y ejercicio de derechos de aprovechamiento de aguas y todas las demás cuestiones relacionadas con ellos se tramitarán mediante un juicio sumario. *Anexo A-1*.

13

30. Adicionalmente, mientras perdure la situación en que la Comunidad y sus miembros se vean privados del ejercicio de sus derechos de aprovechamiento de aguas a causa de las acciones o inacciones de Alto Maipo, estos son titulares de la "acción posesoria" destinada a recuperar la posesión, uso y goce de los derechos de aprovechamiento de que son titulares, con indemnización de los perjuicios ocasionados durante el tiempo en que se vieron privados de dicho uso.

31. En efecto, de acuerdo al Código Civil toda persona que ha sido injustamente privada de la posesión de una cosa (como un derecho de aprovechamiento de aguas), tendrá derecho para pedir que la misma se le restituya, con indemnización de perjuicios[39], mientras que el Código de Aguas confirma que ante acciones de terceros que tuerzan las aguas corrientes, privando de su beneficio a los predios que tienen derecho a ellas, se concede acción posesoria a los interesados para recuperar el uso de las aguas, con indemnización de perjuicios[40].

### D.4. Acción civil por responsabilidad contractual.

32. A mayor abundamiento de lo expuesto en los subtítulos precedentes, es preciso recordar que existe entre la Comunidad y Alto Maipo un vínculo contractual del que nacen obligaciones para Alto Maipo. Se trata del Convenio, que no por formar parte de la RCA deja de ser un verdadero contrato entre las partes.

33. Pues bien, por aplicación de las reglas generales contenidas en el Código Civil, cualquier incumplimiento de Alto Maipo a las obligaciones emanadas de los referidos contratos da lugar a la interposición por parte de la Comunidad de una acción por incumplimiento contractual, acción que ciertamente puede contener una pretensión indemnizatoria de los perjuicios ocasionados a consecuencia del incumplimiento.

34. Tal y como ya se ha señalado, el Convenio obligaban a Alto Maipo, entre otras cosas, a tramitar la aprobación y construir, <u>antes del inicio de la operación del Proyecto</u>, una bocatoma complementaria para que durante la operación de mismo el agua ingresara en todo momento al canal El Manzano. Alto Maipo incumplió dicha obligación, porque se encuentra

---

[39] Artículos 916 y 926 del Código Civil, *Anexo A-10*.
[40] Artículo 123 del Código de Aguas, *Anexo A-1*.

incumplida, toda vez que el Proyecto entró en operación sin antes haber construido la bocatoma en cuestión causándole perjuicios a la Comunidad por ello.

Declaro bajo sanción de perjurio de acuerdo a las leyes de los Estados Unidos de América, que lo indicado es verdadero y correcto.

Santiago de Chile, 24 de agosto de 2022.

Edesio Carrasco
Socio, Schultz Carrasco Benítez
Profesor de Derecho Ambiental
Universidad del Desarrollo
Pontificia Universidad Católica de Chile