# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Alto Maipo SpA,[1]<br><br>     Reorganized Debtors. | Chapter 11<br><br>Case No. 21-11508 (KBO)<br><br>(Jointly Administered) |
| Comunidad de Aguas Canal El Manzano, on behalf of itself and its members and constituents, Gemma Contreras Bustamante, Christian Becker Matkovic, Maite Birke Abaroa, Bruno Bercic,<br><br>     Plaintiffs,<br><br> -against-<br><br>Alto Maipo SpA,<br><br>     Defendant. | Adv. Pro. No: 22-50381 |

**STATEMENT OF EDESIO CARRASCO IN SUPPORT OF THE RESPONSE BY PLAINTIFFS COMUNIDAD DE AGUAS CANAL EL MANZANO AND ITS MEMBERS GEMMA CONTRERAS BUSTAMANTE, CHRISTIAN BECKER MATKOVIC, MAITE BIRKE ABAROA AND BRUNO BERCIC TO ALTO MAIPO'S MOTION TO DISMISS**

   I, Edesio Carrasco Quiroga, hereby declare that the following statements are true and correct to the best of my knowledge, experience and information:[2]

   1.  I am an attorney, founding partner of the firm Schultz Carrasco Benítez, with offices at Isidora Goyenechea N°3250, 8th Floor, Santiago, Chile. I am licensed and have practiced law in Chile since 2007 and specialize in Environmental Law and Natural Resources. Between 2012 and 2014 I served in the public service as Regional Director of the Environmental Assessment Service and as Head of the Litigation and Prosecution Unit of the same entity. I am a professor of Environmental Law in graduate programs (LL.M) at

---

[1]  The location of the corporate headquarters and the service address for Alto Maipo SpA is Los Conquistadores 1730, Piso 10, Santiago, Chile.

[2]  This declaration is accompanied by the relevant portions of certain exhibits due to the volume and large size of those exhibits for filing through ECF system. Full copies of those documents can be provided upon the request of the Court or interested party.

Universidad del Desarrollo and Pontificia Universidad Católica de Chile; a position I have held since 2012.

2.  I submit the following statement in support of the response of the Comunidad de Aguas Canal El Manzano (the "Community") in its own right and on behalf of its members, as well as Gemma Contreras, Christian Contreras, Christian Becker, Maite Birke and Bruno Bercic (all, collectively, the "Plaintiffs") to the motion to dismiss filed by Alto Maipo (the "Response").

3.  Unless otherwise stated, the facts set forth in this statement are based on my professional knowledge, on the information provided by the Plaintiffs, on the review of relevant background information and documents in the case and on my opinion of the applicable Chilean law and legislation. If called to testify as a witness in this matter, I would testify as to what is stated herein in Spanish.

### A.   Background on the water rights of the Community and its members.

4.  The El Manzano Canal Water Community consists of a Water Community in the terms of Chilean water legislation, which are formed when two or more persons use their water rights from the same canal[3]; in this case, the El Manzano Canal located on the Colorado river. These communities can be organized for the purpose of taking water from the parent stream and distributing it among their members. The El Manzano Community administers the surface water usage rights, with the purpose of conducting the water through the El Manzano Canal channel and distributing them among the water rights holders for different purposes such as agriculture, livestock, and commercial activities, among others.

5.  The Alto Maipo hydroelectric project (the "Project") contemplates the construction of two run-of-river power plants in the upper reaches of the Maipo River. It is located southeast of the city of Santiago, in the District of San José de Maipo, where the Community is located. The Project contemplates for its operation the extraction of water from the Maipo river and its affluents, including the Colorado River.

6.  The Chilean Water Code classifies water usage rights by distinguishing between consumptive rights (those that allow full consumption of the water, for example, for irrigation or human consumption) and non-consumptive rights (those that mandate returning

---

[3]   Article 186 of the Water Code, *Appendix A-1*.

the used water to the watercourse)[4]. Alto Maipo's water usage rights are non-consumptive, while those of the Community and its members are consumptive[5]. The same law provides that the extraction or restitution of water that the holder of a non-consumptive right (such as Alto Maipo) may make, must always be done in such a way as not to harm the rights of third parties constituted on the same waters and without restricting the exercise of existing consumptive rights[6].

7.  Thus, when the General Directorate of Water ("DGA"), (the agency in charge of granting the rights of use of national land waters) grants a non-consumptive water usage right to a specific person, the latter, in the exercise of such right, is subject to the legal framework indicated above, so that his/her use cannot affect the exercise and enjoyment of the consumptive water rights of third parties. In other words, the holder of a non-consumptive right, such as Alto Maipo, always has the obligation to exercise its right without interfering with downstream consumptive rights, such as those held by members of the Community. What the DGA (General Directorate of Water) did in granting the non-consumptive right to Alto Maipo was simply to confirm this obligation for the company during the exercise of its non-consumptive right in the future.

8.  The DGA (General Directorate of Water), therefore, did not, as Mr. Avilés asserts, make a general statement confirming that Alto Maipo's non-consumptive water rights would never affect the rights of third parties downstream, such as those of the El Manzano Community. On the contrary, it is precisely because of the possibility that the exercise of the consumptive rights of the members of the Community would be affected by the exercise of Alto Maipo's non-consumptive rights in the operation of the project, that Alto Maipo and the Community entered into an agreement in which Alto Maipo undertook to respect the water rights of the members of the Community and to build catchment works (intake) to ensure that the members of the Community have access to the quantity and quality of water they were entitled to.

---

[4]  Articles 12, 13 and 14 inc.1° of the Water Code. *Appendix A-1*.
[5]  As indicated in the Complementary Agreement for the Execution of Complementary Catchment Works, p. 2.
[6]  Articles 14, paragraph 2 and 15, Water Code, *Appendix A-1*.

**B.    Impairment of the Community's water usage rights and Alto Maipo's breach of the commitments and obligations assumed with respect to the Community.**

9.     In accordance with the provisions of Law No. 19,300 of General Bases of the Environment ("Law No. 19,300"), an Environmental Qualification Resolution is an authorization that establishes the environmental conditions or requirements that must be met in the execution of an approved project. The Environmental Qualification Resolution is issued once an environmental impact assessment procedure is carried out, which involves the identification of the environmental impacts and the eventual significant adverse effects on the environment that the construction, operation and closure of a given project will cause, together with the appropriate mitigation, repair and/or compensation measures, as appropriate. As part of this process, there is also a citizen participation stage in which the communities can submit comments on the project, its impacts and measures, which must be addressed by the owner, among other requests. Sometimes, as in the case at issue, the project owner may enter into agreements with local communities that could be affected by the development and operation of the project, as the communities generally play an active role in these processes.

10.    At the conclusion of the administrative process, the Environmental Qualification Resolution is issued, which establishes, among other things, the environmental conditions and requirements that must be met in the execution of a project. The agreements indicated in the previous paragraph, in addition to their contractual nature between the parties, if they are included in the Environmental Qualification Resolution, they are an integral part of it and, therefore, they qualify as environmental conditions or requirements that must be strictly complied with by the owner of the project,[7] otherwise it will be subject to administrative, environmental and civil liability.

11.    In this regard, the Alto Maipo RCA (Environmental Qualification Resolution) establishes in Recital 7.3.1 the obligation for the company to "*comply fully with the stipulations of the agreement signed on December 9, 2008 between the Community of Aguas El Manzano and the owner, regarding the maintenance of the canals administered by the*

---

[7]    Articles 24 inc. 6° and 25 inc.1° of Law No. 19,300 of General Bases of the Environment. *Appendix A-2.*

*aforementioned users' organization. Said agreement is understood to be an integral part of this resolution*[8]

12. Now, the aforementioned agreement of December 9, 2008, entitled *"Declaration and Commitment,"* later complemented by the *"Complementary Agreement for the Execution of Complementary Works between Alto Maipo SpA and Comunidad de Aguas Canal El Manzano"* signed on June 10, 2021 (together with the 2008 agreement, the "Agreement"), imposes upon Alto Maipo the obligations to: **(i)** resolve, at its own expense, the effects that the use of its water usage rights may have on the catchment capacity of the Community's water usage rights at its catchment intake;[9] **(ii)** process the approval and build, prior to start operations of the Project, a complementary intake so that during the operation of the Project the water enters the El Manzano canal at all times and the Community captures the 400 liters per second to which it is entitled,[10] **(iii)** have a flow measuring system in said work. The above, in order to *"ensure the availability of the water resource to the Community in quantity and quality, in accordance with legally constituted rights and current legislation, throughout the useful life..."* of the Project,[11] committing Alto Maipo to carry out the necessary actions to allow the entry of the flows that have historically entered the El Manzano Canal and the capture by the Community of the 400 liters per second to which it is entitled.[12]

13. As the Agreement is included in the environmental conditions and obligations of the Project's RCA (Environmental Qualification Resolution), they form an integral part of it and become environmental requirements and obligations to which the owner must adhere and comply rigorously.

14. In this context, at the beginning of 2022, Alto Maipo carried out operating tests for the Project, causing a drop in the water level of the Colorado River, which in turn prevented the water flows that legally correspond to the Community and its members from entering the Community's intake. By this date, Alto Maipo had not built the intake that it was obligated to build in accordance with the Agreement and the RCA (Environmental Qualification Resolution).

---

[8] Environmental Qualification Resolution No. 256/2009 of the Regional Environmental Commission of the Metropolitan Region. Recital 7.3.1, page 39, *Appendix A-3*.
[9] Agreement, page 1.
[10] *Id.* at page 2 and Supplemental Agreement, at page 3.
[11] Agreement, page 1.
[12] Supplemental Agreement, page 3.

15. In light of the above, the Community and its members filed complaints with the Superintendency and, on March 22, 2022, the Community filed an appeal for protection (*recurso de protección*) before the Court of Appeals of San Miguel (the "Recurso"), seeking the protection and safeguard of its constitutional right of ownership over the usage of the waters to which it is entitled. Simultaneously, and in the same filing, the Community asked the Court of Appeals of San Miguel for an injunction requesting the interruption of the Project's operations until the Community's intake that Alto Maipo was obligated to build under the Agreement and the RCA. The Court of Appeals of San Miguel first rejected the request for an injunction and, on June 10, 2022, dismissed the Recurso, without ruling on the merits of the dispute, concluding that the dispute involves technical issues, including a discussion about compliance with an agreement and environmental resolutions, that is subject to resolution by other competent authorities, that a dispute of this nature should be resolved in another venue, and that the urgent and expeditious mechanism of the Recurso was not the proper avenue to do so. This was stated in Recital No. 13 of its judgment.[13]

16. Thus, the Court of Appeals of San Miguel did not make any statement regarding the existence or non-existence of violations of the Agreement and/or the RCA (Environmental Qualification Resolution), and/or environmental damage or liability, but simply stated that the Recurso is not the appropriate way to resolve the controversy in question. Thus, the Court of Appeals of San Miguel did not resolve the merits of the dispute.

17. As I indicated earlier, the Community and several of its members filed complaints with the Superintendency, which initiated an investigation procedure. In the Motion to Dismiss filed by Alto Maipo and in the declaration of Mr. Avilés, it is stated that the results of the process would have shown that the Community had sufficient water to satisfy its water rights,[14] but from my review and analysis of the record of said process, I have been able to verify that the Superintendency determined the opposite. As I explain in greater detail below, after conducting an investigation and an on-site inspection, as usual, the

---

[13] Judgment of the Court of Appeals of San Miguel issued on June 10, 2022 in Case No. 652-2022, Recitals paragraph 13: *"That, to a greater extent, from the content of the constitutional arbitration it can be seen that it deals on the one hand with technical issues that involve, in addition, the possible compliance or non-compliance of an agreement and environmental resolutions currently known by the respective authority, so clearly this must be discussed and proven in another venue; this one not being able to adopt any precautionary measure in this way of urgency in its respect nor being the appropriate mechanism to establish the facts subject of the appeal." Exhibit A-4.*

[14] Declaration of Mr. Avilés, ¶ 28.

Superintendency found that, as a result of Alto Maipo's operations, the Community was not capturing the amount of water to which it was entitled and that it had been completely deprived of water for a considerable period of time, and consequently determined the existence of environmental violations and serious and imminent harm to the health of the population, imposing Urgent and Temporary Measures ("MUT")) on the Project.[15]

18. The complaints filed were based on the fact that Alto Maipo had not built the complementary intake works required by the Agreement and the RCA prior to entering into operations of the Project, and that it had also diverted and reduced water from the Colorado River; making it impossible for the Community and its members to collect the water to which they are entitled.[16]

19. In its Resolution N°635/2022, which imposes theMUT (Urgent and Temporary Measures), the Superintendency:

- Confirms that Alto Maipo began its entry into service without having carried out the construction of the complementary works for the intake to which it was obligated by virtue of the Agreement and the RCA (Environmental Qualification Resolution);[17]

- Recognizes that the purpose of the requirement consisting of the construction of the aforementioned works is to ensure the collection of the waters that are rightfully the Community's property.[18]

- Consequently, notes the existence of an environmental infraction for not having complied with the obligation mandated to Alto Maipo in the RCA (Environmental Qualification Resolution).[19]

- Determines that, at least on January 11, 12, 17, 21 and 27 and February 25, 2022 (the same days included in the complaints), the low flows of the river due to the Project's operating actions made it impossible to capture the Community's water through its intake.[20]

---

[15] Resolution by the Superintendency of the Environment No. 635/2022, Recitals 10; 21; 32 and First Resolution.
[16] Resolution by the Superintendency of the Environment No. 635/2022, page 4, Recital 10.
[17] *Id*., page 5, Recital 14, and page 8, Recital 21 a. and b.
[18] *Id*., page 8, Recital 21 a. and b.
[19] *Id*., pages 8 and 9, Recital 21 and page 12, Recital 32.
[20] *Id.* page 7, Recital 16 e.

- Regarding the effects of the violations found, the Superintendency determined that they directly affect the population of El Manzano, generating a sanitary risk with direct effects on the health of said population.[21]

**20.** In this way, the Superintendency began an investigation of the project, verifying the infractions committed and ordering Urgent and Temporary Measures, and recognizing the existence of imminent damage. This shows the existence of administrative, environmental and civil liabilities.

**21.** As a final point of this chapter and in relation to different statements contained in Mr. Avilés' declaration, it is necessary to state the following:

- In March 2022, Alto Maipo requested to the National Electric Coordinator (the "Coordinator") the approval to start operations and submitted an affidavit to the Coordinator, indicating that it had complied with all the requirements established in the regulations and in April 2022, based on this affidavit, the Coordinator granted the authorization. In response, the Community complained before the Superintendency and the Coordinator, indicating that Alto Maipo had made false representations, that it had not complied with its contractual obligations and with the RCA (Environmental Qualification Resolution) with respect to its obligation to build the Community's complementary works in order to be able to begin operations, and requesting that the Coordinator revoke the authorization granted. In response to the Community's complaint, the Superintendent also sent a letter to the Coordinator in this regard.

- Mr. Avilés refers to these exchanges and posits that the Coordinator, without responding to these letters or taking any action on the matter, granted approval for the Project to enter into operation and that the Coordinator determined that the Community's allegations had no merit.

- This is not correct, since:

(i) The Coordinator had granted the authorization before the Community and the Superintendency sent their requests to the Coordinator.

(ii) The Coordinator did respond to the Superintendent's letter and never indicated that the Community's allegations were without merit. In response to these letters, what the Coordinator stated was that environmental and other

---

[21] *Id.*, page 7, Recital 24 c.

issues are not within its competence and that he only verified the technical requirements regarding electric regulation. The fact that Alto Maipo has obtained an approval from the Coordinator (a non-environmental sectoral agency) to start its operation only shows that the project in question has complied with the applicable electric and technical regulations, which is what the Coordinator has to verify[22]. This in no way reflects compliance with the Project's contractual and environmental commitments, which are not the responsibility of the Coordinator.[23]

(iii) What the Coordinator's communication does state is that the Alto Maipo power plants began operating, a fact considered by the Superintendency to constitute a violation of the project's RCA (Environmental Qualification Resolution) for having Alto Maipo begun operations without having built the -works it was obligated to do in favor of the El Manzano Community.

- The Recurso is a constitutional petition for the protection of certain constitutional guarantees that may be threatened, disturbed or infringed upon[24]. This, through a brief and summary proceeding, which does not contemplate an evidentiary phase and in which the appellant requests the respective Court of Appeals for the reestablishment or defense of undisputed rights. In principle, it would not be possible, within the framework of an appeal for protection, to bring before the Court of Appeals a dispute on the "merits" of a matter with disputed facts; much less to claim damages for such matters. Therefore, it is not correct to conclude that the dismissal of an Appeal for Protection on the grounds that the controversy should be decided in another venue indicates that there are no civil or environmental liabilities for Alto Maipo, or that the El Manzano Community would not have an available action to seek compliance with them.

- Mr. Avilés, in his statement,[25] refers to actions brought by members of the Community before the Second Environmental Court which have been dismissed. This

---

[22] Articles 27, 28 and 29 of Supreme Decree N°125/2017 of the Ministry of Energy, Regulation of the Coordination and Operation of the National Electric System, *Appendix A-5*.
[23] Letter sent by the National Electric Coordinator to the Superintendent of the Environment, dated April 22, 2022, *Appendix A-6*.
[24] Article 20 of the Political Constitution of the Republic of Chile, *Appendix A-7*.
[25] Declaration of Mr. Avilés, ¶ 11 to 18.

to conclude -incorrectly- that the Second Environmental Court would have already rejected the claims that the Plaintiffs filed in this Chapter 11 proceeding and that, therefore, based on the Second Environmental Court's decision "*no party has any basis to allege any liability against Alto Maipo related to the construction of the tunnels*"[26] of the Project and that "*Manzano's water rights have not been affected by the Project, as demonstrated by the Environmental Court's decision.*"[27] From the review of the proceedings before the Second Environmental Court, it can be noted that Mr. Avilés' assertions are factually and legally incorrect:

(i) The Environmental Court's decision to which Mr. Avilés refers was rendered on the basis of a claim based on facts different from those invoked in the *Complaint* filed by the Plaintiffs in these proceedings. The lawsuit filed before the Second Environmental Court sought to annul the approval of the compliance program that Alto Maipo filed in the sanctioning procedure pending before the Environmental Superintendency, in which 14 charges of violations of its RCA are being brought against it. Among other issues, in that case the claims were based on alleged impairment of the rights of some members of the Community to underground water (aquifers) due to the construction of the Project's tunnels. On the other hand, the lawsuit filed in this proceeding deals with claims for the <u>impairment of the water rights of the Community and its members over surface water from the Colorado River</u>. In effect, the lawsuit filed in these proceedings alleges contractual violations and torts committed by Alto Maipo due to its <u>failure to build the water intake</u> that Alto Maipo was required to build before starting operations of the power plants, as agreed in the Agreement and required by the RCA (Environmental Qualification Resolution).[28]

(ii) Likewise, the lawsuit before the Second Environmental Court - filed in 2017 - sought the annulment of the compliance program that had been approved for the company with respect to violations committed by it during the

---

[26] Declaration of Mr. Avilés, ¶ 18; free translation.
[27] Declaration of Mr. Avilés, ¶ 39, free translation.
[28] Judgment of the Second Environmental Court, file R-183-2018, 3 November 2021 pp. 11-13, *Appendix A-8*.

10

       construction phase of the Project, while the claims filed in this proceeding refer to damages arising from testing and operation of the power plants as of January 2022. As indicated, the decision of the Second Environmental Court does not refer or relate to the claims being pursued in this proceeding.

(iii) Furthermore, the dismissal of the claims brought before the Second Environmental Court in no way alters the existence or non-existence of environmental or any other liability of the company, nor the existence of rights in favor of the El Manzano Community, since the Supreme Court ratified that the matter discussed in said trial was of an incidental nature and did not resolve the merits of the case.[29]

**C.  Actions to which the Community and its members are entitled in view of the facts described above.**

22. The facts described above show that Alto Maipo has breached the contract with the Community and has also committed environmental violations ascertained by the Superintendency and that these violations have caused damages to the Community and its members, who, as explained below, are entitled to certain actions in defense of their interests.

**D.1  Legal Actions for environmental damage.**

23. In the first place, and in light of the finding of the existence of serious and imminent damage to the health of the population due to environmental violations, the Community and its members, who are the ones who have suffered such damage, are entitled - in accordance with the provisions of Law No. 19,300 - to sue Alto Maipo for environmental damage before the environmental courts[30], requesting the repair of the damaged environment. Likewise, the applicable regulations expressly allow those who have been directly affected by the environmental damage to pursue an ordinary action seeking damages.[31]

24. For someone to be liable for environmental damage in Chile, it is required that: **(i)** an intentional or negligent act or omission occurred[32]; **(ii)** that causes a significant

---

[29] Judgment of the Supreme Court of Chile, Case N° 24830-2022, Recital 8, *Appendix A-9*.
[30] Article 53 of Law No. 19,300: *"Where environmental damage has been produced, permission to file a suit is granted to obtain reparation of the damaged environment, which does not preclude the exercise of the ordinary case for compensation by the directly affected party..." Appendix A-2*
[31] *Id.*
[32] Article 51 of Law No. 19,300, *Appendix A-2*.

loss, detriment or impairment to the environment or to one or more of its components[33]; and **(iii)** that there is a causal relationship between the act or omission and the damage caused[34].

**25.** Regarding the first requirement, Law No. 19,300 establishes a presumption of liability of the tortfeasor in cases of violations of environmental regulations[35], such as a breach of the obligations contained in an RCA (Environmental Qualification Resolution). As explained above, in the case of Alto Maipo, the Superintendency found that Alto Maipo has committed these types of violations, and the Superintendency resolution has not been annulled.

**26.** Regarding the second and third requirements, in Resolution No. 635/2022, which imposes the MUT (Urgent and Temporary Measures), the Superintendency found facts showing the existence of serious and imminent environmental damage impacting the health of the population as a result of the violations that were committed by Alto Maipo and that affected the Community and its members, who, as the Superintendency found, were also deprived of the exercise of their water rights.

**27.** Accordingly, with the existence of environmental damage, the Community and its member can pursue a private action seeking compensation of damages for the economic harm suffered for environmental damage.

### D.2. Civil suit for contractual tort liability.

**28.** Without prejudice to what is stated in the preceding section, with respect to actions for environmental damage, it is necessary to take into account that the Community and its members are owners of water rights. In accordance with the Constitution of the Republic of Chile, water rights are the property of their owners[36], and are part of their patrimony. Therefore, any damage, detriment or impairment done to such rights entitles their owners to claim damages for the harm suffered[37].

---

[33] Article 2 e) of Law No. 19,300, *Appendix A-2*.
[34] Article 52, final paragraph of Law No. 19,300, *Appendix A-2*.
[35] Article 52 inc. 1° Law No. 19,300: *"The responsibility of the author of the environmental damage is legally presumed if there is a violation of standards of environmental or emissions quality, prevention or decontamination plans, special regulations for cases of environmental emergency or standards on environmental protection, preservation or conservation; as established in this law or in other legal or regulatory provisions" Appendix A-2*.
[36] Political Constitution of the Republic of Chile, Article 19 N°24, final paragraph, *Appendix A-7*.
[37] Article 2315, Civil Code, *Appendix A-10*.

**29.** According to the foregoing, having the actions of Alto Maipo caused a violation of the aforementioned rights of the Community and its members, the latter also have the right to purse tort claims in accordance with the provisions of the Civil Code, seeking damages for the harm suffered as a result of the impairment of the exercise of their water rights. Indeed, in order to sue for damages caused by the impairment of the exercise of a water rights, the affected party should have a general case for damages for tort liability, regulated in art. 2314 and following of the Chilean Civil Code, with the particularity that - because it is a dispute related to the exercise of water rights- the Water Code itself provides that such dispute must be processed in a summary trial.[38]

### D.3. Possessory action to recover the use of water, with compensation for damages.

**30.** Additionally, as long as the Community and its members continue to be deprived of the exercise of their water usage rights as a result of Alto Maipo's acts or omissions, they are entitled to a "possessory action" aimed at recovering possession, use and enjoyment of the water usage rights they hold, with compensation for the damages caused during the time in which they were deprived of those rights.

**31.** Indeed, according to the Civil Code, any person who has been unjustly deprived of the possession of a thing (such as a water usage right), will have the right to request the restitution of the same, with compensation for damages[39], while the Water Code confirms that in the event of actions by third parties that twist the flowing waters, depriving the properties that have the right to benefit from that water, possessory action is granted to the interested parties to recover the use of the waters, with compensation for damages[40].

### D.4. Civil suit for contractual liability.

**32.** In addition to the above, it should be noted that there is a contractual relationship between the Community and Alto Maipo from which obligations arise for Alto Maipo. This is the Agreement, which, even though it is part of the RCA (Environmental Qualification Resolution), is still a true contract between the parties.

---

[38] Article 177 of the Water Code states that lawsuits on the constitution, loss and exercise of water usage rights and all other matters related thereto shall be processed through a summary trial. *Appendix A-1*.
[39] Articles 916 and 926 of the Civil Code, *Appendix A-10*.
[40] Article 123 of the Water Code, *Appendix A-1*.

**33.** By application of the general rules contained in the Civil Code, any breach by Alto Maipo of its obligations under the aforementioned contract gives trhe right to the Community to pursue claims for breach of contract, which may certainly include a claim for compensation for the damages caused as a result of the breach.

**34.** As mentioned above, the Agreement obligated Alto Maipo, among other things, to obtain approval and build, <u>before the Project's entering into operation</u>, a complementary intake so that during the operation of the Project, water would enter the El Manzano canal at all times. Alto Maipo breached that obligation, since the Project entered into operation without Alto Maipo having built the intake at issue, causing damages to the Community.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Santiago, Chile, August 24, 2022.

_____[*signature*]_____
Edesio Carrasco
Partner, Schultz Carrasco Benítez
Professor of Environmental Law
Universidad del Desarrollo
Pontificia Universidad Católica de Chile



**Declaration for document: "**13572159_1_8-23-2022 Declaration Edesio Carrasco"

I, *Diane Gunn*, hereby confirm that as a professional translator and under contract to RWS Alpha, I have translated/proofread this document from *Spanish* into *English* for PO*34167*.

I hereby confirm that to the best of my knowledge and capability as a professional translator these are accurate *English* translations of the *Spanish* originals.

Signature: *Diane Gunn*
Diane Gunn (Aug 25, 2022 08:22 PDT)

Date:   08/25/2022

Signature: *Diane Gunn*
Diane Gunn (Aug 25, 2022 08:22 PDT)
Email:   dlgunn2011@gmail.com
Title:   Post-editing

Alpha Translations Canada Inc., part of RWS Holdings Plc group companies
Suite 200, 86 Boulder Boulevard, Stony Plain, Alberta, T7Z 1V7, Canada
T: + 1 780 962 7821| E: edmonton@rws.com
alpha.rws.com
Registered Office: Gowling WLG, Suite 1600, 421 7th Ave SW, Calgary, Alberta, T2P 4K9, Canada, Business number: 138526926