**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Alto Maipo SpA,[1] | ) | Case No. 21-11508 (KBO) |
| | ) | |
| Reorganized Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Comunidad de Aguas Canal El Manzano on | ) | |
| behalf of itself and its members and | ) | |
| constituents, Gemma Contreras Bustamante, | ) | |
| Christian Becker Matkovic, Maite Birke | ) | |
| Abaroa, Bruno Bercic, | ) | |
| | ) | Adv. Proc. No. 22-50381 (KBO) |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **Related to Docket Nos. 12 and 24** |
| | ) | |
| Alto Maipo SpA, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM ORDER GRANTING IN PART DEFENDANT'S MOTION TO
DISMISS AND DENYING PLAINTIFFS' MOTION TO STRIKE**

Upon consideration of the *Defendant's Motion to Dismiss Plaintiffs' Complaint* (the "Motion to Dismiss") [Adv. D.I. 12], the *Plaintiffs' Motion to Strike Portions of the Declaration of Sebastian Aviles Pursuant to Rule 44.1 in Support of Alto Maipo's Motion to Dismiss Plaintiffs' Complaint* [Adv. D.I. 24] (the "Motion to Strike" and together with the Motion to Dismiss, the "Motions"), and all relevant briefing and submissions filed in support of and in opposition to the Motions [Adv. D.I. 14, 21, 26-28, 30]; and after determining that oral argument is unnecessary as it will not further aid the Court's decision-making process; the Court hereby finds and concludes the following.

## I.    BACKGROUND AND ALLEGED FACTS

On November 17, 2021, Defendant Alto Maipo SpA ("Alto Maipo" and together with Alto Maipo Delaware LLC, the "Debtors") filed for chapter 11 bankruptcy protection in this Court.   At the time of filing, Alto Maipo was completing construction of two hydroelectric power plants outside of Santiago, Chile.   The hydroelectric project (the "Project") captures water from four

---

[1] The location of the corporate headquarters and the service address for Alto Maipo SpA is Los Conquistadores 1730, Piso 10, Santiago, Chile.

tributaries of the Maipo River – the Volcán River, the Yeso River, the Aucayes Stream, and the Colorado River.    In May 2022 when this Court confirmed the Debtors' joint plan of reorganization (the "Plan"),[2] the Project had reached commercial operation and was producing energy.    The Plan embodied a consensual restructuring of the Debtors' prepetition obligations to their major stakeholders, including equity holders, the primary construction contractor, and the holders of outstanding senior secured term loan obligations.    It infused new working capital and other financing necessary for the reorganized Debtors' ongoing operations and left allowed general unsecured claims unimpaired.    The Plan went effective on May 26, 2022.[3]

Approximately one month later, this proceeding was commenced.    The Plaintiffs, all Chilean citizens and purported residents of San José de Maipo, claim to possess, or represent individuals who possess, certain Chilean constitutional, statutory, and contractual water rights that have been impaired by the Project.    Comunidad de Aguas Canal El Manzano ("Comunidad") is a community group that asserts it represents approximately 3,000 individual members who own surface water rights from the Colorado River in approximately 300 hectares of land in the San José de Maipo area.    Comunidad contends that for over 20 years it has captured water from the Colorado River and distributed it through a network of channels to its members for personal, educational, recreational, economic, agricultural, and industrial use.    The remaining Plaintiffs claim to be members of Comunidad except for Maite Birke Abaroa, who purports to serve as an elected representative of approximately 18,000 constituents in the San José de Maipo area.

Of particular importance to this proceeding are two agreements to which Comunidad and Alto Maipo are parties, collectively referred to as the "Manzano Contract".    The Manzano Contract was assumed on the Plan's effective date, but the existence of any contractual defaults and resulting cure amounts were issues left undecided for later adjudication.[4]    Specifically, the parties[5] agreed that "the existence of any such defaults and the required cure shall be resolved by a court, arbitral panel, or any other judicial or administrative body of competent jurisdiction, as to which all parties fully reserve all relevant rights and defenses."[6]

---

[2]  *See Joint Amended Chapter 11 Plan of Reorganization of Alto Maipo SpA and Alto Maipo Delaware LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Case No. 21-11508, D.I. 610] (the "Plan"); *Findings of Fact, Conclusions of Law, and Order Confirming the Joint Chapter 11 Plan of Reorganization of Alto Maipo SpA and Alto Maipo Delaware LLC Pursuant to Chapter 11 of the Bankruptcy Code* [Case No. 21-11508, D.I. 614]; *Order (I) Amending Confirmation Order and (II) Approving Amendment No. 7 to RSA and Conforming Changes to Plan* [Case No. 21-11508, D.I. 632].

[3]  *Notice of Entry of an Order Confirming the Amended Joint Chapter 11 Plan of Reorganization of Alto Maipo SpA and Alto Maipo Delaware LLC Pursuant to Chapter 11 of the Bankruptcy Code and the Occurrence of the Effective Date Thereof* [Case No. 21-11508, D.I. 645].

[4]  Plan, Art. V.

[5]  The Plaintiffs appeared and participated in the Debtors' chapter 11 proceedings through an ad hoc committee of tort claimants.    Case No. 21-11508, D.I. 456.    Moreover, Comunidad appeared individually and served on the Official Committee of Unsecured Creditors.    Case No. 21-11508, D.I. 231.

[6]  Plan, Art. V.

Plaintiffs assert in the Complaint that the Manzano Contract required Alto Maipo to build water intakes ("Water Intakes") by December 11, 2021 to allow the Comunidad members continued access to water while Alto Maipo captures it from the Colorado River for operations. They allege that the Manzano Contract requires Alto Maipo to maintain the Water Intakes and guarantee water availability to the Comunidad members in accordance with their legal water rights during the useful life of the Project.   According to the Complaint, the Water Intakes were to be built before the Project began operating pursuant to Chilean Environmental Law, the Project's operating permits and authorizations, and the Manzano Contract.

In January 2022 – postpetition and before construction of the Water Intakes – Plaintiffs allege that Alto Maipo began testing the Project's hydropower turbines using water from the Colorado River.   According to the Plaintiffs, the tests impeded water flow in the river, making it impossible for Comunidad to capture water and depriving their members of water for at least eight days.   Plaintiffs allege that Alto Maipo constructed a temporary structure to restore water flow but that those efforts impaired the river's water quality, deprived members of clean and potable water, and damaged the environment.   It is further alleged that Alto Maipo later obtained its operational permit by falsely representing to the relevant Chilean government authority that it complied with all condition precedents to enter into operation when, in fact, the Water Intakes have not been completed.

Following the turbine tests, the Comunidad unsuccessfully sought from the *Primera Sala de la Corte de Apelaciones de San Miguel* (described as the First Chamber of the Court of Appeals of San Miguel or the "Chilean Appellate Court") certain relief to prevent Alto Maipo from taking further actions that would deprive members of water access.   It also pursued an administrative action by filing petitions before the *Superintendencia del Medio Ambiente de la República de Chile* (described as the Chilean Superintendency of Environment) and the *Coordinador Eléctrico Nacional* (described as the Chilean National Electrical Coordinator) complaining that Alto Maipo conducted turbine testing prior to constructing the Water Intakes.

The Debtors reacted to the Comunidad's Chilean efforts in part by requesting several forms of relief from this Court.   First, the Debtors filed a motion to enforce the automatic stay against Comunidad, arguing that its actions sought to shut down the Project, which would cause substantial harm to the Debtors' estates and stakeholders.[7]   The Debtors requested that this Court require Comunidad to dismiss the action pending before the Chilean Appellate Court and withdraw the petition before the Chilean National Electrical Coordinator.[8]   Furthermore, as a sanction, the Debtors asked this Court to expunge the $1 billion proof of claim Comunidad submitted in the bankruptcy proceeding.[9]   Second, the Debtors filed a motion to assume the Manzano Contract.[10] In the assumption motion, they asserted that they were not in breach of the contract because the Water Intakes could not be built until after the operating permit was obtained and that they had six

---

[7] Case No. 21-11508, D.I. 485.

[8] *Id.*

[9] *Id.*

[10] Case No. 21-11508, D.I. 487.

months to complete the construction from the permitting.[11]    According to the Debtors, they obtained the required permit on April 12, 2022 and intended to cause the intake construction as soon as possible.[12]    Third, the Debtors objected to the Plaintiffs' proofs of claim.[13]    None of these contested matters were fully briefed or presented to the Court in light of the agreements in the Plan for the assumption of the Manzano Contract and later resolution of the Plaintiffs' claims in a forum to be determined.[14]

Resting upon these allegations and background, Plaintiffs have asserted four counts in the Complaint.    The first is claim for breach of the Manzano Contract.    The second appears to request a declaratory judgment that Plaintiffs have incurred damages in an approximate amount of $63 million as a result of Alto Maipo's alleged breaches of the Manzano Contract and that such damages remain unpaid.[15]    The remaining third and fourth counts are claims for infringement of the Chilean Constitution, Water Code, and Environment Law.

In addition to the Complaint, each of the Plaintiffs filed a request for payment of an administrative expense claim against Alto Maipo (together, the "Administrative Expense Claims").[16]    The Administrative Expense Claims attach the Complaint and assert administrative expenses based on its allegations and claims in an amount no less than that sought in this proceeding.[17]

## II.    LEGAL DISCUSSION

### A.    The Adversary Proceeding Should Be Dismissed

Through the Motion to Dismiss, Alto Maipo requests that this Court dismiss the Complaint on several grounds.    It argues that the Plaintiffs lack standing to assert claims under applicable Chilean law.    It contends that the Manzano Contract contains an arbitration clause that is valid and enforceable.    It submits that the Court should apply the doctrine of *forum non conveniens* so that the claims may be adjudicated in Chile.    And finally, it urges the Court to permissively abstain pursuant to 28 U.S.C. § 1334(c)(1).    Because the Plaintiffs' claims can and should be adjudicated in Chile, the Court begins and ends its analysis with the parties' *forum non conveniens* arguments.

Under the doctrine of *forum non conveniens*, a trial court may dismiss a case "when an alternative forum has jurisdiction to hear [the] case, and . . . trial in the chosen forum would

---

[11] *Id.*

[12] *Id.*

[13] Case No. 21-11508, D.I. 490.

[14] *See, e.g.*, Case No. 21-11508, D.I. 659 & 660 (withdrawing both motions); *see also* Case No. 21-11508, D.I. 569 (May 3, 2022 transcript in which Debtors' counsel represented that the claims objections will be withdrawn).

[15] *See infra* note 34.

[16] Case No. 21-11508, D.I. 684-88.

[17] *Id.*

establish . . . oppressiveness and vexation to a defendant . . . out of all proportion to plaintiff's convenience, or . . . the chosen forum [is] inappropriate because of considerations affecting the court's own administrative and legal problems."[18]    Determinations of *forum non conveniens* are not solely questions of law, but rather, reflect "a court's assessment of a range of considerations, most notably the convenience to the parties and the practical difficulties that can attend the adjudication of a dispute in a certain locality."[19]    A court has "substantial flexibility in evaluating a *forum non conveniens* motion, . . . and each case turns on its facts."[20]    The United States Supreme Court has characterized "*forum non conveniens* as essentially, 'a supervening venue provision, permitting displacement of the ordinary rules of venue when, in light of certain conditions, the trial court thinks that jurisdiction ought to be declined.'"[21]

The Third Circuit has articulated a three-step process when considering a motion to dismiss for *forum non conveniens*.    A court "must first determine whether an adequate alternative forum can entertain the case."[22]    If an adequate alternative forum exists, the court "must then determine the appropriate amount of deference to be given the plaintiff's choice of forum."[23]    Once the level of deference has been determined, the court "must balance the relevant public and private interest factors."[24]

Turning to the first step, the Court concludes that Chile is an adequate alternative forum. Generally, the requirement that there be an adequate alternative forum is satisfied when the defendant is amenable to process in the other jurisdiction, unless the alternative forum is so clearly inadequate or unsatisfactory.[25]    An alternative forum may be inadequate, for example, (i) if it lacks subject matter jurisdiction over the action,[26] (ii) if the plaintiff cannot access evidence

---

[18] *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 447-448 (1994)).

[19] *Id*. (internal quotations omitted); *see also Lony v. E.I. Du Pont de Nemours & Co.*, 886 F.2d 628, 632 (3d Cir. 1989) ("Determination of *forum non conveniens* . . . are not solely questions of law.    Rather they represent exercises of structured discretion by trial judges appraising the practical inconveniences posed to the litigants and to the court should a particular action be litigated in one forum rather than another.") (internal citations and quotations omitted).

[20] *Van Cauwenberghe v. Biard*, 486 U.S. 517, 529 (1988) (internal citations and quotations omitted); *Levien v. hibu plc*, 475 F.Supp.3d 429, 438 (E.D. Pa. Jul. 30, 2020).

[21] *Sinochem*, 549 U.S. at 429 (quoting *Am. Dredging*, 510 U.S. at 453).

[22] *Windt v. Qwest Commc'ns Int'l., Inc.*, 529 F.3d 183, 189-90 (3d. Cir. 2008).

[23] *Id.* at 190.

[24] *Id.*

[25] *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254 n.22 (1981) ("At the outset of any *forum non conveniens* inquiry, the court must determine whether there exists an alternative forum.    Ordinarily, this requirement will be satisfied when the defendant is amenable to process in the other jurisdiction.").

[26] *Id.* (stating that dismissal on *forum non conveniens* grounds would be inappropriate where the alternative forum does not permit litigation of the subject matter of the dispute).

essential to prove her claims,[27] or (iii) if the plaintiff would face extreme delay.[28]   Plaintiffs have not argued that Chile is an inadequate alternative forum.   Indeed, the Complaint concedes that the Plaintiffs are all Chilean citizens and that Alto Maipo is a special purpose company incorporated under Chilean law with its operations centered outside Santiago.[29]   Moreover, it provides much detail on the efforts already taken by the Plaintiffs to obtain relief in Chilean forums as a result of the Project and Alto Maipo's post-petition turbine testing.[30]

With respect to the second step, the Court does not believe that the Plaintiffs' choice of this Court as forum should be given much deference.   "Ordinarily, a strong presumption of convenience exists in favor of a domestic plaintiff's chosen forum."[31]   However, when the plaintiff is foreign, like the ones here, "this presumption 'applies with less force,' because the 'assumption that the chosen forum is convenient is in such cases less reasonable.'"[32]   Based on the facts alleged in the Complaint, it is difficult to understand how this Court offers any conveniences to the parties.   The parties are located in Chile.   The Plaintiffs' claims rest upon conduct and harm that occurred in Chile,[33] arise under Chilean law,[34] and rely upon evidence and

---

[27] *Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 161 n.14 (3d Cir. 2010) ("Where a plaintiff cannot access evidence essential to prove a claim in an alternative forum, that forum is inadequate.").

[28] *Bhatnagar v. Surrendra Overseas Ltd.*, 52 F.3d 1220, 1227-1228 (3d Cir. 1995) (delays of a few years are of no legal significance in the *forum non conveniens* calculus, but an extreme delay can render the alternative forum meaningless).

[29] Compl. ¶¶ 11-16.

[30] *Id.* ¶¶ 66-75.

[31] *Windt*, 529 F.3d at 190.

[32] *Levien*, 475 F.Supp.3d at 442 (quoting *Sinochem*, 549 U.S. at 430); *accord Piper Aircraft*, 454 U.S. at 255-56 ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient. When the plaintiff is foreign, however, this assumption is much less reasonable.   Because the central purpose of any *forum non conveniens* inquiry is to ensure that the trial is convenient, a foreign plaintiff's choice deserves less deference.").

[33] *See generally* Complaint *passim*.   The Complaint alleges that Alto Maipo conducted the turbine tests because of certain milestones agreed upon between Alto Maipo and its secured lenders and incorporated into Alto Maipo's debtor-in-possession financing order approved by this Court.   *Id.* ¶ 60 & n.3.   However, the relevancy of Alto Maipo's motivation in conducting the tests is not readily apparent.   Nonetheless, it is a fact that the parties will not be precluded from exploring before a Chilean court.

[34] In their opposition brief, the Plaintiffs concede that Alto Maipo's conduct took place in Chile and that Chilean law applies to all claims but their cure claim.   D.I. 21 at 18.   As noted, Plaintiffs appear to request in Count 2 a declaratory judgment that Plaintiffs have incurred damages in an approximate amount of $63 million as a result of Alto Maipo's alleged breaches of the Manzano Contract and that such damages remain unpaid.   Plaintiffs call this Count a "Cure Claim Pursuant to 11 U.S.C. § 503(b)".

It is true that a debtor must cure all defaults before assuming an executory contract and that the cost of cure is treated as an administrative expense of the estate paid on a priority basis.   *See* 11 U.S.C. §§ 365(b)(1), 503(b), 507(a).   However, there is no ripe dispute memorialized in Count 2 that is not otherwise addressed in Count 1.   The Plaintiffs there have asserted that Alto Maipo is in breach of the Manzano Contract and that they suffered damages in an amount to be proven at trial.   Count 2 simply quantifies this

witnesses located in Chile.   Moreover, as evinced by the Plaintiffs' pursuit of remedies following the turbine test, this Court was not their first choice for assistance on their claims.   The only fact that ties this proceeding to the United States is the Debtors' chapter 11 proceedings but those proceedings will not offer any conveniences to this litigation.   The Debtors' Plan has been confirmed, the Plaintiffs' claims have passed through unimpaired, and the contested matters between the parties once initiated by the Debtors have been rendered moot.[35]   Accordingly, the Court will afford a low degree of deference to the Plaintiffs' choice of forum as they have not succeeded in making a strong showing of convenience.[36]

Finally, the last step of the test - a weighing of various public and private interest factors – heavily supports adjudication of Plaintiffs' claims in Chile.[37]   Public interest factors bearing on the *forum non conveniens* inquiry include:   "administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the state law that must govern the case; the avoidance of unnecessary problems in conflict of laws, or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."[38]   The private interest factors include: "the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive."[39]

As acknowledged by the Complaint, the Project and its alleged harm to the Plaintiffs' fundamental water rights and the surrounding environment are matters of great importance for Chile and its citizens.[40]   The Plaintiffs contend that the Project has been ongoing for at least a

---

damage amount in an apparent attempt to create a controversy necessitating application of non-Chilean law.   However, if and when a Chilean court finds that Alto Maipo breached the Manzano Contract prior to its assumption and determines damages are owed as a result thereof, Alto Maipo's obligations to satisfy the claim under the Plan and the Bankruptcy Code will ripen.   If disputes then arise between the parties necessitating this Court's assistance, it will be available.   However, that is a future, unknown matter not sufficient to warrant this Court adjudicating the Plaintiffs' Chilean claims.

[35] *See, e.g.*, *Levien*, 475 F.Supp.3d at 444 (determining that prior closed cases commenced by defendant in New York did not make litigating the subject case in Pennsylvania more convenient for the parties).

[36] *Windt*, 529 F.3d at 190.

[37] *In re GCX Ltd*, 634 B.R. 441, 451 (Bankr. D. Del. Nov. 30, 2021) (explaining that to prevail on a *forum non conveniens* motion, the balancing of the relevant factors "must tilt heavily in favor of the alternative forum").

[38] *Windt*, 529 F.3d at 189 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)).

[39] *Id*.

[40] *See, e.g.*, Compl. ¶ 31 ("Numerous organizations, including Comunidad, opposed the Project, due to concern that it will reduce the main source of drinking water for Santiago and worsen its air pollution.   The "No Alto Maipo" campaign has become Chile's second largest environmental cause."); *id.* ¶ 32 (alleging that the United Nations "requested that the Chilean government explain what measures it is taking to ensure that Alto Maipo does not impair the Chileans' citizens' fundamental rights to water, food, housing, health, and culture.").

decade and been monitored and regulated by the Chilean government and various authorities during that time.[41]    Plaintiffs' claims regarding construction of the Water Intakes, water access interruption, and environmental impact rely on parties, witnesses, locations, conduct, documents, and governmental permits and authorizations located in Chile and involve Chilean law. Adjudication of the claims will be complex and require consideration of the Chilean Constitution as well as the Chilean Water Code and Environmental Law.    As such, a strong local interest exists in having them decided by a local Chilean court with the possibility of citizen attendance and participation.    Delaware has no interest in this proceeding.    Moreover, if the claims remain here, unnecessary judicial and party resources will need to be incurred on, among other things, travel, translation services, expert testimony on Chilean law, the compulsion of discovery and testimony, and the learning and application of Chilean law.    Finally, competent Chilean courts have already expended time and resources on the parties' disputes, issuing rulings and gaining familiarity with the applicable facts and governing law.

Together, the foregoing factors overwhelmingly support the Court's conclusion that adjudication of Plaintiffs' claims is more logical, convenient, efficient, and appropriate in Chile. Importantly, the facts supporting this conclusion are not seriously challenged by the Plaintiffs. Rather, they argue that Alto Maipo is judicially estopped from asserting, and has waived its right to assert, the doctrine of *forum non conveniens* because it commenced its bankruptcy case in this Court, initiated several contested matters relevant to the Manzano Contract and Plaintiffs' claims, and required the Plaintiffs to submit their Administrative Expense Claims in this Court.    However, neither principle applies here where none of the contested matters were litigated and presented to the Court for decision (let alone fully briefed) and where all parties expressly reserved their rights to seek adjudication of the Plaintiffs' claims outside this Court and the Court approved the reservation through the Plan's confirmation order.[42]    Chile is plainly the competent and convenient forum to hear this matter.    Therefore, this proceeding will be dismissed for *forum non conveniens*.

---

[41] *See, e.g.*, *id.* ¶¶ 42, 45 & n.2 (detailing government oversight, including permitting, authorizations, and attempts to sanction Alto Maipo for violations of its environmental obligations).

[42] *See Krystal Cadillac-Oldsmobile GMC Truck v. Gen. Motors Corp.*, 337 F.3d 314, 319 (3d Cir. 2003) (holding that judicial estoppel may be applied where a litigant takes two positions that are irreconcilably inconsistent and "in bad faith, i.e., with intent to play fast and loose with the court."); *Evcco Leasing Corp. v. Ace Trucking Co.*, 828 F.2d 188, 195 (3d Cir. 1987) (waiver is "the intentional relinquishment or abandonment of a known right or privilege" and "may be established by conduct inconsistent with claiming the waived right or any action or failure to act evincing an intent not to claim the right.") (internal quotations and citations omitted); *see, e.g.*, *Barnet v. Drawbridge Special Opportunities Fund LP*, No. 14-CV-1376, 2014 WL 12774690, at **6-9 (S.D.N.Y. Aug. 27, 2014) (estopping defendants from asserting that Australian courts were an available alternative forum after they took the inconsistent position that they would not consent to the jurisdiction of the Australian courts and the court adopted it); *In re Hellas Telecomm's (Luxembourg) II SCA*, 555 B.R. 323, 352-353 (Bankr. S.D.N.Y. Aug. 22, 2016) (explaining that participation in a proceeding does not constitute a waiver of the right to move to dismiss on the ground of *forum non conveniens* but is a factor to consider when evaluating convenience); *see also* Case No. 21-11508, D.I. 569 (May 3, 2022 transcript in which Debtors' counsel expressed a preference that this Court not determine the existence of defaults under the Manzano Contract).

**B.    The Court Will Not Apply Federal Rule 12(b) To Dismiss The Administrative Expense Claims**

Because the Administrative Expense Claims incorporate the facts, claims, and amounts asserted in the Complaint, Alto Maipo requests that the Court apply Rule 12(b) and dismiss them pursuant to the discretion afforded to it under Bankruptcy Rule 9014(c) to avoid the future unnecessary expenditure of judicial and estate resources on discovery and a trial to resolve them. Plaintiffs do not respond to this requested relief.    However, the Court does not believe it is procedurally appropriate to dismiss the Administrative Expense Claims.    The request was made in the Motion to Dismiss and not through an objection to the Administrative Expense Claims filed in the Debtors' bankruptcy case.    Additionally, while it appears practical to hold in abeyance any reconciliation of the Administrative Expense Claims until the underlying litigation is resolved in Chile, the Court is reluctant to dismiss (or disallow) the claims without a better understanding of the impact it would have on the Plaintiffs' ability to recover under the Plan in the event they obtain future damage awards.    The parties are welcome to request a status conference in Alto Maipo's bankruptcy case to discuss these issues with the Court at their convenience.

**C.    It Is Unnecessary For The Court To Consider The Plaintiffs' Motion to Strike**

When there is an issue of foreign law to be decided, a court's determination of the issue is treated as a ruling on a question of law.[43]    Federal Rule 44.1 provides, in pertinent part, that "[i]n determining foreign law, the court may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence."[44]    "One common source that judges rely upon in determining foreign law are the affidavits of lawyers who practice law in the country at issue, or who are from the country at issue and are familiar with its laws." [45]    Those affidavits, however, may not make factual determinations.[46]    They should also not offer legal conclusions "as the purpose of an expert witness in foreign law is to aid the court in determining the content of the applicable foreign law, not to apply the law to the facts of the case."[47] !

In support of the Motion to Dismiss, Alto Maipo filed the *Declaration of Sebastián Avilés Pursuant to Rule 44.1 in Support of Alto Maipo's Motion to Dismiss Plaintiffs' Complaint* (the "Declaration").[48]    According to the Declaration, Mr. Avilés is a partner in the law firm of Moreno Sáez & Avilés Abogados and is admitted to practice law in Chile.[49]    In the Declaration, Mr. Avilés offers his opinion on Comunidad's water rights, the Manzano Contract, legal and administrative

---

[43] FED. R. CIV. P. 44.1; *Animal Sci. Prod., Inc. v. Hebei Welcome Pharm. Co.*, 138 S. Ct. 1865, 1869 (2018).

[44] FED. R. CIV. P. 44.1.

[45] *Transportes Aereos Pegaso, S.A. de C.V. v. Bell Helicopter Textron, Inc.*, 623 F. Supp. 2d 518, 534 (D. Del. 2009).

[46] *Nkansah v. Kleinbard LLC*, No. 21-1774, 2022 WL 843486, at *5 (3d Cir. Mar. 22, 2022). !

[47] 9A FED. PRAC. & PROC. CIV. § 2444 (3d ed.). !

[48] D.I. 13.

[49] *Id.* at ¶ 1.

actions of the Plaintiffs in Chile and the results thereof, Plaintiffs' standing under Chilean law, the availability of Chilean tribunals to hear the Plaintiffs' claims, and the viability of Plaintiffs' claims.[50]   Plaintiffs have asked the Court to strike substantially all of this.  They argue that it contains factual assertions and legal conclusions beyond the appropriate scope of Federal Rule 44.1.  The Court, however, has not relied on the Declaration to reach its conclusion that the Complaint should be dismissed under the doctrine of *forum non conveniens*.  Therefore, it is unnecessary for the Court to consider the issues raised in the Plaintiffs' Motion to Strike.

## IV.    CONCLUSION

For the reasons set forth herein, the following is **ORDERED**:

      1.      The Complaint is hereby dismissed.

      2.      All other relief requested in the Motion to Dismiss is denied.

      3.      The Motion to Strike is denied as moot.

Dated:   October 27, 2022

Karen B. Owens
United States Bankruptcy Judge

---

[50] *See id.* passim.